IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re INTERESTED PARTY 1 and<br>In re INTERESTED PARTY 2, in the Matter of<br>UNITED STATES v. QANTAS AIRWAYS LIMITED | Misc. Action No. _____<br><br>(Related to Crim. No.07-00322 JDB)<br><br>**FILED UNDER SEAL** |

## EMERGENCY APPLICATION FOR INJUNCTIVE RELIEF FROM A CRIMINAL CASE BY INTERESTED PARTIES PURSUANT TO LOCAL CRIMINAL RULE 57.6 IN U.S. v. QANTAS AIRWAYS LIMITED (CRIM. CASE NO. 07-00322-JDB)

Applicants Stephen Cleary and Harold Pang ("Applicants"), present employees of Qantas Airways Limited ("Qantas"), apply to this Court for relief from a criminal case pursuant to Local Criminal Rule 57.6 to enjoin the United States from publicly identifying Applicants in any manner, explicitly or implicitly, as having been excluded or "carved out" from the immunity benefits and cooperation obligations of the Department of Justice's plea agreement with Qantas that is set to be entered January 14, 2008. Applicants are interested parties within the meaning of Rule 57.6. For the reasons set forth in Applicants' Memorandum of Law, filed contemporaneously herewith, the Application should be granted.

Applicants further request that the Court establish an expedited briefing and argument schedule so the Court may rule on their Application sufficiently in advance of January 14, 2008, and to allow Applicants to seek appellate relief if necessary.

Dated:  December 20, 2007                    Respectfully Submitted,


_____
Henry W. Asbill, D.C. Bar No. 938811
Kerri L. Ruttenberg, D.C. Bar No. 467989
Dewey & LeBoeuf LLP
1101 New York Avenue, N.W., Suite 1100
Washington, D.C.  20009
(202) 986-8000
*Counsel for Stephen Cleary*


_____
Elizabeth G. Taylor, D.C. Bar No. 384893
Zuckerman Spaeder LLP
1800 M Street, NW
Suite 1000
Washington, DC  20036-5802
(202) 778-1800 (phone)
(202) 822-8106 (facsimile)
*Counsel for Harold Pang*


_____
Royal B. Martin (*Pro Hac Vice* Admission Pending)
Daniel T. Hartnett (*Pro Hac Vice* Admission
Pending)
Martin Brown & Sullivan, Ltd.
The Chicago Bar Association Building
321 South Plymouth Court, 10th Floor
Chicago, IL  60604
(312) 360-5000 (phone)
(312) 360 5026 (facsimile)
*Counsel for Harold Pang*

2

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2007, I caused a true and correct copy of the

foregoing Emergency Application to be served, by agreement, via e-mail in PDF format and

additionally via U.S. Mail, first class postage pre-paid, upon the following:

Brent C. Snyder, Esq.
U.S. Department of Justice
1401 H Street, NW
Suite 3700
Washington, DC 20530
(202) 616-3186

W. Todd Miller, Esq.
Baker & Miller PLLC
2401 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20037
(202) 663-7820

Kerri L. Ruttenberg

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| )<br>)<br>)<br>In re INTERESTED PARTY 1 and ) | Misc. Action No. _____ |
| In re INTERESTED PARTY 2, in the Matter of )<br>UNITED STATES v. QANTAS AIRWAYS LIMITED ) | (Related to Crim. No.07-00322 JDB) |
| )<br>)<br>) | **FILED UNDER SEAL** |
| ) | |

**STEPHEN CLEARY'S AND HAROLD PANG'S JOINT MEMORANDUM OF LAW
IN SUPPORT OF THEIR EMERGENCY APPLICATION FOR
INJUNCTIVE RELIEF FROM A CRIMINAL CASE BY INTERESTED PARTIES
PURSUANT TO LOCAL CRIMINAL RULE 57.6 IN
U.S. v. QANTAS AIRWAYS LIMITED (CRIM. CASE NO. 07-00322-JDB)**

Applicants Stephen Cleary and Harold Pang ("Applicants") submit this memorandum of

law in support of their emergency application for injunctive relief pursuant to Local Criminal

Rule 57.6 to enjoin the United States from publicly identifying them in any manner, explicitly or

implicitly, as current or previous subjects or targets of an ongoing grand jury investigation.  For

the reasons set forth in detail in the accompanying Declarations of Henry W. Asbill and Royal B.

Martin (lead counsel for Messrs. Cleary and Pang, respectively), attached hereto as Exhibits C

and D, and the reasons discussed below, Applicants' application request should be granted.

## PRELIMINARY STATEMENT OF INTEREST

On January 14, 2008, the Antitrust Division of the Department of Justice ("the Division")

intends publicly to file a plea agreement between the United States and Qantas Airways Limited

("Qantas") in which Qantas will plead guilty to one count of violating of the Sherman Act, 15

U.S.C. § 1 ("Plea Agreement").  The Plea Agreement grants immunity to all former and current

Qantas employees with the exception of four former and two current employees.  Applicants,

who both are current employees of Qantas, have learned that they are among the "carved-out"
employees who will not be granted immunity or be required to cooperate under the Plea
Agreement.

Applicants further have learned that the Division intends to specifically name the carved-
out employees in the Plea Agreement, which will publicly reveal their identities when the Plea
Agreement is filed with this Court, referenced in a DOJ press release and posted on the
Division's website. Naming Applicants in this manner violates Federal Rule of Criminal
Procedure 6(e) as well as Applicants' Fifth Amendment due process rights, and will irreparably
harm Applicants' reputations by publicly disclosing that they were or are subjects or targets of a
grand jury investigation and either were expressly found to have engaged in wrongdoing or
refused to cooperate with the government's investigation.

Although this Court specifically addressed these issues in two recent cases, Doe v.
Hammond, 502 F. Supp. 2d 94 (D.D.C. August 22, 2007) and United States v. Korean Air Lines
Co., Ltd., 505 F. Supp. 2d 91 (D.D.C. August 22, 2007), and the Northern District of California
similarly addressed these issues in United States v. Crompton, 399 F. Supp. 2d 1047 (N.D. Cal.
2005), we respectfully submit that each of these cases was decided incorrectly. Upon reviewing
the pleadings submitted by the plaintiff and the government in Hammond,[1] and the Court's
opinions in all three cases, it appears the plaintiffs and the Court accepted without analysis the
Division's assertions that there were any plausible benign inferences that the public could draw
from the plaintiff's carve-out status. Upon closer examination, and particularly in the context of
current employees carved out of a corporate plea agreement, the supposedly "benign"

_____

[1] The pleadings underlying this Court's opinion in Korean Air Lines and the District Court's
opinion in Crompton remain under seal, and therefore they were not reviewed by undersigned
counsel and are not addressed in this Application.

explanations the Division proffered in <u>Hammond</u>, <u>Korean Air Lines</u>, and <u>Crompton</u> either are not remotely plausible or actually are malign.[2]

Under Rule 6(e), an attorney for the government "must not disclose a matter occurring before a grand jury." Significantly, Rule 6(e) was not addressed at all in <u>Crompton</u> and was not raised by the plaintiff in <u>Korean Air Lines</u>.[3] The case law makes clear that the scope of Rule 6(e)'s grand jury secrecy is broad, and it prohibits both express and implicit disclosures of such information. The Qantas Plea Agreement provides that Qantas is pleading guilty to having participated, through its officers and employees, in a conspiracy to "fix[] one or more components of the cargo rates charged to customers . . . ." Plea Agreement at ¶ 4, attached hereto as Exhibit A (with names of the four other carve-outs redacted). In exchange for immunity from prosecution for Qantas and all but six of its current and former employees, Qantas will pay a $61 million criminal fine and provide cooperation in the government's ongoing investigation, which expressly includes making its employees available for testimony in the grand jury. <u>Id.</u> at ¶¶ 12, 13, and 15. The most obvious inference from these provisions is that Applicants, two of only six people carved out of the Plea Agreement, were or are subjects or targets of the very grand jury investigation that led to the Plea Agreement. Revealing such

---

[2] In light of the recency of the <u>Hammond</u> and <u>Korea</u> cases, and the likelihood that this Application will be docketed before the same judge, the Honorable John D. Bates, we respectfully suggest that the Court itself consider a transfer or voluntary recusal pursuant to 28 U.S.C. § 455 from deciding this Application. Departing from the recent holdings in <u>Hammond</u> and <u>Korea</u> will mean the plaintiffs in those cases unnecessarily were harmed, a fact that could potentially predispose any judge who previously accepted the Division's legal arguments on this issue to find that those cases were decided correctly.

[3] This Court's opinion in <u>Korean Air Lines</u> does not substantively address Rule 6(e). In a footnote, however, the Court stated that the same conclusion it reached in <u>Hammond</u>, that the Division's anticipated actions would not violate Rule 6(e), would apply in <u>Korean Air Lines</u> for the reasons stated in <u>Hammond</u>. <u>Korean Air Lines</u>, 505 F. Supp. 2d at 94, n. 1.

information violates Rule 6(e)'s grand jury secrecy provisions.  Therefore, Applicants' names should be redacted from the publicly-filed agreement.

Moreover, all three of the Division's proffered "alternative" reasons for carving out an employee either are entirely implausible or actually disclose its belief in the employee's culpability.  As DOJ expressly recognizes in the United States Attorney's Manual, the government has no legitimate interest in publicly accusing uncharged individuals of committing crimes or related misconduct.  Because there is no non-criminal culpability inference that reasonably can be drawn from Applicants' carve-out status, publicly naming them in a manner that suggests they may be guilty of a crime violates their Fifth Amendment due process rights. Further, the harm to Applicants' reputations and violation of their constitutional rights far outweighs any interest the public or alleged "victims" might have in learning the names of those excepted from the immunity and cooperation provisions of the Plea Agreement.  In light of the presumed irreparable harm Applicants will suffer to their reputations if they are named publicly in the Qantas Plea Agreement, and the available alternatives for effectuating the Division's goal of contractual precision in the Plea Agreement, this Court should enjoin the Division from taking this action by ordering the redaction of Applicants' names from the Plea Agreement.

## STATEMENT OF RELEVANT FACTS

On May 4, 2006, Qantas received a grand jury subpoena in connection with the much publicized worldwide air cargo and passenger antitrust investigation being conducted by the Division.  Qantas and its employees, including Applicants, cooperated with the investigation by producing documents and appearing for interviews and attorney proffers.

The government filed a Criminal Information in this Court on November 27, 2007 charging Qantas with one count of violating the Sherman Act by participating in a conspiracy to

fix the price of air cargo rates charged to customers.  The Department of Justice issued a press release the same day announcing that Qantas agreed to plead guilty and pay a $61 million criminal fine for its role in the conspiracy, and that "Qantas has agreed to cooperate with the Department's ongoing investigation."  <u>See</u> DOJ Press Release, attached hereto as Exhibit B.  The press release further states, "Our investigation into this important industry will continue, and we will aggressively pursue those who engage in criminal conduct that harms American consumers."

In exchange for Qantas's guilty plea, the Division granted nearly all current and former Qantas employees, as many as 1000 people, immunity from criminal prosecution in the United States.  The Plea Agreement further requires Qantas to use its best efforts to secure its covered former and current employees' cooperation with the ongoing investigation, "including making these persons available . . . for interviews <u>and the provision of testimony in grand jury</u>, trial and other judicial proceedings[.]"  Plea Agreement at ¶¶ 12, 12(b) (emphasis added).  In the next paragraph, the Plea Agreement again defines cooperation as "<u>testifying in grand jury</u>, trial, and other proceedings[.]"  <u>Id.</u> at ¶13(e) (emphasis added).  Only six employees, including Applicants, are excluded from the Plea Agreement and thus do not have immunity from potential criminal prosecution and are not required to provide <u>continued</u> cooperation in the grand jury or elsewhere.

Following separate proffer sessions in November 2007, the Division represented to undersigned counsel that it would be carving Applicants out of the plea agreement.  The Division offered no benign reason for this decision.  The Division further informed counsel that it intended to name Applicants in the publicly-filed Plea Agreement as carve-outs.  Applicants objected to this decision, and met with Division front office supervisors on December 13, 2007 in an effort to reach a negotiated resolution of the dispute.  The Division on December 14, 2007 refused to modify its regular practice of naming carve-outs or make specific exceptions for

Messrs. Cleary and Pang. We then informed the Division that we planned to file an Application for relief in this Court. Division attorneys represented to undersigned counsel for both Applicants that it had no objection to our filing this Application under seal or setting a reasonable schedule for expedited briefing and argument.

As will be addressed in greater detail below, specifically and publicly naming individuals excluded from corporate plea agreements is a violation of Federal Rule of Criminal Procedure 6(e) and the due process protections of the Fifth Amendment. Additionally, the practice flies in the face of the United States Attorney's Manual, which expressly prohibits this very action. Because the Division has informed undersigned counsel for both Applicants of its intention to implement this practice in the Qantas Plea Agreement, Applicants seek injunctive relief and ask this Court to redact their names from the Plea Agreement.

## ARGUMENT

To obtain temporary and preliminary injunctive relief, Applicants must demonstrate: (1) they are likely to prevail on the merits; (2) they will suffer irreparable harm absent the injunction; (3) the injunction would not substantially impair the rights of Defendants or other parties; and (4) the injunction would be in the public interest, or at least would not be adverse to the public interest. Serono Labs, Inc. v. Shalala, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998); Sea Containers Ltd. V. Stena AB, 890 F.2d 1205, 1208 (D.C. Cir. 1989). A court must balance these factors, and "[i]f the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." Serono Labs, 158 F.3d at 1318 (quoting CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 746 (D.C. Cir. 1995)). Here, each of these factors strongly supports the issuance of injunctive relief in the form of redacting Applicants' names from the publicly-filed Plea Agreement.

I.    <u>**APPLICANTS ARE LIKELY TO PREVAIL ON THE MERITS.**</u>

The Division's practice of specifically and publicly naming current employees excluded from corporate plea agreements is a violation of Federal Rule of Criminal Procedure 6(e) and the due process protections of the Fifth Amendment.  The Division itself recognizes there is no legitimate governmental interest in publicly alleging wrongdoing by an uncharged party, as is evidenced by the express prohibition of this very practice in the United States Attorney's Manual.  Division attorneys have informed Applicants' undersigned counsel of their intention to implement this practice with respect to Applicants, and Applicants therefore seek injunctive relief.

A.    <u>**Disclosing Applicants' Identities In The Publicly Filed Plea Agreement Violates Federal Rule Of Criminal Procedure 6(e).**</u>

1.    **Rule 6(e) Prohibits Both Direct and Indirect Disclosures.**

Rule 6(e) provides that an attorney for the government "must not disclose a matter occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B).  The D.C. Circuit recently articulated the important interests served by adherence to Rule 6(e): "Grand jury investigations are conducted in strict secrecy to encourage witnesses to testify 'fully and frankly,' to prevent those about to be indicted from fleeing, and to ensure that 'persons who are accused but exonerated by the grand jury will not be held up to public ridicule.'" In re Grand Jury Subpoena, Judith Miller, 493 F.3d 152, 154 (D.C. Cir. 2007) (quoting Douglas Oil Co. v. Petrol Stops Nw., 441 U.S. 211, 219, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979)).  Thus, maintaining grand jury secrecy "is as important for the protection of the innocent as for the pursuit of the guilty." United States v. Sells Engineering, Inc., 463 U.S. 418, 424 (1983); see also Finn v. Schiller, 72 F.3d 1182, 1189 (4th Cir. 1996) ("A primary purpose of Rule 6 is to protect the unindicted, and the United States Attorney has a duty to protect the innocent as well as to prosecute those indicted by the

7

grand jury."); <u>DiLeo v. C.I.R.</u>, 959 F.2d 16, 18-19 (2d Cir. 1992) ("Rule 6(e) . . . serves to

effectuate several important policies[, including] . . . protect[ing] the reputations of suspects who

are ultimately exonerated by the grand jury."); <u>United States v. Phillips</u>, 843 F.2d 438, 441 (11th

Cir. 1988) ("The secrecy of the grand jury is sacrosanct.  The reasons for protecting the secrecy

of the grand jury include . . . protecting the innocent accused, who is later exonerated, from

disclosure of the fact that he has been under investigation.").

     As this Court recognized in <u>Hammond</u>, "[t]he phrase 'matter[s] occurring before the

grand jury' encompasses 'not only what has occurred and what is occurring, but also what is

likely to occur, including 'the identities of witnesses, . . . the strategy or direction of the

investigation . . . and the like.'"  <u>Hammond</u>, 502 F. Supp. 2d at 98 (citing <u>In re Sealed Case No.

99-3091</u>, 192 F.3d 995, 1001 (D.C. Cir. 1999) (quoting <u>In re Motions of Dow Jones & Co.</u>, 142

F.3d 496 500 (D.C. Cir. 1998))); <u>accord</u> <u>Fund for Constitutional Gov't v. National Archives &

Records Serv.</u>, 656 F.2d 856, 869 (D.C. Cir. 1981) ("[T]he scope of the secrecy [under Rule 6(e)]

is necessarily broad.  It encompasses not only the direct revelation of grand jury transcripts but

also the disclosure of information which would reveal 'the identities of witnesses or jurors, the

substance of testimony, the strategy or direction of the investigation, the deliberations or

questions of the jurors, and the like.'" (quoting <u>SEC v. Dresser Indus., Inc.</u>, 628 F.2d 1368, 1382

(D.C. Cir.) (en banc), <u>cert. denied</u>, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed. 289 (1980))); <u>Church

of Scientology Int'l v. United States Dept. of Justice</u>, 30 F.3d 224, 235 (1st Cir. 1994) (same); <u>In

re Grand Jury Investigation</u>, 903 F.2d 180, 182 (3d Cir. 1990) (Rule 6(e) secrecy protects the

grand jury's deliberative process by keeping sealed the "essence of what took place in the grand

jury room"); <u>Standley v. Department of Justice</u>, 835 F.2d 216, 218 (9th Cir. 1987) (same); <u>In re

Grand Jury Matter</u>, 682 F.2d 61, 63 (3d Cir. 1982) ("Rule 6(e) applies ... to anything which may

reveal what occurred before the grand jury.") (citation omitted); In re Federal Grand Jury
Proceedings 03-01, 337 F.Supp.2d 1218, 1220 (D. Or. 2004) ("The scope of secrecy includes
information that may directly or indirectly reveal what transpired in a grand jury proceeding.")
(emphasis added); U.S. Government v. Marks, 949 S.W.2d 320, 324 (Tex. 1997) (same); U.S. v.
DeGroote, 122 F.R.D. 131, 134 (W.D.N.Y. 1988) ("That phrase ['matters occurring before the
grand jury'] 'has been defined as anything that will reveal what transpired during the grand jury
proceedings.' . . . [G]rand jury secrecy . . . clearly extends to all revelations which may readily
be expected to 'yield[ ] information regarding the scope or direction of the grand jury
investigation.'").

　　　　Thus, to achieve the important objectives of grand jury secrecy, and in light of its broad
application, Rule 6(e) is not limited only to direct disclosures of matters occurring before the
grand jury.  Rather, the Rule prohibits indirect, implied disclosures of such matters.  See In re
Grand Jury Matter, 682 F.2d 61 (3d Cir. 1982) ("On the one hand, Rule 6(e) applies not only to
information drawn from transcripts of grand jury proceedings, but also to anything which may
reveal what occurred before the grand jury.  Both the direct and indirect disclosure of
information are proscribed.") (emphasis added) (citing In re Grand Jury Investigations, 610 F.2d
202, 216-17 (5th Cir. 1980)).

　　　　**2.　　　The Most Likely Implication of Carving Applicants Out of the Plea
　　　　　　　　Agreement is That They Previously Were, Or Currently Are, Subjects
　　　　　　　　or Targets of a Grand Jury Investigation.**

　　　　The obvious implication of Applicants' carve-out status is that they previously were, or
currently are, subjects or targets of the very grand jury investigation that led to the Plea
Agreement.  Indeed, the Plea Agreement itself provides that Qantas must "cooperate fully and
truthfully with the United States in the prosecution of this case," and must "secure the ongoing,

full and truthful cooperation" of its covered employees, "including making these persons

available . . . for interviews **and the provision of testimony in grand jury**, trial and other

judicial proceedings[.]"  Plea Agreement at ¶¶ 12, 12(b) (emphasis added).  Applicants and four

other individuals are carved out of this provision.  <u>Id.</u>  In the next paragraph, the plea agreement

expressly defines cooperation as, *inter alia*, "<u>testifying in grand jury</u>, trial, and other

proceedings[.]"  <u>Id.</u> at ¶13(e) (emphasis added).  In light of this express language in the Plea

Agreement, any contention that the Plea Agreement does not disclose Applicants as subjects or

targets of the ongoing grand jury investigation is specious.

      Moreover, it is no secret that Qantas, as well as the entire air cargo industry, has been and

continues to be under investigation by a grand jury for price-fixing activity.  The fact of the

grand jury investigation into the air cargo industry is public.  Qantas disclosed in its 2006 annual

report that "DOJ has served subpoenas to produce documents on a number of cargo operators[,]"

including Qantas.  <u>See</u> Qantas Annual Report 2006 at p. 101, available at

<u>http://www.qantas.com.au/infodetail/about/investors/AnnualReport2006.pdf</u>.  Although the

issuance of grand jury subpoenas to Qantas and Qantas's compliance with mandatory liability

disclosure requirements in financial filings do not in themselves violate Rule 6(e), they still make

public the fact that a grand jury is empanelled to investigate the air cargo industry, and any

suggestion of an ongoing investigation is inextricably linked to the grand jury investigation.

      DOJ also affirmatively has publicized that its air cargo antitrust investigation is ongoing.

For example, in its November 27, 2007 press release about the Qantas Plea Agreement, DOJ

stated: "Under the plea agreement . . . Qantas has agreed to cooperate with the Department's

ongoing investigation."  <u>See</u> Exhibit B.  Thomas O. Barnett, Assistant Attorney General in

charge of the Antitrust Division, is quoted in the press release as saying that the "investigation

into this important industry will continue, and we will aggressively pursue those who engage in criminal conduct that harms American consumers." Id. The Division may argue that its public statements do no more than confirm an ongoing Department investigation, but do not reveal a grand jury investigation in particular. Again, this argument is disingenuous in light of the express language of the plea agreement defining cooperation as testimony in the grand jury in connection with this very investigation.

In sum, the Plea Agreements, DOJ's public statements, and the general press widely have reported that the investigation, which includes an empanelled grand jury, is ongoing. Qantas specifically admits to participating in a conspiracy through its officers and employees, "including high-level personnel of the Defendant's Freight Division," with one or more providers of air cargo services with the primary purpose of suppressing and eliminating competition by fixing one or more components of the cargo rates charged to customers. Plea Agreement at ¶ 4(b). The Plea Agreement offers immunity from criminal prosecution in exchange for a substantial fine and continued cooperation by Qantas and its covered employees in the ongoing investigation. Absent express denials to the contrary by DOJ, the only reasonable inference that can be drawn from Applicants' having been excluded from the Qantas Plea Agreement is that Applicants may be or were responsible for the very conduct that led to their employers' Plea Agreement.

3.    **There Are No Plausible, Benign Inferences That Can Be Drawn From Applicants Being Named as Carve-Outs In the Plea Agreement.**

The Division argued in Hammond, and presumably in Korean Air Lines, that because "there are reasons, other than being an unindicted co-conspirator, which may result in an individual being carved out of a corporate plea agreement . . . the actual bases for the United States' decision to carve [the plaintiff] out are of no import to this motion." Hammond Gov't

Opp. at 7.[4]  This argument misses the point.  The Division's "actual reasons" have not explicitly

been released to the public.  The issue here is whether the Plea Agreement implicitly discloses

matters occurring before the grand jury, and/or accuses Applicants of wrongdoing in violation of

their Fifth Amendment due process rights.  While the Division in Hammond and Korean Air

Lines identified four reasons other than being an unindicted co-conspirator that might lead to a

carve-out decision, those options either are entirely implausible or constitute Rule 6(e) and/or

due process violations.

In prior court filings and in public statements, the Division has identified three grounds

for carving someone out of a plea agreement that allegedly do not imply culpability:

(1) the Division still is developing evidence against the individual;

(2) the Division has been unable to locate the individual; and/or

(3) the individual refused to cooperate with the Division's investigation.

Hammond, 502 F. Supp. 2d at 100, n. 3; see also Scott D. Hammond, Assistant Attorney General

for Criminal Enforcement Antitrust Division, DOJ, Measuring the Value of Second-In

Cooperation in Corporate Plea Negotiations, Address at the 54th Annual American Bar Ass'n

Section of Antitrust Law Spring Meeting (Mar. 29, 2006), at 7-8 ("Hammond Statement")

("[C]ertain culpable employees, employees who refuse to cooperate, and employees against

whom the Division is still developing evidence may not receive protection under the company

plea agreement. . . . [For second-in companies,][5] the Division will typically carve out only the

highest culpable individuals as well as any employees who refuse to cooperate.").

---

[4] The government's opposition brief in Hammond is cited herein as "Hammond Gov't Opp. at
___."  The brief is attached hereto as Exhibit E.

[5] Qantas has been identified in the press as a "second in" – whistleblower – company.

This Court recognized in <u>Hammond</u> that the Division concedes culpability is a possible reason for carving out an employee from a corporate plea agreement, and further recognized that "one might infer that such culpability would involve grand jury proceedings." <u>Hammond</u>, 502 F. Supp. 2d at 100. The Court concluded, however, that <u>because</u> the Division proffered "several other possible reasons" for a carve-out decision, "there is no 'necessary implication' from the carve out provision as to a grand jury investigation." <u>Id</u>. The flaw in this analysis is that neither the Court nor the parties in the <u>Hammond</u> case examined the plausibility and import of these reasons to determine whether they create a distinction with a difference. Upon closer examination, it is clear that if the carve-out provisions of the Plea Agreement lead to **any** of these inferences, the Agreement violates Rule 6(e) and Applicants' due process rights.

The first reason the Division gives as an alternative ground to culpability, that the Division still is developing evidence against the carved-out individuals, is just as malign and harmful to the individual's reputation as an inference of confirmed wrongdoing. At minimum, a decision to exclude an individual from a plea agreement, entered into a year and a half after Qantas's documents were subpoenaed, because the Division <u>still</u> is developing evidence <u>against</u> a current employee, reveals that the individual has been and remains a subject or target of the ongoing grand jury investigation that led to the very plea from which he was excluded.

The second reason the Division articulates for excluding an individual from a corporate plea agreement – that the Division could not locate the individual – is entirely implausible in the context of <u>current employees</u> being carved out of the agreement. Obviously, the company and the Division can locate a current employee. And, even if someone were to infer that a current employee was carved out because he could not be located, *the mere fact that the Division affirmatively was looking for the individual reveals a "matter before the grand jury."* Except for

13

Applicants and four other carve-outs, the Qantas Plea Agreement includes all current and former directors, officers and employees of Qantas – according to the Plea Agreement, between 200 and 1000 people.  It would be entirely implausible to assume the Division actually tried to locate every current and former employee included in the plea agreement.  If the Division took the drastic step of carving out an employee due to its in ability affirmatively to locate a particular individual, the most likely reason, and most likely inference, is that that individual witnessed or participated in the wrongdoing and is a subject or target of the grand jury investigation.

Finally, the third explanation for carving individuals out of corporate plea agreements also is implausible in the context of a current employee.  The Qantas Plea Agreement expressly requires that Qantas secure the cooperation of its employees.  It would be nonsensical for the public to "infer" that a current employee was carved out of the agreement for refusing to cooperate with the investigation, yet the individual remains employed by, and on duty at, Qantas.  And, clearly such an inference would be malign in any event – the Division would not know an individual was refusing to cooperate with the grand jury's investigation unless it affirmatively sought to speak with that individual as a witness, subject or target of the investigation.  It is hard to envision a benign reason for a current employee, particularly one who was merely a witness, to refuse to cooperate with the investigation such that the employee could retain his job at the company.  Rather, the logical inference is that the employee either is covering for his own wrongdoing or is protecting others and presumably impeding the company's and the Division's efforts to ferret out wrongdoers within the air cargo industry and is allowing those who engaged in wrongdoing to escape justice.

Glaringly absent in the Division's argument in Hammond was any explanation why the most likely inference from being carved out of a plea agreement would not be criminal

culpability. While the Division offered the three allegedly benign inferences discussed above, they ignored the simple fact that most people, when they learn the government has preserved its ability to criminally prosecute a handful of people while offering full immunity to everyone else similarly situated, is likely to infer wrongdoing on the part of the carve-outs. Common sense and human nature lead to this conclusion, and even if there were a benign alternative inference, which the Division has not proffered, the fact that even one person would infer culpability demonstrates that naming carve-outs violates Rule 6(e) and Applicants' due process rights.

### 4. Press Reports Regarding Carve-Outs Demonstrate that the Logical Inference from Carving Out an Individual is that the Individual is the Subject of an Ongoing Grand Jury Investigation.

The plaintiff in <u>Hammond</u> noted that news accounts of the plea agreement at issue further publicized the Division's investigation and reported that the carve-outs may still be under investigation. The plaintiff apparently argued that these news reports further evidenced the likely inference the public would draw from learning the plaintiff's carve-out status. <u>Hammond</u>, 502 F. Supp. 2d at 102. The Court took exception to this argument, noting "Movants' reliance on newspaper articles elaborating on the status of the Division's investigation to support its characterization of carve out status is fundamentally flawed. It makes no sense to base interpretation of the terms of a plea agreement on news accounts, the accuracy of which cannot be verified by the Court." <u>Id.</u> We respectfully submit that the Court misunderstood the purpose for advancing this argument.

As discussed, the Division has issued press releases regarding the Qantas, British Airways and Korean Air Lines plea agreements in which it represented that the investigation of unlawful price-fixing in the air cargo industry is ongoing. Beyond these affirmative press statements by the Division, many other press accounts of the investigation and resulting plea

agreements have been written.  The significance of these press accounts is two-fold:  (1) the fact that a grand jury investigation is ongoing, which was expressly stated in the plea agreements themselves, has been disseminated to a wider audience through general descriptions of the investigation in the media; and (2) these reports leave the public with the impression that carved-out employees still are being investigated for possible wrongdoing.  It is entirely irrelevant whether the substance of the reports is accurate or can be verified.  And, to our knowledge, the reports have never been disavowed by DOJ.  Indeed, the D.C. Circuit has held that this Court may take judicial notice of the press reports for these very purposes.  See Washington Post v. Robinson, 935 F.2d 282, 291 (D.C. Cir. 1991) (government argued public release of a plea agreement would threaten an ongoing investigation and the safety of the defendant and his family, and requested that the agreement be sealed; the Court rejected the request and "[took] judicial notice of the existence of newspaper articles in the Washington, D.C. area that publicized the ongoing criminal investigation of the [relevant] case and [the defendant's] involvement and cooperation in that investigation."); Agee v. Muskie, 629 F.2d 80, 81 n. 1, 90 (D.C. Cir. 1980) (taking judicial notice of facts generally known as a result of newspaper articles); see also Fed. R. Evid. 201(c).  The fact that the press has reported on an ongoing air cargo price-fixing investigation, and has suggested (or in some cases expressly stated) that carved-out employees still are under investigation themselves, makes it even more likely that the public will infer culpability from Applicants' carve-out status.

**B.**     **Naming Applicants as Carve-Outs in Qantas's Publicly-Filed Plea Agreement Violates Applicants' Fifth Amendment Due Process Rights.**

Applicants also have a likelihood of success on the merits because publicly naming them as carve-outs in the Qantas Plea Agreement would violate their Fifth Amendment right to due process of law.  As this Court recognized in Hammond, "The Due Process Clause of the Fifth

16

Amendment protects an individual from governmental accusations of criminal misconduct without providing a proper forum for vindication." 502 F. Supp. 2d at 101 (citing In re Smith, 656 F.2d 1101, 1106-07 (5th Cir. 1981); United States v. Briggs, 514 F. 2d 794, 802-06 (5th Cir. 1975); United States v. Anderson, 55 F. Supp.2d 1163, 1168-69 (D. Kan. 1999); Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) ("[W]here the state attaches a 'badge of infamy' to the citizen, due process comes into play.")); see also U.S. v. Chadwick, 556 F.2d 450 (9th Cir. 1977) (same).

As previously discussed, the only potential inferences of the Division's decision to carve Applicants out of the Plea Agreement are malign – specifically, that they are subjects or targets of the ongoing grand jury investigation and engaged in or knew about and refused to divulge wrongdoing associated with the very investigation that led Qantas to plead guilty. "[D]ue process protection is not limited to accusations against the uncharged in an indictment, but rather extends to other criminal accusations made by a government attorney, including accusations in factual proffers and other court memoranda." Hammond, 502 F. Supp. 2d at 102. Indeed, the Fifth Circuit in In re Smith held that Fifth Amendment due process protections extend to statements made by government counsel at a plea hearing which would accuse an uncharged individual of having committed a serious crime. Id. (citing Smith, 656 F. 2d at 1106; Anderson, 55 F. Supp.2d at 1167)). While it fully recognized these legal principles, this Court in Hammond held that the Division's practice of publicly naming carve-outs did not violate due process. This holding was based on the Court's erroneous assumption that there are other plausible, benign inferences that can be drawn from a carve-out decision: "Because there are non-criminal culpability reasons that may give rise to carve out status, an employee's carve out status does not mean, expressly or impliedly, that he has engaged in criminal wrongdoing." 502 F. Supp.2d at

102 (emphasis added).  As discussed previously, each of the Division's proffered "non-criminal culpability reasons" for carving out an employee either is inapplicable in these circumstances or is malign.  Moreover, beyond the likely malign inference the public will draw from Applicants' carve-out status, here the Division has publicized the ongoing nature of the investigation, touted its commitment to "aggressively pursue" those who engage in criminal conduct, expressly required ongoing cooperation of Qantas and its covered employees in the investigation that led to the plea, and publicly stated it typically only carves out the most culpable individuals or those who refuse to cooperate in second-in cases (like this one).  Carving out and naming two current employees without any benign explanation for why they were not immunized is tantamount to accusing them of the very misconduct being investigated or at minimum reveals that they are subjects or targets of the grand jury investigation.  Therefore, publicly identifying Applicants in the Qantas Plea Agreement in the broader context in which their names appear violates their due process rights.

**C.    Naming Applicants as Carve-Outs in Qantas's Publicly-Filed Plea Agreement Runs Afoul of the Division's Policy As Stated In the United States Attorney's Manual.**

The United States Attorneys' Manual (the "Manual") expressly addresses the public identification of suspected wrongdoers who are not charged with crimes in a section entitled "Limitation on Identifying Uncharged Third-Parties Publicly."  That section provides in relevant part:

> In all public filings and proceedings, federal prosecutors should remain sensitive to the privacy and reputation interests of uncharged third parties.  In the context of public plea and sentencing proceedings, this means that, in the absence of some significant justification, it is not appropriate to identify (either by name or unnecessarily-specific description), or cause a defendant to identify, a third-party wrongdoer unless that party has been officially charged with the misconduct at issue. . . .

Manual § 9-27.760, available at http://www.usdoj.gov/usao/eousa/foia_reading_room/usam/index.html. In explaining the rationale for this position, the Manual cites In re Smith, 656 F.2d 1101, 1106-07 (5th Cir. 1981), for the proposition that "there is ordinarily 'no legitimate governmental interest to be served' by the government's public allegation of wrongdoing by an uncharged party, and this is true '[r]egardless of what criminal charges may ... b[e] contemplated by the Assistant United States Attorney against the [third-party] for the future.'" Id. By its own terms, this policy applies to all forms of public disclosure, including "plea hearings, sentencing memoranda and other government pleadings." Id. (citing Finn v. Schiller, 72 F.3d 1182 (4th Cir. 1996); United States v. Briggs, 514 F.2d 794 (5th Cir. 1975); United States v. Anderson, 55 F. Supp.2d 1163 (D. Kan. 1999); United States v. Smith, 992 F. Supp. 743 (D.N.J. 1998). Although the Manual does not confer any rights on any party, it is instructive as to the Division's own understanding of the legal importance of refraining from publicly accusing uncharged individuals with wrongdoing, and the reputational harm that inevitably would result.

## II.  PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION.

Publicly identifying Applicants as carve-outs in the Qantas Plea Agreement unquestionably will irreparably damage their reputations.  Indeed, all press accounts and press releases regarding the corporate pleas, whether accurate or not, include descriptions of extensive criminal activity.  The reports all note that the investigation into this criminal activity is ongoing, and that the Division intends to continue pursuing and prosecuting wrongdoers.  The most likely inference regarding carve-outs is that they previously were or still remain subjects or targets of the very grand jury investigation that resulted in Qantas pleading guilty to criminal antitrust violations.  Once this bell has been rung, it cannot be un-rung.  Indeed, the very problem with the government publicly accusing an uncharged individual with misconduct is the inability of that

individual properly to vindicate himself. Particularly here, where the Division does not contend these Applicants are excluded from the Qantas Plea Agreement for benign reasons, (and none in fact exist), Applicants cannot repair their reputational harm with a public statement of a false benign reason for the carve-out decision. An injunction is necessary to prevent this irreparable harm from occurring.

In its opposition brief in <u>Hammond</u>, the Division makes light of the inevitable reputational harm to a publicly named carve-out. The Division notes that, like Applicants here, the movant in <u>Hammond</u> still was employed by the British Airways at the time the plea was publicly filed. <u>Hammond</u> Gov't Opp. at 11, n. 9. The Division then argues that "[b]ecause BA already knows that the [movant] has been carved out of the BA Plea Agreement and why, [movant] would be in no worse position as a result of publication of the agreement." This argument is illogical even if it were reflective of all assumptions within Qantas, as it is not just Applicants' reputation within Qantas that is the sole issue. The existence of the Division's investigation and admissions of criminal conduct by multiple airlines have been widely publicized throughout the world, which includes the entire air cargo industry, including the airlines, freight forwarders and customers, in which Applicants continue to work. It defies logic to suggest that the entire industry, including Qantas's customers, competitors, joint venture partners, potential new employers and even all of Applicants' colleagues, supervisors and subordinates within Qantas, already know or believe they know why Applicants were excluded, and that they were excluded for benign reasons.

Regardless of any arguments the Division might assert that Applicants may not suffer reputational injury, courts have long recognized that a key purpose of Rule 6(e) and Fifth Amendment due process is preventing the reputational damage that <u>inevitably</u> results from

20

disclosures that violate grand jury secrecy and/or due process.  See, e.g., DiLeo, 959 F.2d at 18-19 ("Rule 6(e) protect[s] the reputations of suspects who are ultimately exonerated by the grand jury."); Phillips, 843 F.2d at 441 (The reasons for protecting the secrecy of the grand jury include . . . protecting the innocent accused, who is later exonerated, from disclosure of the fact that he has been under investigation."); In re Cudahy, 294 F.3d 947, 951-52 (7th Cir. 2002) (recognizing that revealing subjects or targets of a grand jury investigation may "subject them to bad publicity") (citing, *inter alia*, United States v. Procter & Gamble Co., 356 U.S. 677, 681 n. 6, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958); Douglas Oil, 441 U.S. at 219 n. 10)).  In short, some reputational injury from an illegal Rule 6(e) disclosure is presumed.  To prevent the reputational harm Applicants inevitably will suffer if they publicly are named as carve-outs, this Court should grant the requested relief and Order Applicants' names redacted from the Qantas Plea Agreement.

## III.    AN INJUNCTION WILL NOT SUBSTANTIALLY IMPAIR THE RIGHTS OF THE DIVISION OR OTHER PARTIES.

### A.    An Injunction Will Not Substantially Impair Any Rights of the Division.

Granting Applicants' application for a preliminary injunction will not impair the Division's rights.  The Division does not have any legally cognizable right to name carve-outs in publicly-filed plea agreements.  Doing so violates Rule 6(e) and due process under the Fifth Amendment. The Division has no "right" to commit such violations, and therefore the Division's rights will not be impaired by granting Applicants' request to redact their names from the Qantas Plea Agreement.

### B.    An Injunction Will Not Substantially Impair the Rights of Other Parties.

Here, Qantas has specifically asked the Division to redact Messrs. Cleary's and Pang's names from the Plea Agreement.  See Exhibit C.  The Division argued in Hammond and Korean

Air Lines that redacting the names of individual carve-outs from a publicly-filed plea agreement would impair the rights of "other parties" because: (1) the public has a First Amendment right to access the plea agreement in its entirety; (2) the Crime Victim's Rights Act entitles victims to access the full plea agreement; and (3) contractual precision will be jeopardized if the names of carved-out employees are redacted from the publicly-filed agreement.  Hammond Gov't Opp. Br. at 13-15.  Each of these contentions are incorrect, and are addressed separately below.

### 1.    Granting the Requested Relief Will Not Substantially Impair The Public's First Amendment Rights.

As the D.C. Circuit has recognized, "[a]lthough public access plays an important role in other aspects of the judicial process, 'there is no First Amendment right of access to grand jury proceedings,' nor do First Amendment protections extend to ancillary materials dealing with grand jury matters[.]"  In re Grand Jury Subpoena, Judith Miller, 493 F.3d at 154 (emphasis added) (quoting In re Motions of Dow Jones & Co., 142 F.3d 496, 499, 502 (D.C. Cir. 1998) (finding no First Amendment right of access to ancillary hearings relating to grand jury matters)); see also Standley v. Department of Justice, 835 F.2d 216, 218 (9th Cir. 1987) ("[T]here is no First Amendment right of access to secret grand jury matters.  Rule 6(e) governs what we may or may not release to the public.  Insofar as materials concern still-secret grand jury matters, they must remain sealed.").  Because publicly identifying Applicants in the Qantas Plea Agreement improperly will disclose matters occurring before the grand jury in violation of Rule 6(e), the public has no First Amendment right to that information; and redacting Applicants' names from the publicly-filed Plea Agreement cannot impair this right.

Moreover, even if this Court were to determine that naming Applicants in the Plea Agreement does not violate Rule 6(e), granting the requested relief still would not impair the public's First Amendment rights.  In Washington Post v. Robinson, the D.C. Circuit held that

although "there is a first amendment right of access to plea agreements," this right is not absolute. 935 F. 3d 282, 288 (D.C. Cir. 1991). The Court went on to explain, "'the presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Id. DOJ relied heavily on the Robinson case to support its contention in Hammond that the public has a First Amendment right of access to the plea agreement in its entirety. An analysis of the Robinson case reveals why the case is at minimum inapposite, and actually supports Applicants' position.

The basis for the Court's holding in Robinson that sealing the plea agreement violated the public's First Amendment rights is quite distinguishable from this case. In Robinson, the government essentially sought to seal the entirety of its plea agreement with James McWilliams, a key cooperator in the government's case against then-D.C. Mayor Marion Barry for cocaine possession. Id. at 283. First, the government argued that the agreement revealed grand jury matters and publicly filing it would violate Rule 6(e). Rejecting that argument, the Court found that the plea agreement "disclosed only that McWilliams had agreed to cooperate with the United States" and "did not mention the Barry investigation, or any other investigation, nor allude to any specific 'matters occurring before a grand jury.'" Id. at 291. In stark contrast, the Qantas Plea Agreement clearly concerns the Division's air cargo antitrust investigation, a fact confirmed by numerous press accounts of the plea agreements with Qantas, British Airways and Korean Air Lines. Moreover, unlike McWilliams's status, Applicants are not parties to the Qantas plea agreement with the government. This fact is significant to the Rule 6(e) analysis. Applicants do not contend that revealing the cooperation of Qantas and its covered current and former employees violates Rule 6(e). Rather, it is the specific identification of carve-outs and the

necessary implications thereof, just like naming unindicted co-conspirators, that violates grand jury secrecy for the reasons set forth previously in this memorandum.

Failing in their Rule 6(e) argument, the government next contended in <u>Robinson</u> that sealing the plea agreement was necessary because McWilliams suggested that "premature disclosure" of his cooperation might change or undermine his decision to cooperate, and because such disclosure "may threaten the safety of the defendant and his family." 935 F. 2d at 291. The Court rejected these arguments, explaining that newspaper articles already had publicized the ongoing investigation of the <u>Barry</u> case, as well as McWilliams' specific involvement and cooperation in that investigation. <u>Id.</u> Thus, the Court held: "Because disclosure of the contents of the plea agreement would only have confirmed to the public what was already validated by an official source – that McWilliams had agreed to cooperate with the government – it could hardly have posed any additional threat to the ongoing criminal investigation." <u>Id.</u> at 292.

Clearly, the circumstances here are entirely different. Applicants' identities as carved-out employees never have been publicly revealed, and doing so will irreparably harm their reputations. Yet, there is a narrowly tailored means of protecting Applicants without infringing on the public's right to access the material terms of the Plea Agreement – simply redact Applicants' names and state in the Plea Agreement that two additional employees have been carved out of the plea and have been separately notified through their counsel of their carve-out status, then file a separate list of their names with the Court under seal. The Division has not responded to arguments about the ease with which it could effectuate this remedy, and instead simply has taken the position it does not have to do so. In sum, simply redacting Applicants' names from the Plea Agreement is a narrowly tailored means of preventing irreparable harm to Applicants without infringing on the public's First Amendment rights.

24

2.    **Redacting Applicants' Names From the Publicly-Filed Plea Agreement Will Not Substantially Impair The Public's Rights Under the Crime Victims' Rights Act.**

The Division contended in <u>Hammond</u> that the Crime Victims' Rights Act of 2004, 18 U.S.C. § 3771 (the "Act"), "requires that the BA plea agreement be filed publicly without redaction." <u>Hammond</u> Gov't Opp. at 14 (relying on 18 U.S.C. § 3771(a)(2)-(3), (b)). In fact, the Act requires no such thing.

Section 3771(a)(2) of the Act actually provides that crime victims have a right "to reasonable, accurate, and timely notice of any <u>public court proceeding</u>, or any parole proceeding, involving the crime or of any release or escape of the accused." (Emphasis added.) Section 3771(a)(3) gives crime victims the right "not to be excluded from any such <u>public court proceeding</u>, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding." (Emphasis added.) Finally, section 3771(b) simply provides that "[i]n any <u>court proceeding</u> involving an offense against a crime victim, the court shall ensure that the crime victim is afforded the rights described in subsection (a). Before making a determination described in subsection (a)(3), the court shall make every effort to permit the fullest attendance possible by the victim and shall consider reasonable alternatives to the exclusion of the victim from the <u>criminal proceeding</u>. The reasons for any decision denying relief under this chapter shall be clearly stated on the record." (Emphasis added.)

Thus, the Act gives crime victims statutory rights of notice and access to public court <u>proceedings</u>, but these rights are not absolute. Indeed, Federal Rule of Evidence 615, commonly referred to as the "Rule on Witnesses," expressly provides that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses,

and may make the order of its own motion." Pursuant to this Rule, witnesses including victims in criminal cases routinely are excluded from otherwise public proceedings if they are expected to testify in the case. This often-invoked Rule further evidences that a crime victim's right of access to court proceedings is not absolute.

In an effort to salvage its argument that the Act gives crime victims the right of full access to plea agreements, the Division selectively quotes from the Code of Federal Regulations (28 C.F.R. § 50.9(a)) and represents that that section "set[s] forth guidelines for 'open judicial proceedings' to include 'plea proceedings' and 'portions thereof.'" See Hammond Gov't Opp. at 15. Upon closer examination, it is apparent that this interpretation is incorrect.

The full text of section 50.9(a) is: "These guidelines apply to all federal trials, pre- and post-trial evidentiary proceedings, arraignments, bond hearings, plea proceedings, sentencing proceedings, or portions thereof, except as indicated in paragraph (e) of this section." (Emphasis added.) Significantly, paragraph (e) provides that "[t]hese guidelines do not apply to . . . consideration or sealing of documents . . . [or] [g]rand jury proceedings or proceedings ancillary thereto." Paragraph (f) further states that "the records of any proceeding closed pursuant to this section, and still sealed 60 days after termination of the proceeding, shall be reviewed to determine if the reasons for closure are still applicable." Clearly, plea agreements and other documents are not themselves "proceedings," and the provisions of the Act addressing crime victims' rights to access such "proceedings" are not applicable to plea agreements. Finally, despite making sure to point out that the United States Attorney's Manual does not confer any rights on any party, the Division failed to mention the similar provision in this section of the C.F.R.: "The principles set forth in this section are intended to provide guidance to attorneys for

the Government and are not intended to create or recognize any legally enforceable right in any person." 28 C.F.R. § 50.9(g).

Here, Applicants do not argue that the full Plea Agreement should be filed under seal, or that the plea should be entered in a closed proceeding. Indeed, Applicants do not even object to the public representation in the Plea Agreement that there are six employees carved out of the Agreement. Rather, Applicants seek the narrow remedy of redacting their individual names from the Agreement to prevent the irreparable reputational harm they will suffer if their names are released in the context of the Plea Agreement. The Crime Victims' Rights Act does not preclude this Court from granting Applicants' requested relief.[6]

### 3.    Contractual Precision Can Be Achieved Without Publicly Naming Applicants in the Plea Agreement.

The Division has argued, both in <u>Hammond</u> and in discussions with Applicants' counsel, that Applicants' names must publicly be disclosed "to avoid ambiguity in a critical contractual provision." <u>Hammond</u> Gov't Opp. at 15-16. The plaintiff in <u>Hammond</u>, like Applicants here, suggested numerous alternatives to publicly naming carve-outs that still would ensure contractual precision. The Division has not articulated any reason why these suggestions are insufficient or otherwise are not possible.

In particular, to ensure that all covered current and former employees know with certainty that they are included in the plea, the Plea Agreement itself easily could include language specifying that six individuals are not subject to the agreement, and that each of those individuals

---

[6] In <u>Hammond</u>, the Division further relied on <u>Crompton</u> for the proposition that the Act "requires that the BA Plea Agreement be filed publicly without redaction." <u>Hammond</u> Gov't Opp. at 14 (citing <u>Crompton</u>, 399 F. Supp.2d at 1051). The <u>Crompton</u> court addressed the Act in the context of giving plaintiffs in ongoing civil lawsuits full access to the plea agreement, and therefore the only legal issue it addressed regarding the Act was whether the civil plaintiffs constituted "crime victims" within the meaning of the Act. <u>Crompton</u>, 399 F. Supp.2d at 1051. None of the other issues raised herein were addressed in <u>Crompton</u>.

separately has been notified of their status.  Additionally, the parties could file a specific carve-out list naming Applicants and the other carved-out employees under seal with the Court.  Alternatively, the Division simply could send a non-public letter to Qantas identifying the carve-outs, which would then be communicated to the named individuals, and the plea agreement could more broadly note that carve-outs personally have been notified of their status by the company.

Redacting Applicants' names from the plea agreement is a "narrowly tailored" means of restricting access to this aspect of the plea agreement, particularly if it is combined with an alternative to disclosure that effectively accomplishes the goal of contractual precision.  Robinson, 935 F.2d at 288 ("'The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'") (quoting Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1985)).  Redacting Applicants' names serves multiple overriding interests, including protecting the Applicants from irreparable reputational harm and preventing the Division from violating grand jury secrecy rules, Applicants' due process rights, and the express provisions of the U. S. Attorney's Manual.

## IV.    THE INJUNCTION IS IN THE PUBLIC INTEREST.

Granting Applicants' application for injunctive relief is in the public interest because it preserves grand jury secrecy and Applicants' due process rights.  In contrast, denying Applicants relief would uphold a practice of DOJ's Antitrust Division that violates due process and long-standing principles of grand jury secrecy, and is directly at odds with DOJ's own policy manual.

In an often-cited passage in the Rule 6(e) context, the Supreme Court explained the important interests served by safeguarding the secrecy of grand jury proceedings:

> First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom

28

they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

Douglas Oil, 441 U.S. at 219; see also In re Grand Jury Subpoena, Judith Miller, 493 F.3d at 154 (D.C. Cir. 2007). Clearly, upholding the sanctity of grand jury secrecy and protecting the due process rights of individuals is in the public interest.

## SPECIFIC PRAYER FOR RELIEF

For the foregoing reasons and any additional reasons that may be advanced in oral argument, Applicants respectfully request that this Court grant their Application and enjoin the United States from publicly identifying them in any manner that expressly or implicitly discloses that Applicants are unindicted subjects or targets of a grand jury investigation, and/or that Applicants engaged in wrongdoing, by redacting Applicants' names from the publicly filed Qantas Plea Agreement. Messrs. Cleary and Pang request a hearing on this Application.

Dated: December 20, 2007

Respectfully Submitted,

Henry W. Asbill, D.C. Bar No. 938811
Kerri L. Ruttenberg, D.C. Bar No. 467989
Dewey & LeBoeuf LLP
1101 New York Avenue, N.W., Suite 1100
Washington, D.C. 20009
(202) 986-8000

*Counsel for Stephen Cleary*

_Elizabeth G. Taylor_ /KR

Elizabeth G. Taylor, D.C. Bar No. 384893
Zuckerman Spaeder LLP
1800 M Street, NW
Suite 1000
Washington, DC 20036-5802
(202) 778-1800 (phone)
(202) 822-8106 (facsimile)
*Counsel for Harold Pang*


_Royal B. Martin_ /KR

Royal B. Martin (*Pro Hac Vice* Admission Pending)
Daniel T. Hartnett (*Pro Hac Vice* Admission
Pending)
Martin Brown & Sullivan, Ltd.
The Chicago Bar Association Building
321 South Plymouth Court, 10th Floor
Chicago, IL 60604
(312) 360-5000 (phone)
(312) 360 5026 (facsimile)
*Counsel for Harold Pang*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re INTERESTED PARTY 1 and<br>In re INTERESTED PARTY 2, in the Matter of<br>UNITED STATES v. QANTAS AIRWAYS LIMITED<br><br><br> | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Misc. Action No. _____<br><br>(Related to Crim. No.07-<br>00322 JDB)<br><br>**FILED UNDER SEAL** |

## <u>PROPOSED ORDER</u>

UPON CONSIDERATION of Applicants' Emergency Application for Injunctive Relief

and supporting Memorandum of Law, it is hereby

ORDERED that the Application is GRANTED, and it is further

ORDERED that the United States will redact Applicants' names from the Plea Agreement

with Qantas Airways Limited, currently scheduled to be filed publicly on January 14, 2008.


Dated: _____          _____

United States District Judge

**List of Counsel Entitled to be Notified of Entry of Order Pursuant to Local Civil Rule 7(l):**

Brent C. Snyder, Esq.
U.S. Department of Justice
1401 H Street, NW
Suite 3700
Washington, DC 20530
(202) 616-3186

W. Todd Miller, Esq.
Baker & Miller PLLC
2401 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20037
(202) 663-7820

Henry W. Asbill, Esq.
Kerri L. Ruttenberg, Esq.
Dewey & LeBoeuf LLP
1101 New York Avenue, NW
Suite 1100
Washington, DC 20009
(202) 986-8000

Elizabeth G. Taylor, Esq.
Zuckerman Spaeder LLP
1800 M Street, NW
Suite 1000
Washington, DC  20036-5802
(202) 778-1800

Royal B. Martin, Esq.
Daniel T. Hartnett, Esq.
Martin Brown & Sullivan, Ltd.
The Chicago Bar Association Building
321 South Plymouth Court, 10th Floor
Chicago, IL  60604
(312) 360-5000

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2007, I caused a true and correct copy of the

foregoing Memorandum of Law and Proposed Order to be served, by agreement, via e-mail in

PDF format and additionally via U.S. Mail, first class postage pre-paid, upon the following:

Brent C. Snyder, Esq.
U.S. Department of Justice
1401 H Street, NW
Suite 3700
Washington, DC 20530
(202) 616-3186
Brent.Snyder@usdoj.gov


W. Todd Miller, Esq.
Baker & Miller PLLC
2401 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20037
(202) 663-7820
TMiller@bakerandmiller.com

_____
Kerri L. Ruttenberg

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA )  Criminal No.
)
)  Filed:
v. )
)  Violation: 15 U.S.C. §1 (Sherman Act)
QANTAS AIRWAYS LIMITED, )
)
Defendant. )
_____ )

## PLEA AGREEMENT

The United States of America and Qantas Airways Limited ("defendant"), a corporation

organized and existing under the laws of Australia, hereby enter into the following Plea

Agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure ("Fed. R.

Crim. P."):

## RIGHTS OF DEFENDANT

1.    The defendant understands its rights:

(a)    to be represented by an attorney;

(b)    to be charged by Indictment;

(c)    as a corporation organized and existing under the laws of Australia, to

decline to accept service of the Summons in this case, and to contest venue and the

jurisdiction of the United States to prosecute this case against it in the United States

District Court for the District of Columbia;

(d)    to plead not guilty to any criminal charge brought against it;


Nov 27, 2007

   (e) to have a trial by jury, at which it would be presumed not guilty of the

charge and the United States would have to prove every essential element of the charged

offense beyond a reasonable doubt for it to be found guilty;

   (f) to confront and cross-examine witnesses against it and to subpoena

witnesses in its defense at trial;

   (g) to appeal its conviction if it is found guilty; and

   (h) to appeal the imposition of sentence against it.

### AGREEMENT TO PLEAD GUILTY
### AND WAIVE CERTAIN RIGHTS

  2. The defendant knowingly and voluntarily waives the rights set out in Paragraph

1(b)-(g) above, including all jurisdictional defenses to the prosecution of this case, and agrees

voluntarily to consent to the jurisdiction of the United States to prosecute this case against it in

the United States District Court for the District of Columbia. The defendant also knowingly and

voluntarily waives the right to file any appeal, any collateral attack, or any other writ or motion,

including but not limited to an appeal under 18 U.S.C. § 3742, that challenges the sentence

imposed by the Court if that sentence is consistent with or below the recommended sentence in

Paragraph 8 of this Plea Agreement, regardless of how the sentence is determined by the Court.

This agreement does not affect the rights or obligations of the United States as set forth in 18

U.S.C. § 3742(b) and (c). Pursuant to Fed. R. Crim. P. 7(b), the defendant will waive indictment

and plead guilty at arraignment to a one-count Information to be filed in the United States

District Court for the District of Columbia. The Information will charge the defendant with

participating in a combination and conspiracy to suppress and eliminate competition by fixing the

2



Nov 27, 2007

cargo rates charged to customers in the United States and elsewhere for international air shipments, from at least as early as January 1, 2000 until at least February 14, 2006, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

3.    The defendant, pursuant to the terms of this Plea Agreement, will plead guilty to the criminal charge described in Paragraph 2 above and will make a factual admission of guilt to the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 4 below.

## FACTUAL BASIS FOR OFFENSES CHARGED

4.    Had this case gone to trial, the United States would have presented evidence sufficient to prove the following facts against defendant:

(a)    For purposes of this Plea Agreement, the "relevant period" is that period from at least as early as January 1, 2000, until at least February 14, 2006. During the relevant period, the defendant was a corporation organized and existing under the laws of Australia and had its principal place of business in Mascot, NSW, Australia. During the relevant period, the defendant provided international air transportation for cargo on trans-Pacific routes to and from the United States ("air cargo services") and employed more than 200, but less than 1000, individuals. For its air cargo services, the defendant charged its customers a price that consisted of a base rate and, at times during the relevant period, various surcharges, such as a fuel surcharge and a security surcharge. The base rate and surcharges charged by the defendant to customers for air cargo services are collectively referred to herein as the "cargo rate." During the relevant period, the defendant's sales of air cargo services from the United States totaled at least $244.4 million.

3


Nov 27, 2007

(b)     During the relevant period, the defendant, through its officers and employees, including high-level personnel of the defendant's freight division, participated in a conspiracy with one or more providers of air cargo services, a primary purpose of which was to suppress and eliminate competition by fixing one or more components of the cargo rates charged to customers for certain U.S./trans-Pacific air cargo services. In furtherance of the conspiracy, the defendant, through its officers and employees, engaged in discussions and attended meetings with representatives of one or more providers of air cargo services. During these discussions and meetings, agreements were reached to fix one or more components of the cargo rates to be charged to purchasers of certain U.S./trans-Pacific air cargo services.

(c)     During the relevant period, certain air cargo shipments provided by one or more of the conspirator carriers, and aircraft necessary to transport the air cargo shipments, as well as payments for the air cargo shipments, traveled in interstate and foreign commerce. The business activities of the defendant and its co-conspirators in connection with the sale and provision of U.S./trans-Pacific air cargo services affected by this conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

## POSSIBLE MAXIMUM SENTENCE

5.     The defendant understands that the statutory maximum penalty which may be imposed against it upon conviction for a violation of Section One of the Sherman Antitrust Act is a fine in an amount equal to the greatest of:

(a)     $100 million (15 U.S.C. § 1);

(b)     twice the gross pecuniary gain the conspirators derived from the crime (18


Nov 27, 2007

U.S.C. § 3571(c) and (d)); or

(c)    twice the gross pecuniary loss caused to the victims of the crime by the conspirators (18 U.S.C. § 3571(c) and (d)).

6.    In addition, the defendant understands that:

(a)    pursuant to 18 U.S.C. § 3561(c)(1), the Court may impose a term of probation of at least one year, but not more than five years;

(b)    pursuant to §8B1.1 of the United States Sentencing Guidelines ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines") or 18 U.S.C. § 3563(b)(2) or 3663(a)(3), the Court may order it to pay restitution to the victims of the offense; and

(c)    pursuant to 18 U.S.C. § 3013(a)(2)(B), the Court is required to order the defendant to pay a $400 special assessment upon conviction for the charged crime.

## SENTENCING GUIDELINES

7.    The defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in effect on the day of sentencing, along with the other factors set forth in 18 U.S.C. § 3553(a), in determining and imposing sentence. The defendant understands that the Guidelines determinations will be made by the Court by a preponderance of the evidence standard. The defendant understands that although the Court is not ultimately bound to impose a sentence within the applicable Guidelines range, its sentence must be reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. § 3553(a). Pursuant to U.S.S.G. §1B1.8, the United States agrees that self-incriminating information that the defendant and its cooperating officers and employees have

5


Nov 27, 2007

provided and will provide to the United States pursuant to this Plea Agreement will not be used

to increase the volume of affected commerce attributable to the defendant or in determining the

defendant's applicable Guidelines range, except to the extent provided in U.S.S.G. §1B1.8(b).

## SENTENCING AGREEMENT

8.      Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant

agree that the appropriate disposition of this case is, and agree to recommend jointly that the

Court impose, a sentence requiring the defendant to pay to the United States a criminal fine of

$61 million payable in full before the fifteenth (15th) day after the date of judgment ( "the

recommended sentence"). The parties agree that there exists no aggravating or mitigating

circumstance of any kind, or to a degree, not adequately taken into consideration by the U.S.

Sentencing Commission in formulating the Sentencing Guidelines justifying a departure pursuant

to U.S.S.G. §5K2.0. The parties agree not to seek or support any sentence outside of the

Guidelines range nor any Guidelines adjustment for any reason that is not set forth in this Plea

Agreement. The parties further agree that the recommended sentence set forth in this Plea

Agreement is reasonable.

**Guidelines Analysis**

(a)      Pursuant to U.S.S.G. §8C2.5, the defendant's culpability score is 6. This

number is calculated by starting with 5 points, pursuant to U.S.S.G. §8C2.5(a); adding 3 points

because the unit of organization within which the offense was committed has more than 200 but

less than 1,000 employees and an individual within high-level personnel of the unit participated

in, condoned or was willfully ignorant of the offense, pursuant to U.S.S.G. §8C2.5(b)(3)(B); and

6


Nov 27, 2007

subtracting 2 points because the defendant fully cooperated in the investigation and clearly

demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct,

pursuant to U.S.S.G. §8C2.5(g)(2).  Accordingly, the minimum multiplier to be applied to the

base fine is 1.2 and the maximum multiplier is 2.4, pursuant to U.S.S.G. §8C2.6.

       (b)    The base fine is 20% of the volume of commerce, pursuant to U.S.S.G.

§2R1.1(d)(1) and §8C2.4(a) and (b).  The parties agree that the affected volume of commerce

attributable to the defendant for purposes of the Information is $244.4 million, adjusted to reflect

information provided to the United States pursuant to U.S.S.G. §1B1.8.  The base fine for

relevant air cargo shipments from the United States is $48.9 million (20% of $244.4 million).

Applying the multipliers of 1.2 and 2.4 to this amount, the fine range for the relevant air cargo

shipments from the United States is between $58.7 million and $117.4 million.

       (c)    The volume of affected commerce calculation in paragraph 8(b) above

does not include commerce related to the defendant's cargo shipments on routes into the United

States.  The defendant takes the position that any agreements reached with competitors with

respect to cargo shipments on routes into the United States should not be included in the

defendant's volume of affected commerce calculation pursuant to U.S.S.G. §2R1.1(d)(1).  The

United States disputes the defendant's position and contends that the defendant's cargo

shipments on routes into the United States during the charged conspiracy period violated the U.S.

antitrust laws.  Moreover, the United States asserts that a Guidelines fine calculation that fails to

account for cargo shipments into the United States affected by the conspiracy charged in the

Information would understate the seriousness of, and the harm caused to U.S. victims by, the

7



offense and would not provide just punishment.

  (d) The parties recognize the complexity of litigating the issues set forth in

Paragraph 8(c) and the resulting burden on judicial and party resources, and agree that the

appropriate resolution of this issue is to impose a fine in the lower end of the Guidelines

sentencing range consistent with the early cooperation and substantial assistance provided by the

defendant in this matter. The parties agree that the appropriate fine for the commerce affected by

defendant's participation in the charged conspiracy is $61 million payable as set forth in

paragraph 8 above.

  (e) The defendant understands that the Court will order it to pay a $400

special assessment, pursuant to 18 U.S.C. § 3013(a)(2)(B), in addition to any fine imposed.

  (f) Based on the defendant's substantial assistance, both parties will

recommend that no term of probation be imposed, but the defendant understands that the Court's

denial of this request will not void this Plea Agreement.

  (g) The United States and the defendant jointly submit that this Plea

Agreement, together with the record that will be created by the United States and the defendant at

the plea and sentencing hearings, and the further disclosure described in Paragraph 9, will

provide sufficient information concerning the defendant, the crime charged in this case, and the

defendant's role in the crime to enable the meaningful exercise of sentencing authority by the

Court under 18 U.S.C. § 3553. The United States and defendant agree to request jointly that the

Court accept the defendant's guilty plea and impose sentence on an expedited schedule as early

as the date of arraignment, based upon the record provided by the defendant and the United

8


Nov 27, 2007

States, under the provisions of Fed. R. Crim. P. 32(c)(1)(A)(ii) and U.S.S.G. §6A1.1. The

Court's denial of the request to impose sentence on an expedited schedule will not void this Plea

Agreement.

    9.      Subject to the ongoing, full, and truthful cooperation of the defendant described in

Paragraph 12 of this Plea Agreement, and before sentencing in the case, the United States will

fully advise the Court and the Probation Office of the fact, manner, and extent of the defendant's

cooperation and its commitment to prospective cooperation with the United States' investigation

and prosecutions, all material facts relating to the defendant's involvement in the charged

offense, and all other relevant conduct.

    10.     The United States and the defendant understand that the Court retains complete

discretion to accept or reject the recommended sentence provided for in Paragraph 8 of this Plea

Agreement.

        (a)     If the Court does not accept the recommended sentence, the United States

and the defendant agree that this Plea Agreement, except for Paragraph 10(b) below, shall

be rendered void.

        (b)     If the Court does not accept the recommended sentence,

the defendant will be free to withdraw its guilty plea (Fed. R. Crim. P. 11(c)(5) and (d)).

If the defendant withdraws its plea of guilty, this Plea Agreement, the guilty plea, and any

statement made in the course of any proceedings under Fed. R. Crim. P. 11 regarding the

guilty plea or this Plea Agreement or made in the course of plea discussions with an

attorney for the government shall not be admissible against the defendant in any criminal

9



or civil proceeding, except as otherwise provided in Fed. R. Evid. 410. In addition, the defendant agrees that, if it withdraws its guilty plea pursuant to this subparagraph of the Plea Agreement, the statute of limitations period for any offense referred to in Paragraph 14 of this Plea Agreement shall be tolled for the period between the date of the signing of the Plea Agreement and the date the defendant withdrew its guilty plea or for a period of sixty (60) days after the date of the signing of the Plea Agreement, whichever period is greater.

11.     In light of pending civil class action lawsuits filed against the defendant, which potentially provide for a recovery of a multiple of actual damages, the United States agrees that it will not seek a restitution order for the offense charged in the Information.

### DEFENDANT'S COOPERATION

12.     The defendant and its subsidiaries will cooperate fully and truthfully with the United States in the prosecution of this case, the conduct of the current federal investigation of violations of federal antitrust and related criminal laws involving the sale of international air cargo transportation services, any other federal investigation resulting therefrom, and any litigation or other proceedings arising or resulting from any such investigation to which the United States is a party ("Federal Proceeding"). The ongoing, full, and truthful cooperation of the defendant and its subsidiaries shall include, but not be limited to:

(a)     producing to the United States all non-privileged documents, information, and other materials (with translations into English), wherever located, in the possession, custody, or control of the defendant or any of its subsidiaries, requested by the United

10


Nov 27, 2007

States in connection with any Federal Proceeding; and

(b)     using its best efforts to secure the ongoing, full, and truthful cooperation, as defined in Paragraph 13 of this Plea Agreement, of the current and former directors, officers, and employees of the defendant or any of its subsidiaries as may be requested by the United States – but excluding████████ ████████, Stephen Cleary, Harold Pang, ████████, and ████████ – including making these persons available in the United States and at other mutually agreed-upon locations, at the defendant's expense, for interviews and the provision of testimony in grand jury, trial, and other judicial proceedings in connection with any Federal Proceeding.

13.     The ongoing, full, and truthful cooperation of each person described in Paragraph 12(b) above will be subject to the procedures and protections of this paragraph, and shall include, but not be limited to:

(a)     producing in the United States and at other mutually agreed-upon locations all non-privileged documents, including claimed personal documents, and other materials, wherever located, requested by attorneys and agents of the United States in connection with any Federal Proceeding;

(b)     making himself or herself available for interviews in the United States and at other mutually agreed-upon locations, not at the expense of the United States, upon the request of attorneys and agents of the United States;

(c)     responding fully and truthfully to all inquiries of the United States in connection with any Federal Proceeding, without falsely implicating any person or

11


Nov 27, 2007

intentionally withholding any information, subject to the penalties of making false statements (18 U.S.C. § 1001) and obstruction of justice (18 U.S.C. § 1503, *et seq.*);

(d)    otherwise voluntarily providing the United States with any non-privileged material or information not requested in (a) - (c) of this paragraph that he or she may have that is related to any Federal Proceeding;

(e)    when called upon to do so by the United States in connection with any Federal Proceeding, testifying in grand jury, trial, and other judicial proceedings in the United States fully, truthfully, and under oath, subject to the penalties of perjury (18 U.S.C. § 1621), making false statements or declarations in grand jury or court proceedings (18 U.S.C. § 1623), contempt (18 U.S.C. §§ 401-402), and obstruction of justice (18 U.S.C. § 1503, *et seq.*); and

(f)    agreeing that, if the agreement not to prosecute him or her in this Plea Agreement is rendered void under Paragraph 15(c), the statute of limitations period for any Relevant Offense as defined in Paragraph 15(a) shall be tolled as to him or her for the period between the date of the signing of this Plea Agreement and six (6) months after the date that the United States gave notice of its intent to void its obligations to that person under the Plea Agreement.

## GOVERNMENT'S AGREEMENT

14.    Upon acceptance of the guilty plea called for by this Plea Agreement and the imposition of the recommended sentence, and subject to the cooperation requirements of Paragraph 12 of this Plea Agreement, the United States agrees that it will not bring further

12


Nov 27, 2051

criminal charges against the defendant or any of its subsidiaries for any act or offense committed

before the date of this Plea Agreement that was undertaken in furtherance of an antitrust

conspiracy involving the sale of international air cargo transportation services. The

nonprosecution terms of this paragraph do not apply to civil matters of any kind, to any violation

of the federal tax or securities laws, or to any crime of violence.

15.    The United States agrees to the following:

(a)    Upon the Court's acceptance of the guilty plea called for by this Plea

Agreement and the imposition of the recommended sentence and subject to the

exceptions noted in Paragraph 15(c), the United States will not bring criminal charges

against any current or former director, officer, or employee of the defendant or its

subsidiaries for any act or offense committed before the date of this Plea Agreement and

while that person was acting as a director, officer, or employee of the defendant or its

subsidiaries that was undertaken in furtherance of an antitrust conspiracy involving the

sale of international air cargo transportation services ("Relevant Offense"), except that the

protections granted in this paragraph shall not apply to ███████████ ███████████,

Stephen Cleary, Harold Pang, ███████████, and ███████████;

(b)    Should the United States determine that any current or former director,

officer, or employee of the defendant or its subsidiaries may have information relevant to

any Federal Proceeding, the United States may request that person's cooperation under

the terms of this Plea Agreement by written request delivered to counsel for the

individual (with a copy to the undersigned counsel for the defendant) or, if the individual

13



is not known by the United States to be represented, to the undersigned counsel for the defendant;

(c)     If any person requested to provide cooperation under Paragraph 15(b) fails to comply with his or her obligations under Paragraph 13, then the terms of this Plea Agreement as they pertain to that person, and the agreement not to prosecute that person granted in this Plea Agreement, shall be rendered void;

(d)     Except as provided in Paragraph 15(e), information provided by a person described in Paragraph 15(b) to the United States under the terms of this Plea Agreement pertaining to any Relevant Offense, or any information directly or indirectly derived from that information, may not be used against that person in a criminal case, except in a prosecution for perjury (18 U.S.C. § 1621), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), or obstruction of justice (18 U.S.C. § 1503, *et seq.*);

(e)     If any person who provides information to the United States under this Plea Agreement fails to comply fully with his or her obligations under Paragraph 13 of this Plea Agreement, the agreement in Paragraph 15(d) not to use that information or any information directly or indirectly derived from it against that person in a criminal case shall be rendered void;

(f)     The nonprosecution terms of this paragraph do not apply to civil matters of any kind, to any violation of the federal tax or securities laws, or to any crime of violence; and

(g)     Documents provided under Paragraphs 12(a) and 13(a) shall be deemed

14



responsive to outstanding grand jury subpoenas issued to the defendant or any of its subsidiaries.

16.    The United States agrees that when any person travels to the United States for interviews, grand jury appearances, or court appearances pursuant to this Plea Agreement, or for meetings with counsel in preparation therefor, the United States will take no action, based upon any Relevant Offense, to subject such person to arrest, detention, or service of process, or to prevent such person from departing the United States. This paragraph does not apply to an individual's commission of perjury (18 U.S.C. § 1621), making false statements (18 U.S.C. § 1001), making false statements or declarations in grand jury or court proceedings (18 U.S.C. § 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), or contempt (18 U.S.C. §§ 401-402) in connection with any testimony or information provided or requested in any Federal Proceeding.

17.    The defendant understands that it may be subject to administrative action by federal or state agencies other than the United States Department of Justice, Antitrust Division, based upon the convictions resulting from this Plea Agreement, and that this Plea Agreement in no way controls whatever action, if any, other agencies may take. However, the United States agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such administrative action of the fact, manner, and extent of the cooperation of the defendant and its subsidiaries as a matter for that agency to consider before determining what administrative action, if any, to take.

15        Nov 27, 2007

## REPRESENTATION BY COUNSEL

18.    The defendant has been represented by counsel and is fully satisfied that its

attorneys have provided competent legal representation.  The defendant has thoroughly reviewed

this Plea Agreement and acknowledges that counsel has advised it of the nature of the charges,

any possible defenses to the charges, and the nature and range of possible sentences.

### VOLUNTARY PLEA

19.    The defendant's decision to enter into this Plea Agreement and to tender a plea of

guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises,

or representations other than the representations contained in this Plea Agreement.  The United

States has made no promises or representations to the defendant as to whether the Court will

accept or reject the recommendations contained within this Plea Agreement.

### VIOLATION OF PLEA AGREEMENT

20.    The defendant agrees that, should the United States determine in good faith,

during the period that any Federal Proceeding is pending, that the defendant or any of its

subsidiaries have failed to provide full and truthful cooperation, as described in Paragraph 12 of

this Plea Agreement, or has otherwise violated any provision of this Plea Agreement, the United

States will notify counsel for the defendant in writing by personal or overnight delivery or

facsimile transmission and may also notify counsel by telephone of its intention to void any of its

obligations under this Plea Agreement (except its obligations under this paragraph), and the

defendant and its subsidiaries shall be subject to prosecution for any federal crime of which the

United States has knowledge including, but not limited to, the substantive offenses relating to the

16



investigation resulting in this Plea Agreement. The defendant and its subsidiaries agree that, in

the event that the United States is released from its obligations under this Plea Agreement and

brings criminal charges against the defendant or its subsidiaries for any offense referred to in

Paragraph 14 of this Plea Agreement, the statute of limitations period for such offense shall be

tolled for the period between the date of the signing of this Plea Agreement and six (6) months

after the date the United States gave notice of its intent to void its obligations under this Plea

Agreement.

    21.    The defendant understands and agrees that in any further prosecution

of it or its subsidiaries resulting from the release of the United States from its obligations under

this Plea Agreement, because of the defendant's or its subsidiaries' violation of the Plea

Agreement, any documents, statements, information, testimony, or evidence provided by it, its

subsidiaries, or current or former directors, officers, or employees of it or its subsidiaries to

attorneys or agents of the United States, federal grand juries, or courts, and any leads derived

therefrom, may be used against it or its subsidiaries in any such further prosecution. In addition,

the defendant unconditionally waives its right to challenge the use of such evidence in any such

further prosecution, notwithstanding the protections of Fed. R. Evid. 410.

## ENTIRETY OF AGREEMENT

    22.    This Plea Agreement constitutes the entire agreement between the

United States and the defendant concerning the disposition of the criminal charges in this case.

This Plea Agreement cannot be modified except in writing, signed by the United States and the

defendant.

17      *Nov 27, 2007*

23.    The undersigned is authorized to enter this Plea Agreement on behalf of the

defendant as evidenced by the Resolution of the Board of Directors of the defendant attached to,

and incorporated by reference in, this Plea Agreement.

24.    The undersigned attorneys for the United States have been authorized

by the Attorney General of the United States to enter this Plea Agreement on behalf of the United

States.

25.    A facsimile signature shall be deemed an original signature for the purpose of

executing this Plea Agreement.  Multiple signature pages are authorized for the purpose of

executing this Plea Agreement.

DATED: November 27, 2007

Respectfully submitted,

BY: _____
QANTAS AIRWAYS LIMITED
By: Brett Johnson
Its: General Counsel

BY: _____
W. Todd Miller
Kimberly Shaw

Counsel for Qantas Airways Limited

BY: _____
Mark R. Rosman, Assistant Chief
Brent Snyder, Trial Attorney
Mark C. Grundvig, Trial Attorney
Kathryn M. Hellings, Trial Attorney
Elizabeth Aloi, Trial Attorney
U.S. Department of Justice
Antitrust Division
1401 H Street, N.W.
Suite 3700
Washington, D.C. 20530
Tel.: (202) 307-6694
Fax: (202) 514-6525

18

**EXHIBIT B**

This document is available in three formats: this web page (for browsing content), PDF (comparable to original document formatting), and WordPerfect. To view the PDF you will need Acrobat Reader, which may be downloaded from the Adobe site. For an official signed copy, please contact the Antitrust Documents Group.

 **Department of Justice**

FOR IMMEDIATE RELEASE
TUESDAY, NOVEMBER 27, 2007
WWW.USDOJ.GOV

A
(202) 514-200
TDD (202) 514-188

## QANTAS AIRWAYS AGREES TO PLEAD GUILTY AND PAY CRIMINAL FINES FOR FIXING PRICES ON CARGO SHIPMENTS

WASHINGTON — Australian-based Qantas Airways Limited has agreed to plead guilty and pay a $61 million criminal fine for its role in a conspiracy to fix rates for international air cargo shipments, the Department of Justice announced today.

According to the charges filed today in the U.S. District Court for the District of Columbia, Qantas engaged in a conspiracy to eliminate competition by fixing the rates for shipments of cargo to and from the United States and elsewhere from at least January 2000 to February 2006. During the time period covered by the felony charge, Qantas was the largest carrier of cargo between the United States and Australia and earned more than $600 million from its cargo flights to and from the United States.

Under the plea agreement, which is subject to court approval, Qantas has agreed to cooperate with the Department's ongoing investigation.

"Qantas' guilty plea sends a clear message that those who engage in price fixing and other forms of illegal collusion will pay a heavy price for their crimes," said Thomas O. Barnett, Assistant Attorney General in charge of the Department's Antitrust Division. "The shipment of consumer products by air transportation is critical to our global economy. Our investigation into this important industry will continue, and we will aggressively pursue those who engage in criminal conduct that harms American consumers."

Qantas is charged with carrying out the price-fixing conspiracy with co-conspirators by:

- Participating in meetings, conversations and communications in the United States and elsewhere to discuss the cargo rates to be charged on certain trans-Pacific routes to and from the United States;

- Agreeing, during those meetings, conversations and communications, on the cargo rates for certain trans-Pacific routes to and from the United States;

- Levying cargo rates in accordance with the agreements reached; and

- Engaging in meetings, conversations and communications to monitor and enforce the agreed-upon rates.

In August 2007, British Airways Plc and Korean Air Lines Co. Ltd. pleaded guilty and were sentenced to pay separate $300 million criminal fines for their roles in conspiracies to fix the prices of passenger and cargo flights.

The ongoing investigation is being conducted by the Antitrust Division's National Criminal Enforcement Section and the Federal Bureau of Investigation.

Qantas is charged with price fixing in violation of the Sherman Act. A violation of the Sherman Act carries a maximum fine of $100 million for corporations. The maximum fine may be increased to twice the gain derived from the crime or twice the loss suffered by the victims of the crime, if either of those amounts is greater than the statutory maximum fine.

Anyone with information concerning price fixing or other anticompetitive conduct in the air transportation industry is urged to call the National Criminal Enforcement Section of the Antitrust Division at 202-307-6694.

### ###

07-943

**EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re INTERESTED PARTY 1 and<br>In re INTERESTED PARTY 2, in the Matter of<br>UNITED STATES v. QANTAS AIRWAYS LIMITED | Misc. Action No. _____<br><br>(Related to Crim. No.07-<br>00322 JDB)<br><br>**FILED UNDER SEAL** |

**DECLARATION OF HENRY W. ASBILL, ESQ. IN SUPPORT OF EMERGENCY
APPLICATION FOR INJUNCTIVE RELIEF BY INTERESTED PARTIES
PURSUANT TO LOCAL CRIMINAL RULE 57.6
IN _U.S. V. QANTAS AIRWAYS LIMITED_ (Cr. No. 07-00322-JDB)**

Henry W. Asbill, under penalty of perjury, declares as follows:

1.      I am a partner with the law firm of Dewey & LeBoeuf, LLP.  We have been retained by Stephen Cleary, presently Qantas's Group General Manager for Freight, to represent him in connection with an ongoing grand jury investigation being led by the Antitrust Division (the "Division") of the United States Department of Justice (the "DOJ").  The investigation involves allegations that Qantas Airways Limited ("Qantas") and others violated the Sherman Act through a conspiracy to fix air cargo prices.

2.      I submit this declaration in support of Mr. Cleary's application for an Order enjoining the Division from publicly identifying or referring to him in any manner that explicitly or implicitly discloses that he is an unindicted co-conspirator with past or present executives at Qantas and/or their counterparts at other airlines, or that he is, or was, otherwise an unindicted subject or target of a grand jury investigation.

3.     On November 27, 2007, the United States government filed a Criminal Information (the "Information") in the United States District Court for the District of Columbia, charging Qantas with one count of violating Section 1 of the Sherman Act, 15 U.S.C. § 1.  The Information charges that Qantas and certain unidentified co-conspirators unreasonably restrained trade in violation of the Sherman Act.

4.     The same day, the Antitrust Division also issued a press release announcing a plea agreement with Qantas (the "Plea Agreement"), wherein Qantas agreed to plead guilty, pay a $61 million criminal fine, and "to cooperate with the Department's ongoing investigation."  The November 27, 2007, press release further states: "Our investigation into this important industry will continue, and we will aggressively pursue those who engage in criminal conduct that harms American consumers."

5.     In connection with my representation of Mr. Cleary, I have reviewed a copy of the plea agreement that Qantas and the Department of Justice intend to file publicly on January 14, 2008.

6.     In exchange for Qantas's guilty plea, ongoing cooperation, and a $61 million fine, the Department of Justice will be granting immunity from criminal prosecution to virtually all current and former Qantas employees, between 700 and 1,000 people, for any act or offense committed before the date of the Plea Agreement that was undertaken in furtherance of the anti-trust conspiracy described in the agreement.  Six current and former Qantas employees are expressly excluded from the immunity protection and cooperation obligations in the Plea Agreement.  Mr. Cleary is one of those named "carve-outs."

7.     In the course of my several conferences with various staff attorneys in the Antitrust Division in November and December, I requested that the Division either include my

client in the plea agreement or at least not publicly identify Mr. Cleary by name in the Plea

Agreement as among those persons specifically excluded from the grant of immunity. I

explained my view that such action violates my client's Fifth Amendment due process rights,

contravenes Federal Rule of Criminal Procedure 6(e), and will irreparably harm my client's

personal and professional reputation. The DOJ Antitrust Division staff attorneys denied my

requests that they refrain from naming Mr. Cleary in the Plea Agreement, but suggested I could

speak with supervising attorneys in the Division.

       8.    On December 13, 2007, I met with supervising attorneys within the DOJ's

Antitrust Division, including Thomas O. Barnett, Assistant Attorney General for Antitrust, and

Scott D. Hammond, Deputy Assistant Attorney General for Criminal Enforcement. Again, I

requested that Mr. Cleary not be publicly identified in the Qantas Plea Agreement as a carve-out,

and explained the bases for my request.

       9.    On December 14, 2007, I was advised in a phone call by a DOJ Antitrust

Division staff attorney that the Division would not change its policy or otherwise accommodate

my client's concerns and will oppose my application for injunctive relief. I further understand

that the staff attorneys in subsequent calls with my associate, Kerri Ruttenberg, said the Antitrust

Division will not oppose the filing under seal of all substantive papers relating to my client or the

setting of a reasonable expedited briefing and argument schedule.

       10.    I declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury under the

laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on: December 19, 2007

 

 

_____

Henry W. Asbill  (signed with permission

by Kerri L. Ruttenberg)

Kerri L. Ruttenberg

**EXHIBIT D**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re INTERESTED PARTY 1 and<br>In re INTERESTED PARTY 2, in the Matter of<br>UNITED STATES v. QANTAS AIRWAYS LIMITED | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Misc. Action No. _____<br><br>(Related to Crim. No.07-<br>00322 JDB)<br><br>**FILED UNDER SEAL** |

**DECLARATION OF ROYAL B. MARTIN, ESQ. IN SUPPORT OF EMERGENCY
APPLICATION FOR INJUNCTIVE RELIEF BY INTERESTED PARTIES
PURSUANT TO LOCAL CRIMINAL RULE 57.6
IN _U.S. V. QANTAS AIRWAYS, LIMITED_ (Cr. No. 07-00322-JDB)**

Royal B. Martin, under penalty of perjury, declares as follows:

1. I am a partner with the law firm of Martin, Brown & Sullivan, Ltd. in Chicago, Illinois. We have been retained by Harold Pang, presently Qantas's General Manager, Freight Sales, to represent him in connection with an ongoing grand jury investigation being led by the Antitrust Division (the "Division") of the United States Department of Justice (the "DOJ"). The investigation involves allegations that Qantas Airways, Limited ("Qantas") and others violated the Sherman Act through a conspiracy to fix air cargo prices.

2. I submit this declaration in support of Mr. Pang's application for an Order enjoining the Division from publicly identifying or referring to him in any manner that explicitly or implicitly discloses that he is an unindicted co-conspirator with past or present executives at Qantas and/or their counterparts at other airlines, or that he is, or was, otherwise an unindicted subject or target of a grand jury investigation.

3.    On November 27, 2007, the United States government filed a Criminal Information (the "Information") in the United States District Court for the District of Columbia, charging Qantas with one count of violating Section 1 of the Sherman Act, 15 U.S.C. § 1.    The Information charges that Qantas and certain unidentified co-conspirators unreasonably restrained trade in violation of the Sherman Act.

4.    The same day, the Antitrust Division also issued a press release announcing a plea agreement with Qantas (the "Plea Agreement"), wherein Qantas agreed to plead guilty, pay a $61 million criminal fine, and "to cooperate with the Department's ongoing investigation."  The November 27, 2007, press release further states: "Our investigation into this important industry will continue, and we will aggressively pursue those who engage in criminal conduct that harms American consumers."

5.    In connection with my representation of Mr. Pang, I have reviewed a copy of the plea agreement that Qantas and the Department of Justice intend to file publicly on January 14, 2008.

6.    In exchange for Qantas's guilty plea, ongoing cooperation, and a $61 million fine, the Department of Justice will be granting immunity from criminal prosecution to virtually all current and former Qantas employees, between 700 and 1,000 people, for any act or offense committed before the date of the Plea Agreement that was undertaken in furtherance of the anti-trust conspiracy described in the agreement.  Six current and former Qantas employees are expressly excluded from the immunity protection and cooperation obligations in the Plea Agreement.  Mr. Pang is one of those named "carve-outs."

7.     In the course of my several conferences with various staff attorneys in the Antitrust Division in November and December, I requested that the Division either include my client in the plea agreement or at least not publicly identify Mr. Pang by name in the Plea Agreement as among those persons specifically excluded from the grant of immunity.  I explained my view that such action violates my client's Fifth Amendment due process rights, contravenes Federal Rule of Criminal Procedure 6(e), and will irreparably harm my client's personal and professional reputation.  The DOJ Antitrust Division staff attorneys denied my requests that they refrain from naming Mr. Pang in the Plea Agreement, but suggested I could speak with supervising attorneys in the Division.

8.     On December 13, 2007, I met with supervising attorneys within the DOJ's Antitrust Division, including Thomas O. Barnett, Assistant Attorney General for Antitrust, and Scott D. Hammond, Deputy Assistant Attorney General for Criminal Enforcement.  Again, I requested that Mr. Pang not be publicly identified in the Qantas Plea Agreement as a carve-out, and explained the bases for my request.

9.     On December 14, 2007, I was advised that the Division would not change its policy or otherwise accommodate my client's concerns and will oppose my application for injunctive relief.  I further understand that the Division in subsequent calls with Kerri Ruttenberg, Esq., an attorney with Dewey & LeBoeuf, LLP said the Antitrust Division will not oppose the filing under seal of all substantive papers relating to my client or the setting of a reasonable expedited briefing and argument schedule.

10.    I declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on:  December 19, 2007

_____
Royal B. Martin

**EXHIBIT E**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------------------------x

JOHN DOE,                                                    :

       Plaintiff,                                          :

   -against-                                                :       Civil Action No. _____

SCOTT D. HAMMOND, DEPUTY ASST. ATTORNEY    :
GENERAL, ANTITRUST DIVISION, DEPT. OF
JUSTICE; LISA M. PHELAN, CHIEF, NATIONAL         :
CRIMINAL ENFORCEMENT SECTION; MARC
SIEGEL, DIRECTOR OF CRIMINAL ENFORCEMENT;  :
MARK R. ROSMAN, ASST. CHIEF

       Defendants.                                         :

                             :

------------------------------------------------------------------------x

### PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION TO ENJOIN PUBLIC DISCLOSURE OF MATTERS BEFORE THE GRAND JURY

Plaintiff John Doe respectfully applies to this Court for a temporary restraining

order and preliminary injunctive relief pursuant to Rule 65 of the Federal Rules of Civil

Procedure to enjoin Defendants Scott D. Hammond, Deputy Assistant Attorney General of the

Department of Justice's Antitrust Division; Lisa M. Phelan, Chief of the National Criminal

Enforcement Section of the Antitrust Division; Marc Siegel, Director of Criminal Enforcement

of the Antitrust Division; and Mark R. Rosman, Assistant Chief within the Antitrust Division,

from publicly identifying Plaintiff in any manner that explicitly or implicitly discloses that

Plaintiff is an unindicted co-conspirator of British Airways or is or was otherwise an unindicted

subject of a grand jury investigation.

For the reasons set forth in detail in the accompanying Declaration of Daniel S. Ruzumna and Memorandum of Law, Plaintiff's application should be granted.

Dated: August 20, 2007

Respectfully Submitted,
PATTERSON BELKNAP WEBB & TYLER LLP

By: Daniel S. Ruzumna (DC Bar No. 450040)
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2034

*Attorneys for Plaintiff*

## CERTIFICATE OF COUNSEL PURSUANT TO LOCAL CIVIL RULE 65.1(a)

I, DANIEL S. RUZUMNA, hereby certify under penalty of perjury that actual notice of the time of making this application, along with copies of all the pleadings and papers filed to date in this action, have been furnished to the Defendants.

Dated:  August 20, 2007

_____
Daniel S. Ruzumna (DC Bar No. 450040)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

-----------------------------------------------------------------------x

JOHN DOE,                                                 :

        Plaintiff,                                       :

    -against-                                            :        Civil Action No. _____

SCOTT D. HAMMOND, ACTING ASST. ATTORNEY    :
GENERAL, ANTITRUST DIVISION, DEPT. OF
JUSTICE; LISA M. PHELAN, CHIEF, NATIONAL        :
CRIMINAL ENFORCEMENT SECTION; MARC
SIEGEL, DIRECTOR OF CRIMINAL ENFORCEMENT;  :
MARK R. ROSMAN, ASST. CHIEF

                                          :

        Defendants.                                     :

-----------------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION TO ENJOIN PUBLIC DISCLOSURE OF MATTERS BEFORE THE GRAND JURY

PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2034

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

Page

Preliminary Statement..............................................................................................................2

Relevant Facts.........................................................................................................................3

Argument ................................................................................................................................6

I.    Plaintiff Is Likely To Prevail on the Merits ..........................................................................7

   A.  Rule 6(e) Prohibits Disclosure of Matters Before the Grand Jury.........................................7

   B.  Publicly Disclosing Plaintiff's Identity in the BA Plea Agreement
      Would Violate his Fifth Amendment Right to Due Process of Law ...................................11

   C.  Defendants' Intended Actions Would Violate Even the Department
      of Justice's Policies Prohibiting the Identification of Uncharged
      Third Parties.............................................................................................................12

II.   Plaintiff Will Suffer Severe and Irreparable Harm Unless Defendants' Intended Actions Are
    Enjoined ..............................................................................................................................14

III.  Issuing a Temporary Restraining Order and/or Preliminary Injunction Will Not Impair the
    Rights of Defendants or Other Parties ...................................................................................15

IV.  Issuing Plaintiff's Requested Relief Is in the Public Interest .................................................16

Conclusion ...........................................................................................................................18

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Barry v. United States*, 865 F.2d 1317 (D.C. Cir. 1989) ...................................................7

*CityFed Fin. Corp v. Office of Thrift Supervision*, 58 F.3d 738 (D.C. Cir. 1995)...............6

*DiLeo v. C.I.R.*, 959 F.2d 16 (2d Cir. 1992) ................................................................8, 10

*Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211 (1979)...............................16, 17

*Finn v. Schiller*, 72 F.3d 1182 (4th Cir. 1996).........................................................7, 13, 14

*Fund for Constitutional Government v. National Archives & Records Serv.*,
    656 F.2d 856 (D.C. Cir. 1981)....................................................................................9

*In re Grand Jury Investigation of Cuisinarts*, 665 F.2d 24 (2d Cir. 1981)........................9

*In re Grand Jury Proceedings, Special Grand Jury 89-2*,
    813 F. Supp. 1451 (D. Colo. 1992)......................................................................11-12

*In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1138 (D.C. Cir. 2006).....................8

*Lucas v. Turner*, 725 F.2d 1095 (7th Cir. 1984)................................................................8

*In re Motions of Dow Jones & Co.*, 142 F.3d 496 (D.C. Cir. 1998)..................................15

*Sea Containers Ltd. v Stena AB*, 890 F.2d 1205 (D.C. Cir. 1989)......................................6

*In re: Sealed Case No. 98-3077*, 151 F.3d 1059 (D.C. Cir. 1998) ......................................7

*Serono Laboratoriess, Inc. v. Shalala*, 158 F.3d 1313 (D.C.Cir.1998) ..............................6

*In re Smith*, 656 F.2d 1101 (5th Cir. 1981).......................................................................13

*United States. v Anderson*, 55 F. Supp. 2d 1163 (D. Kan 1999) ......................................13

*United States v. Briggs*, 514 F.2d 794 (5th Cir. 1975)..................................................11, 13

*United States v. Chadwick*, 556 F.2d 450 (9th Cir. 1977) .................................................11

*United States v. Crompton*, 399 F. Supp. 2d 1047 (N.D. Cal. 2005)...........................10, 11

*United States v. DePalma*, 461 F. Supp. 778 (S.D.N.Y. 1978) .........................................12

Table of Authorities
(continued)

*United States v. Jones*, 766 F.2d 994 (6th Cir. 1985) ........................................................10

*United States v. Phillips*, 843 F.2d 438 (11th Cir. 1988)...............................................8, 14

*United States v. Sells Engineering, Inc.*, 463 U.S. 418 (1983) ......................................7, 14

*United States v. Smith*, 776 F.2d 1104 (3d Cir. 1985) ..................................................9, 10

*United States v. Smith*, 123 F.3d 140 (3d Cir. 1997) ........................................................17

*United States v. Smith*, 992 F. Supp. 743 (D.N.J. 1998)...................................................13

## FEDERAL STATUTES

Fed. R. Crim. P. 6(e) ................................................................................................... *passim*

Fed. R. Crim. P. 6(e)(2) ..................................................................................................7

Fed. R. Crim. P. 6(e)(3) ................................................................................................10

Section 1 of the Sherman Act, 15 U.S.C. § 1 ....................................................................4

## MISCELLANEOUS

U.S. Attorneys' Manual § 1-1.100 .................................................................................12

U.S. Attorneys' Manual § 9-27.760 ..........................................................................13, 14

1390272v1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

-----------------------------------------------------------------------x

JOHN DOE,                                               :

        Plaintiff,                                    :

     -against-                                          :       Civil Action No. ____

SCOTT D. HAMMOND, ACTING ASST. ATTORNEY    :
GENERAL, ANTITRUST DIVISION, DEPT. OF
JUSTICE; LISA M. PHELAN, CHIEF, NATIONAL        :
CRIMINAL ENFORCEMENT SECTION; MARC
SIEGEL, DIRECTOR OF CRIMINAL ENFORCEMENT;  :
MARK R. ROSMAN, ASST. CHIEF

                                                 :

        Defendants.

                                                 :

-----------------------------------------------------------------------x

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
### APPLICATION FOR A TEMPORARY RESTRAINING ORDER
### AND PRELIMINARY INJUNCTION TO ENJOIN PUBLIC
### DISCLOSURE OF MATTERS BEFORE THE GRAND JURY

        Plaintiff John Doe respectfully submits this memorandum of law in support of its

application for a temporary restraining order and preliminary injunctive relief pursuant to Rule

65 of the Federal Rules of Civil Procedure to enjoin Defendants Scott D. Hammond, Acting

Assistant Attorney General of the Department of Justice's Antitrust Division; Lisa M. Phelan,

Chief of the National Criminal Enforcement Section of the Antitrust Division; Marc Siegel,

Director of Criminal Enforcement of the Antitrust Division; and Mark R. Rosman, Assistant

Chief within the Antitrust Division, from publicly identifying him in any manner that explicitly

or implicitly discloses that Plaintiff is an unindicted co-conspirator of British Airways or is or

was otherwise an unindicted subject of a grand jury investigation. For the reasons set forth in

detail in the accompanying Declaration of Daniel S. Ruzumna and below, Plaintiff's application

should be granted.

## Preliminary Statement

On August 23, 2007, the Defendants intend to publicly file a plea agreement between the United States and British Airways Plc ("British Airways"), in which British Airways has agreed to plead guilty to two violations of the Sherman Act (referred to herein as the "BA Plea Agreement"). As part of the BA Plea Agreement, the Department of Justice has agreed to grant immunity to all current and former British Airways employees with the exception of approximately ten. These "carved out" employees have not been granted immunity and, thus, are still subjects of what the Department of Justice has referred to in a recent press release as an "ongoing investigation of the airline industry," or were subjects of the grand jury investigation and deemed to be uncooperative by the Department of Justice. Plaintiff has learned, and Defendants have confirmed, that he is one of the "carved out" employees and will not be granted immunity. Plaintiff has also learned that the Defendants intend to *publicly* disclose his identity as part of the BA Plea Agreement as an individual not granted immunity from prosecution, thereby disclosing that Plaintiff is an unindicted co-conspirator of British Airways or, at one point, was a subject of a grand jury investigation and did not cooperate with the government.

Federal Rule of Criminal Procedure 6(e) provides that an attorney for the government "must not disclose a matter occurring before the grand jury." Courts have repeatedly held that this rule of grand jury secrecy specifically applies to the identities of individuals who are or were under investigation but who have not been indicted. Indeed, one of the primary purposes of Rule 6(e) is to protect the reputations of those who may never be charged with a crime. The Defendants' intention to specifically identify Plaintiff in a public document does exactly what Rule 6(e) forbids: it discloses the fact that Plaintiff is or was the subject of an investigation before the grand jury. The necessary implication of identifying Plaintiff—along with only a few others—as exempt from the grant of immunity is that Plaintiff

2

remains a subject of an ongoing grand jury investigation or that he was a subject of a grand jury investigation and was thought to be uncooperative with the government. Rule 6(e) forbids disclosure of such matters. The only possible purposes of publicly identifying Plaintiff is to humiliate our client and to improperly pressure him.

Further, publicly identifying Plaintiff in a context that necessary implies that Plaintiff is or was the subject of ongoing grand jury proceedings violates his Fifth Amendment right to due process of law. The Defendants' planned course of action would brand Plaintiff as someone subject to or formerly subject to an ongoing investigation of potential criminal violations of the antitrust laws without affording him any process whatsoever. The function of a grand jury is to serve as a shield against baseless charges of crime and from misuse of power by a prosecutor. Where, as here, Plaintiff has not been indicted, the Fifth Amendment due process clause prohibits the Defendants from publicly identifying him in a manner suggesting that he may be guilty of a crime.

The impropriety of the Defendants' actions is further demonstrated by the fact that they are inconsistent with the policies—developed on the basis of applicable case law—the Department of Justice has established for federal prosecutors. The United States Attorneys' Manual prohibits disclosure of the identities of uncharged third parties and reminds prosecutors that there is no legitimate interest in alleging wrongdoing by uncharged parties. The existence of these policies highlights that the Defendants' planned actions are violative of the federal rules and Plaintiff's rights. Temporary and preliminary injunctive relief should be granted.

### Relevant Facts

On August 1, 2007, the United States government filed Criminal Information 0713-JDB (the "Information") in the United States District Court for the District of Columbia,

3

charging British Airways in two counts of violating Section 1 of the Sherman Act, 15 U.S.C. § 1. The Information charges that British Airways and certain unidentified co-conspirators unreasonably restrained trade in violation of the Sherman Act. According to a press release issued by the Department of Justice's Antitrust Division that same day, British Airways agreed to plead guilty and to pay a $300 million criminal fine for its role in a conspiracy to fix prices of passenger and cargo flights.

The August 1, 2007 press release states that the BA Plea Agreement and another plea agreement reportedly reached with Korean Air Lines Co. Ltd., which was also first announced in the release, are "*the first* to arise from the Antitrust Division's *ongoing investigation* into the air transportation industry." (emphasis added). The Antitrust Division's "ongoing investigation" has included the issuance of grand jury subpoenas; therefore, the investigation is an active matter *before the grand jury.* Accordingly, pursuant to Rule 6(e), matters before the grand jury must be kept secret.

Pursuant to the BA Plea Agreement, in exchange for British Airways' plea of guilty, the Department of Justice has granted the majority of current and former British Airways employees immunity from criminal prosecution in the United States. However, approximately ten current and former British Airways employees have been "carved out" of the immunity grant and will not receive immunity as part of British Airways' plea deal. According to one of the Defendants, these "carved out" individuals either remain subjects of the ongoing investigation before the grand jury or were subjects of the grand jury investigation and deemed uncooperative by the Department of Justice. According to one of the Defendants, Plaintiff is included on the "carve out" list of those individuals not granted immunity pursuant to the BA Plea Agreement.

4

Plaintiff's counsel has been informed that, on August 23, 2007, the Defendants intend to *publicly* file the BA Plea Agreement. Further, Plaintiff's counsel has been informed that the BA Plea Agreement, as currently written, specifically identifies those individuals not granted immunity by the Department of Justice—*i.e.*, those who are or were subjects of the Antitrust Division's and the grand jury's "ongoing investigation." Indeed, the necessary implication of being identified on the "carve out" list is that Plaintiff—who has not been indicted or charged with any crime—remains a subject of a grand jury investigation or was the subject of a grand jury investigation and was uncooperative with the Department of Justice. Thus, Plaintiff, an unindicted third party, will be publicly identified by the Defendants as a purported unindicted co-conspirator of British Airways or as a former subject of a grand jury investigation who did not cooperate with the government.

On August 15, 2007, counsel for Plaintiff contacted Defendant Rosman and requested the Defendants not to publicly identify Plaintiff as exempt from the grant of immunity. Despite Plaintiff's objection to such public identification, the Defendants insisted that the names on the "carve out" list (*and presumably none other*) be publicly disclosed in the BA Plea Agreement. Among the alternatives suggested by Plaintiff's counsel and rejected was filing the "carve out" list under seal or including it in a non-public letter to British Airways.

On August 16, 2007, Plaintiff's counsel sent a letter to Defendants urging them to reconsider and advising them that public disclosure of Plaintiff's identity would violate Rule 6(e) and Plaintiff's Fifth Amendment right to due process of law, and would be in contravention of the Department of Justice's own policies regarding the identification of subjects of Department investigations. The Defendants did not grant the request.

The public identification of Plaintiff as intended by the Defendants would violate Rule 6(e) and his Fifth Amendment rights and would cause severe and irreparable harm to Plaintiff's personal and professional reputation, whether or not charges are ever brought against him. Accordingly, Plaintiff respectfully applies for emergency and preliminary injunctive relief to enjoin Defendants from identifying him as an individual not granted immunity under the Department of Justice's plea agreement with British Airways and, by necessary implication, as an unindicted co-conspirator of British Airways or a former subject of a grand jury investigation who did not cooperate with the government.

## Argument

To obtain temporary and preliminary injunctive relief, Plaintiff must demonstrate: (1) that he is likely to prevail on the merits; (2) he will suffer irreparable harm absent the injunction; (3) the injunction would not substantially impair rights of Defendants or other parties; and (4) the injunction would be in the public interest, or at least would not be adverse to the public interest. *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998); *Sea Containers Ltd. v Stena AB*, 890 F.2d 1205, 1208 (D.C. Cir. 1989). A court must balance these factors, and "[i]f the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *Serono Labs.*, 158 F.3d at 1318 (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)). Here, all of the factors support the issuance of temporary and preliminary injunctive relief; accordingly, Plaintiff's application should be granted.

6

I.    Plaintiff Is Likely To Prevail on the Merits

The Defendants' intention to publicly identify Plaintiff as exempt from the

Department of Justice's immunity protection and, thus, a current or former unindicted subject

before the grand jury is a violation of Rule 6(e), which provides for strict secrecy regarding

matters before the grand jury, and Plaintiff's Fifth Amendment due process rights. In fact, the

Department's own policy manual for federal prosecutors—the United States Attorneys'

Manual—specifically forbids disclosure of the identities of uncharged third parties.

Accordingly, Plaintiff has a very strong likelihood of success on the merits.

A.    Rule 6(e) Prohibits Disclosure of Matters Before the Grand Jury

Pursuant to Rule 6(e),[1] except in very limited circumstances not applicable here,

an attorney for the government "must not disclose a matter occurring before the grand jury."

Fed. R. Crim. P. 6(e)(2)(B). Courts have repeatedly held that this rule of grand jury secrecy

specifically applies to the identities of individuals who are under investigation but who have not

been indicted; indeed, one of the primary purposes of Rule 6(e) is to protect the reputations of

those who may never be charged with a crime. *See United States v. Sells Engineering, Inc.*, 463

U.S. 418, 424 (1983) ("[B]y preserving the secrecy of the proceedings, we assure that persons

who are accused but exonerated by the grand jury will not be held up to public ridicule. . . .

Grand jury secrecy, then, is as important for the protection of the innocent as for the pursuit of

the guilty."); *Finn v. Schiller*, 72 F.3d 1182, 1189 (4th Cir. 1996) ("A primary purpose of Rule 6

is to protect the unindicted, and the United States Attorney has a duty to protect the innocent as

---

[1] The Court of Appeals for the District of Columbia Circuit has held that Rule 6(e) creates a private right of action for equitable relief and for civil contempt. *See In re: Sealed Case No. 98-3077*, 151 F.3d 1059, 1069-70 & n.8 (D.C. Cir. 1998); *Barry v. United States*, 865 F.2d 1317, 1321-22 (D.C. Cir. 1989). If a plaintiff establishes a *prima facie* case that the government has disclosed (or in this case, may disclose) matters occurring before the grand jury, the burden shifts to the government to rebut the *prima facie* case. If the court determines that remedial action is warranted, it may order the government to take whatever steps are necessary to prevent public disclosure of grand jury matters by its employees. *Barry*, 865 F.2d at 1321.

7

well as to prosecute those indicted by the grand jury."); *DiLeo v. C.I.R.*, 959 F.2d 16, 18-19 (2d Cir. 1992) ("Rule 6(e) of the Federal Rules of Criminal Procedure prohibits, with certain specified exceptions, the disclosure of 'matters occurring before the grand jury'. . . . This rule of nondisclosure serves to effectuate several important policies[, including] . . . protect[ing] the reputations of suspects who are ultimately exonerated by the grand jury."); *United States v. Phillips*, 843 F.2d 438, 441 (11th Cir. 1988) ("Grand jury proceedings, both state and federal, have long been protected by a veil of secrecy. The secrecy of the grand jury is sacrosanct. The reasons for protecting the secrecy of the grand jury include . . . protecting the innocent accused, who is later exonerated, from disclosure of the fact that he has been under investigation.").

In a very recent case that received significant public attention, the Court of Appeals for the District of Columbia Circuit reaffirmed the inviolate nature of the grand jury secrecy rule and warned of the serious danger of failing to abide by Rule 6(e): "[W]e agree that some information . . . unquestionably remains grand jury material that Rule 6(e) obligates us to maintain under seal. Its publication at this juncture could identify witnesses, reveal the substance of their testimony, and—worse still—damage the reputations of individuals who may never be charged with crimes." *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1138, 1141 (D.C. Cir. 2006) (per curiam) (emphasis added). The court's findings and rationale are consistent with abundant case law describing the "glaring injustice" and "irreparable harm" that can be caused by the breach of the secrecy rule to those who were subjects of grand jury proceedings but not subsequently indicted. *See, e.g., Lucas v. Turner*, 725 F.2d 1095, 1107 (7th Cir. 1984) ("'A glaring injustice could be inflicted and irreparable injury caused to the reputation of a person if it were to become known that there is or ever was before the grand jury any proceeding concerning

8

him even if he were not subsequently indicted.'") (quoting *In re Grand Jury Investigation of Cuisinarts, Inc.*, 665 F.2d 24, 33 (2d Cir. 1981)).

In light of the long and uninterrupted line of cases interpreting and applying Rule 6(e), there is no legitimate basis for the Defendants to identify Plaintiff as a current or former subject of a grand jury investigation—*i.e.*, not granted immunity under British Airways' plea agreement. Any argument that the Defendants would merely be identifying Plaintiff as exempt from the grant of immunity and not implying that he is or was a subject of a grand jury investigation would be completely disingenuous. Indeed, there are other available avenues of establishing the boundaries and limitations of the BA Plea Agreement without publicly identifying Plaintiff. To name just two, the "carve out" list could be transmitted to British Airways in a non-public side letter or the list could be filed under seal. Rule 6(e) prohibits explicit disclosure of matters before the grand jury *and implicit disclosure of such matters. See United States v. Smith*, 776 F.2d 1104, 1113-14 (3d Cir. 1985) (affirming the denial of newspapers' motion for access to a document naming unindicted co-conspirators and those who "*could conceivably be considered* as unindicted co-conspirators" because "individuals on the sealed list are faced with more than mere embarrassment. It is no exaggeration to suggest that publication of the list might be career ending for some. Clearly, it will inflict serious injury on the reputations of all.") (emphasis added).

Any argument that the Defendants' actions are driven by the purported goal of "transparency" is also a fallacy since the public does not have a right to know who is or was under investigation by the grand jury. *See Fund for Constitutional Government v. National Archives & Records Serv.*, 656 F.2d 856, 869 (D.C. Cir. 1981) (affirming denial of FOIA request "for information [among other things] . . . discussing the scope, focus and direction of the grand

9

jury investigations . . . . Disclosure of this information would reveal matters occurring before the grand jury and is, therefore, properly exempt from disclosure pursuant to FOIA Exemption 3 and Fed. R. Crim. P. 6(e)"). Publicly filing the plea agreement with the "carve out" list is simply a back-handed way of disclosing matters before the grand jury. The only possible purposes of publicly filing the list is to humiliate Plaintiff and to improperly pressure him. These purposes are not included in Rule 6(e) as exceptions to grand jury secrecy. *See* Fed. R. Crim. P. 6(e)(3).

Though the Defendants will justify their intended actions by referencing a district court case out of California, *United States v. Crompton*, 399 F. Supp.2d 1047 (N.D. Cal. 2005), that single decision is easily distinguishable and, Plaintiff submits, poorly reasoned. There, the court granted the government's motion to unseal a plea agreement that identified an officer of the defendant as not having been granted immunity from prosecution and denied the defendant's motion to have the officer's name redacted. *Id.* at 1051-52. The court found that the identification of an unindicted individual in a plea agreement was less stigmatizing than if it were in an indictment. *Id.* at 1049. Whether or not identification in a plea agreement is less stigmatizing than in an indictment, the *Crompton* court's logic is flawed. First, Rule 6(e) prohibits disclosure of the identities of "*those who could conceivably be considered as unindicted co-conspirators*" in whatever manner it is disclosed. *See Smith*, 776 F.2d at 1113-14. Second, whether disclosed in a plea agreement or otherwise, a statement by the government that an individual has been exempted from an immunity grant necessarily implies that the individual is, or at some point was,[2] a subject in a grand jury investigation. Otherwise, there would be no

---

[2] Rule 6(e) not only protects against disclosure of matters before ongoing grand jury investigations, but it also prohibits disclosure of matters previously before a grand jury. *See DiLeo*, 959 F.2d at 18-19 (providing that Rule 6(e) serves to "protect the reputations of suspects who are ultimately exonerated by the grand jury"); *United States v. Jones*, 766 F.2d 994, 999 (6th Cir. 1985) ("[Grand-jury s]ecrecy also … protects the reputations of those who ultimately are exonerated.").

10

reason for the Department of Justice not to grant that individual immunity. The Court is not bound by the decision in *Crompton,* and it should not adopt its reasoning.

Additionally, *Crompton* is easily distinguishable from the situation presented here. The court in *Crompton* found highly relevant the facts that: (1) the defendant did not seek to seal the plea agreement when it was initially filed; (2) "the document was mistakenly sealed from the outset and Defendant's ability to raise the instant motion is nothing but a fortuitous event"; and (3) two of the executives on that "carve out" list had been indicted and the relevant officer was never indicted. *Id.* at 1049-50. Plaintiff's situation is notably different: he never consented to the public filing of any document that includes his name; he is not seeking to benefit from what was a clear mistake; and it is far from clear that he will not be indicted at some later point in time. Thus, *Crompton*—even if correctly decided, which we believe it is not—is not dispositive of the present situation.

B.    **Publicly Disclosing Plaintiff's Identity in the BA Plea Agreement Would Violate his Fifth Amendment Right to Due Process of Law**

Plaintiff also has a likelihood of success of enjoining the Defendants' intended actions because those actions would violate his Fifth Amendment right to due process of law. In *United States v. Briggs*, 514 F.2d 794, 796 (5th Cir. 1975), the Fifth Circuit expunged the names of individuals identified in a federal grand jury indictment as "unindicted conspirators" on the grounds that "the grand jury exceeded its power and authority and that its action was a denial of due process to appellants." The court explained that the function of a grand jury is to serve "as a shield for the citizen against baseless charges of crime and from misuse of power by prosecutor and court," and a grand jury that returns an indictment naming a person as an unindicted conspirator "does not perform its shielding function but does exactly the reverse." *Id.* at 803; *see also United States v. Chadwick*, 556 F.2d 450, 450 (9th Cir. 1977) (per curiam); *In re Grand*

11

*Jury Proceedings, Special Grand Jury 89-2*, 813 F.Supp. 1451, 1463 (D. Colo. 1992); *United States v. DePalma*, 461 F.Supp. 778, 800 (S.D.N.Y. 1978).

Publicly identifying Plaintiff in a context that necessary implies that Plaintiff is or once was the subject of grand jury proceedings violates Plaintiff's Fifth Amendment rights. Indeed, the function of a grand jury is to serve as a check on government power; the Defendants should not be permitted to impugn Plaintiff's reputation by publicly identifying in a manner that necessarily implies he was involved in criminal activity (or at a minimum did not cooperate with the Department of Justice) without any due process of law. Indeed, publicly identifying Plaintiff as "carved out" of immunity protection severely tarnishes his reputation without having the allegation approved by a court or a grand jury. Accordingly, doing so violates Plaintiff's right to due process guaranteed by the Fifth Amendment.

## C.    Defendants' Intended Actions Would Violate Even the Department of Justice's Policies Prohibiting the Identification of Uncharged Third Parties

As further support to Plaintiff's likelihood of success on the merits, even the Department of Justice's own policy manual directs that federal prosecutors not disclose in any manner the identities of unindicted third parties. The United States Attorneys' Manual applies to DOJ attorneys responsible for prosecuting alleged violation of federal laws. *See* U.S. Attorneys' Manual § 1-1.100 ( "The United States Attorneys' Manual is a looseleaf text designed as a quick and ready reference for United States Attorneys, Assistant United States Attorneys, and Department attorneys responsible for the prosecution of violations of federal law."). While the Manual does not necessarily create rights for private parties, its policies—including those related to the identification of unindicted third parties—are largely based on the Constitution, statutes, and applicable case law.

12

With regard to the identification of individuals not charged with crimes, the Manual section entitled "Limitation on Identifying Uncharged Third-Parties Publicly" provides in relevant part:

> In all public filings and proceedings, federal prosecutors should remain sensitive to the privacy and reputation interests of uncharged third-parties. In the context of public plea and sentencing proceedings, this means that, in the absence of some significant justification, it is not appropriate to identify (either by name or unnecessarily-specific description), or cause a defendant to identify, a third-party wrongdoer unless that party has been officially charged with the misconduct at issue. . . .

U.S. Attorneys' Manual § 9-27.760. Removing any doubt about the Department of Justice's policy, the Manual cites case law providing that: "there is ordinarily 'no legitimate governmental interest served' by the government's public allegation of wrongdoing by an uncharged party, and this is true '[r]egardless of what criminal charges may . . . b[e] contemplated by the Assistant United States Attorney against the [third-party] for the future.'" *Id.* (citing *In re Smith*, 656 F.2d 1101, 1106-07 (5th Cir. 1981)). The Manual explicitly provides that this policy applies to *all forms of public disclosure. See id.* ("Courts have applied this reasoning [i.e., no legitimate purpose in public identification] to preclude the public identification of unindicted third-party wrongdoers in plea hearings, sentencing memoranda, and other government pleadings.") (citing *Finn v. Schiller*, 72 F.3d 1182 (4th Cir. 1996); *United States v. Briggs*, 514 F.2d 794 (5th Cir. 1975); *United States. v Anderson*, 55 F. Supp.2d 1163 (D. Kan 1999); *United States v. Smith*, 992 F. Supp. 743 (D.N.J. 1998)).

Accordingly, the United States Attorneys' Manual serves essentially as an admission by the Department of Justice that (1) cases interpreting applicable law prohibit the identification of unindicted third parties; and (2) there is no legitimate basis for the Defendants to

13

publicly identify Plaintiff in the BA Plea Agreement. This further demonstrates Plaintiff's likelihood of success on the merits.

## II.    Plaintiff Will Suffer Severe and Irreparable Harm Unless Defendants' Intended Actions Are Enjoined

As so many cases provide, and the United States Attorneys' Manual directs, federal prosecutors are not permitted to identify uncharged third parties in indictments, plea proceedings or otherwise largely because of the severe and irreparable harm such identification would have on the third parties' reputations. *See Sells Engineering*, 463 U.S. at 424 (grand jury secrecy "assure[s] that persons who are accused but exonerated by the grand jury will not be held up to public ridicule"); *Phillips*, 843 F.2d at 441 ("The reasons for protecting the secrecy of the grand jury include . . . protecting the innocent accused, who is later exonerated, from disclosure of the fact that he has been under investigation."); U.S. Attorneys' Manual § 9-27.760 (prohibiting the identification of unindicted third parties in all government pleadings).

As the Fourth Circuit stated in *Finn v. Schiller*, "[o]verzealous prosecutors must not be allowed to file sweeping statements of facts alleging violations of various laws by unindicted individuals. A primary purpose of Rule 6 is to protect the unindicted." *Finn*, 72 F.3d at 1186 (addressing matter in which government filed statement describing alleged criminal conduct by unindicted third party). If the Defendants proceed to identify Plaintiff in the BA Plea Agreement, despite the lack of charges against him, the Defendant would be making a public declaration that he is an unindicted co-conspirator of British Airways or a former subject of a grand jury investigation who did not cooperate with the government. The damage of such a government pronouncement would be permanent: once a bell is rung, it cannot be un-rung.

14

III.    Issuing a Temporary Restraining Order and/or Preliminary Injunction Will Not
        Impair the Rights of Defendants or Other Parties

Granting Plaintiff's application will not impair the Defendants' rights because

they have no right to make such a disclosure in the first place. As the discussion of Rule 6(e)

above indicates, matters occurring before a grand jury are to be kept in the strictest confidence,

subject to disclosure only in certain narrowly defined situations, none of which is applicable

here.

Likewise, granting the requested relief will not impair the rights of any other party

since no other party has a right to know that Plaintiff is or at some point was a subject of

proceedings before the grand jury. The public does not have a general "right to know" the

identities of individuals under investigation. *See, e.g., In re Motions of Dow Jones & Co.*, 142

F.3d 496, 499 (D.C. Cir. 1998) ("A settled proposition, one the press does not contest, is this:

there is no First Amendment right of access to grand jury proceedings."). The only parties

entitled to such information are those described in Rule 6(e)(3), and the relief requested here will

in no way obstruct them from learning that should they satisfy the Rule's requirements.

If the Court were to grant Plaintiff's application, the Defendants would face the

minor inconvenience of redacting the "carve out" list from the BA Plea Agreement, but this

requires nothing more than a black pen. The Defendants, or British Airways itself, could still

disclose to any interested party whether he or she has been granted immunity as part of the Plea

Agreement. In fact, on information and belief, all those current and former British Airways

employees exempt from the grant of immunity are already aware of the decision. Thus, there is

no possibility that the BA Plea Agreement would lack clarity or be subject to later challenge on

this issue.

15

In short, enjoining Defendants from publicly identifying Plaintiff in any manner
that explicitly or implicitly discloses that he is an unindicted co-conspirator of British Airways or
is or was otherwise an unindicted subject of a grand jury investigation does not impair the
Defendants' rights.

## IV.    Issuing Plaintiff's Requested Relief Is in the Public Interest

Granting Plaintiff's application preserves grand jury secrecy and protects the
reputations of him and approximately nine other unindicted third parties who may never be
charged with an offense.  Denying the application would do little other than put the Court's
stamp of approval on an action directly at odds with the Department of Justice's own policies.
The public interest factor weighs heavily in favor of an injunction.

The Supreme Court has "consistently recognized that the proper functioning of
our grand jury system depends upon the secrecy of grand jury proceedings," and has noted
several distinct interests served by safeguarding the confidentiality of grand jury proceedings.
*Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218-219 (1979) (footnotes and citation
omitted).  First, if pre-indictment proceedings were made public, many prospective witnesses
would be hesitant to come forward voluntarily, knowing that those against whom they testify
would be aware of that testimony.  Second, witnesses who appeared before the grand jury would
be less likely to testify fully and frankly, as they would be open to retribution as well as to
inducements by potentially interested parties.  Third, there would be the risk that those about to
be indicted would flee, or would try to persuade individual grand jurors to vote against
indictment.  And finally, by preserving the secrecy of the proceedings, the court assures that
persons who are accused but exonerated by the grand jury will not be held up to public ridicule.
*Id.*

The public has a strong interest in the grand jury system functioning properly in secret, and "disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy." *Id.* at 223. The public also has a strong interest in protecting the reputations of those not charged with a crime from government innuendo. In this matter, the only conceivable interest in permitting disclosure of Plaintiff's identity is public curiosity. To the extent the public has an interest in having access to the BA Plea Agreement, the Agreement can be made available with the carve out list redacted. Or the BA Plea Agreement can be revised to simply omit the names of the ten unindicted individuals who have not been granted immunity. The minor inconvenience to the Government does not come close to outweighing the strong public interest in grand jury secrecy. Indeed, "*Douglas Oil* implicitly makes clear that grand jury proceedings are not subject to a First Amendment right of access." *United States v. Smith*, 123 F.3d 140, 148 (3d Cir. 1997).

Accordingly, granting Plaintiff's application is in the public interest.

17

## Conclusion

For all of the foregoing reasons, Plaintiff respectfully submits that the Court should grant application and enjoin the Defendants from publicly identifying him in any manner that explicitly or implicitly discloses that Plaintiff is an unindicted co-conspirator of British Airways or is or was otherwise an unindicted subject of a grand jury investigation.

Dated: August 20, 2007

Respectfully Submitted,

PATTERSON BELKNAP WEBB & TYLER LLP

By:  Daniel S. Ruzumna (DC Bar No. 450040)
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2034

*Attorneys for Plaintiff*

18

CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2007, I caused a true and correct copy of the

foregoing submission be served by way of attachments to an email message upon the following:

Scott D. Hammond
Lisa M. Phelan
Marc Siegel
Mark R. Rosman
United States Department of Justice
National Criminal Enforcement Section
1401 H Street, N.W., Suite 3700
Washington, DC  20530

_____
Daniel S. Ruzumna

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

-----------------------------------------------------------------------x

JOHN DOE,                                          :

        Plaintiff,                          :

    -against-                                   :        Civil Action No. _____

SCOTT D. HAMMOND, DEPUTY ASST. ATTORNEY   :
GENERAL, ANTITRUST DIVISION, DEPT. OF
JUSTICE; LISA M. PHELAN, CHIEF, NATIONAL      :
CRIMINAL ENFORCEMENT SECTION; MARC
SIEGEL, DIRECTOR OF CRIMINAL ENFORCEMENT;  :
MARK R. ROSMAN, ASST. CHIEF

                              :

        Defendants.

                              :

-----------------------------------------------------------------------x

## ORDER

        Having considered Plaintiff's application for a temporary restraining order and
preliminary injunction, along with the other supporting papers, and all responses thereto, and
good cause having been shown,

        IT IS HEREBY ORDERED that the application for a temporary restraining order
and preliminary injunction is GRANTED and Defendants Scott D. Hammond, Deputy Assistant
Attorney General of the Department of Justice's Antitrust Division; Lisa M. Phelan, Chief of the
National Criminal Enforcement Section of the Antitrust Division; Marc Siegel, Director of
Criminal Enforcement of the Antitrust Division; and Mark R. Rosman, Assistant Chief within
the Antitrust Division, hereby are enjoined from publicly identifying Plaintiff in any manner that
explicitly or implicitly suggests that Plaintiff is an unindicted co-conspirator of British Airways
or is or was otherwise an unindicted subject of a grand jury investigation; and

IT IS FURTHER ORDERED that this Order shall remain in effect until

_____ or modified or lifted by this Court.

Dated: August _____, 2007                    SO ORDERED:


                                               _____
                                               United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
------------------------------------------------------------------------x
JOHN DOE,                                                        :

            Plaintiff,                                       :

     -against-                                                   :        Civil Action No. _____

SCOTT D. HAMMOND, DEPUTY ASST. ATTORNEY  :
GENERAL, ANTITRUST DIVISION, DEPT. OF
JUSTICE; LISA M. PHELAN, CHIEF, NATIONAL       :
CRIMINAL ENFORCEMENT SECTION; MARC
SIEGEL, DIRECTOR OF CRIMINAL ENFORCEMENT; :
MARK R. ROSMAN, ASST. CHIEF

            Defendants.                                      :

------------------------------------------------------------------------x

## ORDER

       Having considered Plaintiff's application for a temporary restraining order and preliminary injunction, along with the other supporting papers, and all responses thereto, and good cause having been shown,

       IT IS HEREBY ORDERED, that the above named defendants show cause before a motion term of this Court, at Room _____ , United States Courthouse, 33 Constitution Avenue, Washington DC 20001, on _____,_____ , at _____ o'clock ___.m. thereof, or as soon thereafter as counsel may be heard, why an order should not be issued pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining the defendants from publicly identifying Plaintiff in any manner that explicitly or implicitly discloses that Plaintiff is or was an unindicted coconspirator of British Airways or otherwise an unindicted subject of a grand jury investigation; and

IT IS FURTHER ORDERED that, sufficient reason having been shown therefor, pending the hearing of plaintiff's application for a preliminary injunction, pursuant to Rule 65, the defendants are temporarily restrained and enjoined from publicly identifying Plaintiff in any manner that explicitly or implicitly discloses that Plaintiff is or was an unindicted coconspirator of British Airways or otherwise an unindicted subject of a grand jury investigation; and

IT IS FURTHER ORDERED that personal service of a copy of this order and annexed affidavit upon the defendants or their counsel on or before _____ o'clock ___.m., _____,_____, shall be deemed good and sufficient service thereof; and

IT IS FURTHER ORDERED that any responsive papers to this Application shall be personally served on counsel for plaintiff and filed with the Clerk, with a copy delivered to chambers, on or before _____, _____, at 5:00 p.m.; and

IT IS FURTHER ORDERED that any reply papers by plaintiff shall be personally served on counsel for defendants and filed with the Clerk, with a copy delivered to chambers, on or before _____, _____, at 5:00 p.m.; and

IT IS FURTHER ORDERED that this Order shall remain in effect until _____ or modified or lifted by this Court.

Dated: August _____, 2007                    SO ORDERED:


                                              _____
                                              United States District Judge

## PERSONS TO BE SERVED UPON ENTRY OF THIS ORDER

PATTERSON BELKNAP WEBB & TYLER LLP
Daniel S. Ruzumna (DC Bar No. 450040)
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2034

*Attorneys for Plaintiff*


Scott D. Hammond
Lisa M. Phelan
Marc Siegel
Mark R. Rosman
U.S. Department of Justice, Antitrust Division
1401 H Street, N.W., Suite 3700
Washington, DC 20530

*Defendants*

EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------------------------x

JOHN DOE,                                          :

        Plaintiff,                                :

    -against-                                    :      Civil Action No. _____

SCOTT D. HAMMOND, DEPUTY ASST. ATTORNEY    :
GENERAL, ANTITRUST DIVISION, DEPT. OF
JUSTICE; LISA M. PHELAN, CHIEF, NATIONAL    :
CRIMINAL ENFORCEMENT SECTION; MARC
SIEGEL, DIRECTOR OF CRIMINAL ENFORCEMENT; :
MARK R. ROSMAN, ASST. CHIEF

                        :

        Defendants.                              :

------------------------------------------------------------------------x

## DECLARATION OF DANIEL S. RUZUMNA

Daniel S. Ruzumna, under penalty of perjury, declares as follows:

1.      I am an attorney with Patterson Belknap Webb & Tyler, LLP.  We have been retained by Plaintiff to represent him in connection with an ongoing grand jury investigation being led by Antitrust Division of the United States Department of Justice.  The investigation involves allegations that British Airways Plc ("British Airways") and others violated the Sherman Act through a conspiracy to fix prices of passenger and cargo flights.

2.      I submit this declaration in support of Plaintiff's application for a temporary restraining order and preliminary injunction to enjoin the above-captioned Defendants, all of whom are government attorneys at the Antitrust Division, from publicly identifying Plaintiff in any manner that explicitly or implicitly discloses that Plaintiff is an unindicted co-conspirator of British Airways or is or was otherwise an unindicted subject of a grand jury investigation.

3.    On August 1, 2007, the United States government filed Criminal Information 0713-JDB (the "Information") in the United States District Court for the District of Columbia, charging British Airways in two counts of violating Section 1 of the Sherman Act, 15 U.S.C. § 1. The Information charges that British Airways and certain unidentified co-conspirators unreasonably restrained trade in violation of the Sherman Act.

4.    According to a press release issued by the Antitrust Division that same day, British Airways agreed to plead guilty and to pay a $300 million criminal fine for its role in a conspiracy to fix prices of passenger and cargo flights.

5.    The August 1, 2007 press release states that the plea agreement between British Airways and the Department of Justice (the "BA Plea Agreement") and another plea agreement reportedly reached with Korean Air Lines Co. Ltd., which was also first announced in the release, are "*the first* to arise from the Antitrust Division's *ongoing investigation* into the air transportation industry."

6.    According to newspaper reports, the Antitrust Division's investigation of the airline industry has included the issuance of grand jury subpoenas; therefore, the investigation is an active matter *before the grand jury.* Accordingly, pursuant to Rule 6(e), matters before the grand jury must be kept secret.

7.    Based on information provided to me by the Antitrust Division, in exchange for British Airways' plea of guilty, the Department of Justice has granted the majority of current and former British Airways employees immunity from criminal prosecution in the United States. However, approximately ten current and former British Airways employees have been "carved out" of the immunity grant and will not receive immunity as part of British Airways' plea deal. Based on information provided to me by the Antitrust Division, these

"carved out" individuals either remain subjects of the ongoing investigation before the grand jury or were subjects of the grand jury investigation and deemed uncooperative by the Department of Justice.

8.    Based on information provided to me by the Antitrust Division, Plaintiff is included on the "carve out" list of those individuals not granted immunity pursuant to the BA Plea Agreement.

9.    On August 15, 2007, I contacted the Antitrust Division and was informed that the Defendants intend to *publicly* file the BA Plea Agreement on August 23, 2007.  Further, I informed that the BA Plea Agreement, as currently written, specifically identifies those individuals not granted immunity by the Department of Justice—*i.e.*, those who are or were subjects of the Antitrust Division's and the grand jury's "ongoing investigation."

10.    Thus, Defendants intend to publicly identify Plaintiff in connection with British Airways plea of guilty to Sherman Act violations despite that, upon information and belief, he has not been indicted or charged with any crime.  The necessary implication of being identified on the "carve out" list is that Plaintiff remains a subject of a grand jury investigation or was the subject of a grand jury investigation and was uncooperative with the Department of Justice.

11.    During the August 15, 2007 telephone conversation, I requested that the Defendants not publicly identify Plaintiff as exempt from the grant of immunity.  Despite Plaintiff's objection to such publicly identification, the Defendants insisted that the names on the "carve out" list (and on information and belief, *none other*) be publicly disclosed in the BA Plea Agreement.  Among the alternatives I suggested were the filing the "carve out" list under seal

and including it in a non-public letter to British Airways. I was informed that I could make my request in writing, and it would be considered.

        12.    On August 16, 2007, I sent a letter to Defendants urging them to reconsider and advising them that public disclosure of Plaintiff's identity would violate Rule 6(e) and Plaintiff's Fifth Amendment right to due process of law, and would be in contravention of the Department of Justice's own policies regarding the identification of subjects of a grand jury investigation. The Defendants did not grant the request.

        13.    The public identification of Plaintiff as intended by the Defendants would violate Rule 6(e) and his Fifth Amendment rights and would cause severe and irreparable harm to Plaintiff's personal and professional reputation, whether or not charges are ever brought against him. Accordingly, Plaintiff respectfully applies for emergency and preliminary injunctive relief to enjoin Defendants from identifying him as an individual not granted immunity under the Department of Justice's plea agreement with British Airways and, by necessary implication, as an unindicted co-conspirator of British Airways or a former subject of a grand jury investigation who did not cooperate with the government.

        14.    I declare, pursuant to 28 U.S.C. §1746, under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on:  August 17, 2007
            New York, New York

_____
Daniel S. Ruzumna