IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| In re INTERESTED PARTY 1 and<br>In re INTERESTED PARTY 2,<br>in the Matter of UNITED STATES<br>v. QANTAS AIRWAYS LIMITED | ) ) ) ) ) ) ) ) |

Case No. 1:07-MC-00567-JDB

(Related to Case No. 07-CR-00322-JDB)

**FILED UNDER SEAL**

## OPPOSITION OF UNITED STATES TO EMERGENCY APPLICATION FOR INJUNCTIVE RELIEF FROM A CRIMINAL CASE BY INTERESTED PARTIES PURSUANT TO LOCAL CRIMINAL RULE 57.6 IN U.S. V. QANTAS AIRWAYS LIMITED (CRIMINAL CASE NO. 07-00322-JDB)

### I. PRELIMINARY STATEMENT

Applicants are two Qantas Airways Limited ("Qantas") executives who are carved out of the corporate plea agreement between the United States and Qantas and seek to have their names redacted from that agreement before it is filed publicly at the Qantas sentencing hearing on January 14, 2008.[1]  Because their application is nothing more than a rehash of arguments that were recently raised and rejected in two related cases, it should be denied.

Applicants argue that identification of the carve outs in the Qantas Plea Agreement will brand them as unindicted co-conspirators or subjects or targets of a grand jury investigation, thereby divulging matters occurring before a grand jury and violating their due process rights. These very arguments were considered and rejected by this Court on August 22, 2007 in two nearly identical cases involving Korean Air Lines and British Airways carve outs, *United States*

---

[1]  The United States has advised Applicants' counsel that there will be no public disclosure of the names of the carve outs by the United States before sentencing.

*v. Korean Air Lines Co., Ltd*, 505 F. Supp. 2d 91 (D.D.C.), *injunction pending appeal denied* (D.C. Cir. Aug. 24, 2007) (No. 07-3091), and *Doe v. Hammond*, 502 F. Supp. 2d 94 (D.D.C. 2007). As in the earlier cases, Applicants have not been named as unindicted co-conspirators in an indictment, plea agreement, or any other document, have not been identified as subjects or targets of any investigation, and have not been accused of any wrongdoing. Thus, Applicants' due process rights are not implicated, and no grand jury secrets have been divulged. As such, they are not likely to succeed on the merits and cannot demonstrate a likelihood of irreparable harm.

By contrast, as this Court found in *Korean Air* and *Hammond*, the public and press have a constitutional right of access to criminal court proceedings, including the entire Qantas Plea Agreement, the victims of the subject conspiracy have a statutory right of access to that agreement, and the parties and beneficiaries of that agreement have an interest in publicly defining with as much specificity as possible the terms of that contract. The balance of hardships and the public interest thus weigh in favor of the public filing of the Qantas Plea Agreement without redaction, and this Court should deny Applicants' redaction request.

## II. BACKGROUND

It has long been the policy of the Department of Justice Antitrust Division (the "Division") to identify by name individual executives who are not included within, and are thus "carved out" of, corporate plea agreements.[2] This policy has been followed for many years in

---

[2] *See* accompanying Declaration of Brent C. Snyder in Opposition to Emergency Application For Injunctive Relief From A Criminal Case By Interested Parties Pursuant To Local Criminal Rule 57.6 In U.S. v. Qantas Airways Limited (Criminal Case No. 07-00322-JDB)

dozens and dozens of corporate plea agreements filed by the Division in districts across the country, including the District of Columbia. *Id.* Hundreds of individuals have been referenced as carve outs in corporate plea agreements, and none of them consented to it. *Id.* Moreover, no court has ever required the Division to file a plea agreement under seal or required redaction of the names of individual carve outs. *Id.*

In practice, carving an individual out of a corporate plea agreement is accomplished merely by excluding the individual from the cooperation and non-prosecution provisions of the corporate plea agreement. In the Qantas Plea Agreement, a courtesy copy of which was provided to this Court, those provisions state, in relevant part:

> 12.    The defendant and its subsidiaries will cooperate fully and truthfully with the United States in the prosecution of this case, the conduct of the current federal investigation of violations of federal antitrust and related criminal laws involving the sale of international air cargo transportation services, any other federal investigation resulting therefrom, and any litigation or other proceedings arising or resulting from any such investigation to which the United States is a party ("Federal Proceeding"). The ongoing, full, and truthful cooperation of the defendant and its subsidiaries shall include, but not be limited to:
>
> * * *
>
> (b)    using its best efforts to secure the ongoing, full, and truthful cooperation, as defined in Paragraph 13 of this Plea Agreement, of the current and former directors, officers, and employees of the defendant or any of its subsidiaries as may be requested by the United States – but excluding Peter Frampton, John Cooper, Stephen Cleary, Harold Pang, Desmond Church, and Bruce McCaffrey – including making these persons available in the United States and at

---

("Snyder Decl."), ¶ 2.

3

other mutually agreed-upon locations, at the defendant's expense, for interviews and the provision of testimony in grand jury, trial, and other judicial proceedings in connection with any Federal Proceeding.

\* \* \*

15.     The United States agrees to the following:

(a)     Upon the Court's acceptance of the guilty plea called for by this Plea Agreement and the imposition of the recommended sentence and subject to the exceptions noted in Paragraph 15(c), the United States will not bring criminal charges against any current or former director, officer, or employee of the defendant or its subsidiaries for any act or offense committed before the date of this Plea Agreement and while that person was acting as a director, officer, or employee of the defendant or its subsidiaries that was undertaken in furtherance of an antitrust conspiracy involving the sale of international air cargo transportation services ("Relevant Offense"), except that the protections granted in this paragraph shall not apply to Peter Frampton, John Cooper, Stephen Cleary, Harold Pang, Desmond Church, and Bruce McCaffrey.

This carve-out language does not identify Applicants as unindicted co-conspirators, does not name them as subjects or targets of an ongoing investigation, and does not allege that they have engaged in any wrongdoing. The language simply states that the terms of the agreement between the United States and Qantas do not apply to them.

## III. ARGUMENT

To be entitled to injunctive relief, Applicants must establish (1) a substantial likelihood that they will prevail on the merits; (2) they will suffer irreparable harm if the injunctive relief does not issue; (3) the balance of hardships favors issuance of an injunction; and (4) the public interest favors issuance of an injunction. *Cobell v. Norton*, 391 F.3d 251, 258 (D.D.C. 2004).

Applicants cannot meet this burden.  Not only are Applicants unlikely to prevail on the merits, but they cannot demonstrate irreparable harm or that the public interest and balance of the hardships weigh in favor of injunctive relief.

Applicants' request for relief boils down to arguments that publication of the unredacted Qantas Plea Agreement would violate Fed. R. Crim. P. 6(e) and their due process rights by, in effect, branding them as unindicted co-conspirators.  Not only were these very arguments advanced and rejected in *Korean Air* and *Hammond*, in which this Court interpreted identical "carve-out" language, but the interests claimed by Applicants cannot overcome the countervailing interests of the public and the press, the many victims of the subject conspiracy, and the parties and beneficiaries of the Qantas Plea Agreement in making its full terms public.

**A.    This Court Correctly Analyzed And Rejected Similar Rule 6(e) and Due Process Claims in Prior Rulings Arising Out of the Same Investigation.**

This Court assessed virtually identical arguments put forth by individuals carved out of the Korean Air and British Airways Plea Agreements in August 2007.  The operative language in those plea agreements was in all material respects identical to the Qantas Plea Agreement, as are the circumstances under which the agreements were reached.  Applicants make no effort to distinguish their case from the prior ones – nor can they.  Applicants can do no more than contend that this Court's earlier rulings were wrong.  Memo of Law at 2.[3]

---

[3] Applicants suggest that this Court should recuse itself from consideration of this motion because of the likelihood that it will rule against them on the basis of its prior decisions in *Korean Air* and *Hammond*.  Memo of Law at 3 n. 2.  The possibility that a court would rule consistently when presented with motions raising the same issue and making the same arguments under essentially the same circumstances is hardly a proper basis for recusal.

1.    **Rule 6(e) is not violated because a carve-out list does not reveal grand jury proceedings.**

Applicants' first argument, that Fed. R. Crim. P. 6(e) prohibits the identification of carve outs, was expressly considered and rejected in *Hammond.* 502 F. Supp. 2d at 101. Rule 6(e) does not require a veil of secrecy to be drawn over all matters connected with an investigation, only those that reveal the grand jury's proceedings. Discussions of actions taken or not taken by government attorneys do not reveal information about matters occurring before the grand jury and thus do not violate Rule 6(e). *Id.,* 502 F. Supp. 2d at 101 & n. 5 (*citing In re Sealed Case No. 99-3091,* 192 F.3d 995 (D.C. Cir. 1998)).[4]

In this case, the mere fact that the United States and Qantas have entered into a plea agreement that requires the company to make witnesses available for grand jury testimony, *if requested,* at some future time in no way "elucidate[s] the inner workings of the grand jury." *Id. See also Washington Post v. Robinson,* 935 F.2d 282, 291 (D.C. Cir. 1991) (refusing to seal a plea agreement on Rule 6(e) grounds where it did not "allude to any specific 'matters occurring before the grand jury'"). Qantas' cooperation obligation provides no insight into what evidence actually has been or will be presented to a grand jury, the identities of the subjects of that grand jury's investigation, or what, if any, charges it will contemplate. Likewise, Applicants' status as carve outs provides no insight into the grand jury's proceedings, given the variety of reasons that

---

[4] Applicants appear to fault the United States for referring to the fact that it is conducting an ongoing price-fixing investigation. Memo of Law at 10. Yet, as Applicants also note, "it is no secret that Qantas, as well as the entire air cargo industry, has been and continues to be under investigation by a grand jury for price-fixing activity." The fact of the investigation is public, and a general reference to its existence does not violate Rule 6(e).

can support a carve-out decision. Neither public acknowledgment of Qantas' cooperation

obligation nor the identities of the carve outs – whether considered separately or together –

infringes on grand jury secrecy in violation of Rule 6(e).

Applicants' requested relief – the filing of a sealed list of carve outs or providing Qantas

with a non-public letter naming the carve outs, Memo of Law at 28 – is inconsistent with their

Rule 6(e) argument. If, as Applicants contend, identification of carve outs reveals the grand

jury's proceedings and thereby violates Rule 6(e), the identification of carve outs to Qantas,

either by list or letter, likewise would reveal the grand jury's proceedings and violate Rule 6(e).

Under Applicants' theory, providing the names of carve outs to anyone outside of those included

in Rule 6(e)(3)(A) – presumably even through the act of negotiating the carve-out list with

Qantas or disclosure to this Court in connection with plea and sentencing – would necessarily

violate Rule 6(e) by revealing the grand jury's proceedings. That, of course, cannot be the law

and demonstrates the fallacy of Applicants' argument that the names on a carve-out list reveal a

grand jury's proceedings.

2. **Applicants' due process rights are not violated because a carve-out list is not accusatory.**

Applicants' due process claims also are meritless. The Fifth Amendment protects an

individual from governmental accusations of criminal misconduct without providing a proper

forum for vindication. *Korean Air,* 505 F. Supp. 2d at 93; *Hammond,* 502 F. Supp. 2d at 101.

Thus, courts have found due process violations when an uncharged person is identified as an

unindicted co-conspirator. *Hammond,* 502 F. Supp. 2d at 101-02 (citing cases).

In the *Korean Air* and *Hammond* cases, this Court reviewed the filed informations, the

plea agreements, and even the Department of Justice's press release and correctly concluded that nowhere were the individuals identified as co-conspirators, otherwise described as targets or even subjects of the investigation, or accused of any wrongdoing. *Korean Air*, 505 F. Supp. 2d at 94-95; *Hammond*, 502 F. Supp. 2d at 98. *See also United States v. Crompton Corp.*, 399 F. Supp. 2d 1047, 1048 (N.D. Cal. 2005) (denying a motion to redact the name of a carve out from a Division plea agreement).[5] This is equally true in this case.[6] Indeed, Qantas' press release regarding its plea agreement stated that there would be six carve outs but that: "This does not mean the individuals have been involved in any illegal conduct nor that DOJ would prosecute them. The two current employees of Qantas Freight who have been excluded from the Plea Agreement deny involvement in any illegal conduct." Snyder Decl., Ex. A.

Because they have not been named as unindicted co-conspirators or wrongdoers, Applicants argue that public identification of carve outs will violate their due process rights

---

[5] Applicants' reliance on the United States Attorneys' Manual ("USAM") also is misplaced. Memo of Law at 18. Every provision contained in the USAM addressing the disclosure of a third party's identity generally precludes disclosing third-party *wrongdoers* (*see, e.g.,* USAM § 9-27.760). No language in the Qantas Plea Agreement identifies Applicants as wrongdoers. *Korean Air*, 505 F. Supp. 2d at 96; *Hammond*, 502 F. Supp. 2d at 102. Moreover, the carve outs in *Hammond* and *Korean Air* "appealed" the Division's carve-out practice to the Office of Deputy Attorney General, but their "appeals" were denied. In any event, Applicants cannot use the USAM to create a basis for redacting their names. The USAM specifies that it "is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal." USAM § 1-1.100; *Korean Air*, 505 F. Supp. 2d at 96 n. 4; *Hammond*, 502 F. Supp. 2d at 102 n. 6.

[6] Moreover, there is no inference to be drawn from the pleadings that the individuals were carved out because they were co-conspirators. As the Court noted in the earlier cases, the individuals cannot conspire with their own employer. *Korean Air Lines*, 505 F. Supp. 2d at 94-95; *Hammond*, 502 F. Supp.2d at 98; *see also Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768-72 (1984).

because some or all inferences that could be drawn from the carve-out decision are not benign and thus tend to place them in a negative light. Memo of Law at 11-14. This of course is not the test of a due process violation, and Applicants cite no authority for their argument. There are instances where acts of the government – such as terminating an employee, executing a search warrant on a private residence, or investigatory interviews of third parties about a suspect by FBI agents – may cause some to draw negative inferences, but any negative inferences from such non-accusatory conduct do not rise to the level of a due process violation.

As this Court held in *Korean Air* and *Hammond*, public identification of carve outs violates Applicants' due process rights only if it is accusatory in nature, by naming them as co-conspirators, criminal actors, or wrongdoers. *Korean Air*, 505 F. Supp. 2d at 93; *Hammond*, 502 F. Supp. 2d at 101. Even the cases cited by Applicants in support of their due process arguments make clear that a due process violation in this context requires a specific government accusation of criminal misconduct or wrongdoing.[7] If, on the face of the plea agreement, an individual

---

[7] For instance, in *Finn v. Schiller*, 72 F.3d 1182 (4th Cir. 1996), a prosecutor publicly filed an 83-page statement alleging that an unindicted person "conspired to commit mail, wire, and securities fraud in acquiring railroad stock." Similarly, in *United States v. Briggs*, 514 F.2d 794 (5th Cir. 1975), individuals were specifically identified by name as unindicted co-conspirators in a grand jury indictment. All of the other cases Applicants cite either involve express identification of an individual as an unindicted co-conspirator or criminal actor or relate to the production of actual grand jury materials. *See, e.g., United States v. Sells Engineering, Inc.*, 463 U.S. 418 (1983) (express disclosure of actual grand jury materials); *Wisconsin v. Constantineau*, 400 U.S. 433 (1971) (invalidating a statute that required liquor stores to post a list of people who might become a danger to themselves or the community if sold alcohol); *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1138, 1141 (D.C. Cir. 2006) (judicial opinion was redacted because it summarized submissions by a prosecutor that provided detailed explanation of a grand jury's investigation to justify an order compelling testimony by journalist); *In re Smith*, 656 F.2d 1101 (5th 1981) (unindicted individual named in the factual bases given to support two defendants' guilty pleas); *United States v. Chadwick*, 556 F.2d 450 (9th 1977)

could have been carved out for non-accusatory reasons – whether or not benign – then no due process violation results from publication of the names of carve outs.

As this Court has noted, there are a number of non-accusatory reasons why individuals may be carved out of a corporate plea agreement.  The decision may be based on a "bare refusal" to cooperate with the investigation or because the individuals have not been located or because the United States has not yet determined what role, if any, the individuals played in the conduct. *Korean Air,* 505 F. Supp. 2d at 95 (citing Scott D. Hammond, Assistant Attorney General for Criminal Enforcement, Antitrust Division, DOJ, *Measuring the Value of Second-In Cooperation in Corporate Plea Negotiations,* Address at the 54th Annual American Bar Ass'n Section of Antitrust Law Spring Meeting (March 29, 2006), at 7-8; *Hammond,* 502 F. Supp. 2d at 100 (same).  Thus, there is no necessary implication or accusation that the carved-out individuals are co-conspirators, targets of the investigation, or have otherwise engaged in any wrongdoing.

The inference that a witness will not cooperate does not mean by extension that he or she also is an unindicted co-conspirator, wrongdoer, or anything more than a possible fact witness. Although some employees may refuse to cooperate because they are culpable and their cooperation may implicate themselves, others may refuse in order to protect bosses or friends or to avoid inconvenience or the "snitch" label.  Thus, carving them out for refusing to cooperate is

---

(individual identified by name as an unindicted co-conspirator in a grand jury indictment); *United States v. Anderson*, 55 F. Supp. 2d 1163 (D. Kan. 1999) (individuals identified by name as unindicted co-conspirators in pretrial filings).

not equivalent to accusing them of wrongdoing.[8]

Applicants argue that it would be "nonsensical" for the public to infer that current employees would or could be uncooperative with the government's investigation, but the fact is that current employees frequently do refuse to cooperate for a variety of reasons. In such a case, an employer cannot force any employee, current or former, to cooperate with the investigation, which is exactly why the Division carves out non-cooperative employees who are not otherwise considered subjects or targets of an investigation.

Likewise, no implication of wrongdoing results from carving out former employees the United States believes have relevant knowledge but who cannot be contacted or located. Mere knowledge – and what is relevant is not restricted to direct knowledge of the conspiracy – is not tantamount to participation in a crime or conspiracy.

Carving out an employee on the basis that the United States has not yet determined the employee's role, if any, in the conduct only shows that the government does not know or has not reached an opinion regarding a person's culpability. Neither inference amounts to an accusation of criminal misconduct or alleged wrongdoing. Indeed, in the case of a current employee, a plausible inference might be drawn that he had no role in the unlawful conduct because the

---

[8] *Korean Air*, 505 F. Supp. 2d at 96 (While "culpability is one possible reason for carving out an employee from a corporate plea agreement," there are "other possible reasons, including the bare refusal of an employee to cooperate or the need to develop additional evidence."); *Hammond*, 502 F. Supp. 2d at 100 (same); *Crompton*, 399 F. Supp. 2d at 1049 ("The Plea Bargain here makes no allegations that those named as exempt from the prosecutorial immunity are coconspirators . . . . Those named as exempt from the non-prosecution guarantee could have been named because they had made known in pre-filing negotiations that they would not cooperate with the government even with such a guarantee.").

company has chosen not to terminate his employment.

Here, the United States has offered the public no reasons for the carve-out decisions.[9] There are a variety of reasons upon which those decisions might be based, and the public has no basis for concluding which reasons were applicable to Applicants. Accordingly, Applicants are left asserting that various inferences *might* be drawn by members of the public – even going so far as to say that if a single person would infer culpability, *see* Memo of Law at 15, however unreasonable the inference, then the government has violated the Constitution and committed contempt, *see* Rule 6(e)(7). This cannot be correct. Nothing militates in favor of any particular inference being drawn, especially by someone unfamiliar with the course or conduct of the investigation, and inferences of culpability are by no means inevitable or logically dictated.

**B.     The Interests of the Public, the Victims, and the Parties' Interest in Publication of the Qantas Plea Agreement Preclude or Far Outweigh Applicants' Interest in Redaction**

As this Court noted in *Korean Air*, 505 F. Supp. 2d at 96, n.3, and *Hammond*, 502 F. Supp. 2d at 102-103, the public, victims of the subject conspiracy, and the parties to, and beneficiaries of, the Qantas Plea Agreement all have significant interests in publication of that agreement without redaction. The public has a First Amendment right of access to court proceedings and documents, including the plea agreement in this case. *Robinson*, 935 F.2d at 288. "[P]lea agreements have traditionally been open to the public and public access to them

---

[9] The other party to the agreement, Qantas, likewise has offered no reasons, but, as noted above, *see, supra*, p. 8, it has publicly stated that the carving out of the six individuals "does not mean the individuals have been involved in any illegal conduct nor that DOJ would prosecute them." *See* Snyder Decl., Ex. A.

'enhances both the basic fairness of the criminal [proceeding] and the appearance of fairness so essential to public confidence in the system." *Id.* (citations omitted).[10] This right of access trumps any interests Applicants have in redaction because "the public interest as dictated by the First Amendment requires the Plea Agreement be made available to the public in its entirety. Absent a compelling interest, the First Amendment grants the public and the press access to court proceedings and documents, including plea agreements." *Crompton Corp.*, 399 F. Supp. 2d at 1051 (citing *Oregonian Publ'g Co. v. U.S.D.C. for the Dist. of Or.*, 920 F.2d 1462, 1465 (9th Cir. 1990)).

For victims, the right of access to the Qantas Plea Agreement is guaranteed by statute. Applicants' request to redact the list of carve outs in the Qantas Plea Agreement directly conflicts with the dictates of the Crime Victims' Rights Act of 2004, 18 U.S.C. § 3771. *See Crompton Corp.*, 399 F. Supp. 2d at 1051. That statute provides that, in any court proceeding involving an offense against a crime victim, the court "shall ensure" that the crime victim is afforded the "right not to be excluded" from any public court proceeding. 18 U.S.C. § 3771(a)(2-3) & (b). Government attorneys may assert the access rights on behalf of crime victims. 18 U.S.C. §

---

[10] Applicants' attempts to distinguish *Robinson* are without merit. The case amply demonstrates that a court should not withhold from the press and public the terms of a plea agreement absent compelling reasons to do so, even in a case that is being closely watched and scrutinized. As discussed above and already established by *Korean Air* and *Hammond*, Applicants simply cannot carry their burden of demonstrating the compelling reasons necessary to justify redacting the Qantas Plea Agreement and withholding that information from the public and press.

3771(d)(1); *see United States v. Marcello*, 370 F. Supp. 2d 745, 746 (N.D. Ill. 2005).[11]

And, for the parties to, and beneficiaries of, the Qantas Plea Agreement, an interest in contractual clarity justifies publication of the unredacted agreement. The agreement identifies individuals by name for a specific reason: to avoid ambiguity in a critical contractual provision. "Plea agreements are contractual in nature and are measured by contract law standards," and it is the responsibility of the government to ensure contractual precision in plea agreements. *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993); *see also United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000), *citing* 5 Wayne R. LaFave, Jerold H. Israel & Nancy J. King, Criminal Procedure, § 21(d), at 57 (2d ed. 1999) ("Constitutional and supervisory concerns require holding the Government to a greater degree of responsibility than the defendant . . . for imprecisions or ambiguities in plea agreements.").

---

[11] Accusing the Division of selectively quoting regulations, Applicants make the flawed argument that 28 C.F.R. § 50.9(e) shows that the Crime Victims' Rights Act of 2004, 18 U.S.C. § 3771, does not apply to sealing plea agreements, Memo of Law at 26. That regulation, however, codifies the Department of Justice's policy of ordinarily resisting the closure of judicial proceedings, including "plea proceedings," because "of the vital public interest in open judicial proceedings." 28 C.F.R. § 50.9. Applicants rely on subsection (e), which excludes certain proceedings from the policy's application, but Applicants' partial quotation of that exception misleadingly suggests that the sealing of documents in general is excluded. The closure of judicial proceedings, however, includes the sealing of documents. *See Cobell v. Norton*, 157 F. Supp. 2d 82, 88 n.10 (D.D.C. 2001) (considering § 50.9 in deciding motions to seal and unseal documents); *United States v. McVeigh*, 119 F.3d 806, 809 n.3 (10th Cir. 1997) (noting DOJ policy under § 50.9 "to oppose any decision to seal documents"). What the regulation does except, among other things, is the "sealing of documents . . . *where* permitted by statute, rule of evidence or privilege." 28 C.F.R. § 50.9(e)(2) (emphasis added). Applicants have not identified any statute, evidentiary rule, or privilege permitting sealing other than Rule 6(e). As discussed above, the Qantas Plea Agreement reveals no matters occurring before the grand jury, and, accordingly, Rule 6(e) does not provide a basis for sealing (or redacting) that plea agreement under 28 C.F.R. § 50.9(e).

14

The United States and Qantas negotiated at length over which Qantas executives were to receive non-prosecution protections and which were not. A major benefit to Qantas and its employees from this Plea Agreement is the certainty that the government will not prosecute the majority of Qantas' executives so long as they cooperate. Yet for Qantas' employees to make informed decisions about their constitutional rights – such as whether to assert the Fifth Amendment right to remain silent – it must be clear who is included in the non-prosecution guarantees and who is not. The only way to achieve that contractual precision is to identify by name those individuals who are not covered by the non-prosecution agreement. To do otherwise could also unnecessarily impede and delay the investigation by causing individuals to experience the unfounded fear that cooperating with investigators could lead to their prosecution. *See* 18 U.S.C. § 3771(a)(8) (Crime victims' right to proceedings "free from unreasonable delay"). It is for this reason, among others, that Applicants' suggestion that the names may be sealed in a separate filing will not serve the public interest.[12]

---

[12] Applicants' suggestions regarding how the Qantas Plea Agreement might be redacted, revised, and supplemented by a separate document are irrelevant, ineffective, and should be ignored. *See* Memo of Law at 27-28. The Qantas Plea Agreement has been negotiated and signed by the United States and Qantas, and non-parties have no standing to require them to accept their suggested revisions. To the extent Applicants suggest that the names of all carve outs should be sealed in every case, the standard for sealing is simply not met because there is no Rule 6(e), due process, or other legal basis for sealing the names of carve outs that is sufficient to overcome the right of access of the public, press, and crime victims. And to the extent Applicants are proposing sealing only certain categories of carve outs or only in certain cases, that proposal also introduces a difficult to administer line-drawing task that may only exacerbate the situation. The government would have to decide when to depart from its uniform policy and which carve outs to treat differently. The court, in ruling on the government's or another party's motion to seal, would have to make those same decisions parsing out which carve outs warrant concealment and which do not. Moreover, if a motion to seal or redact the carve-out list is denied (or if the motion is unsealed), the inferences drawn from the government's unsuccessful

## IV. CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court deny Applicants' request to redact their names from the Qantas Plea Agreement in this case and order that the Qantas Plea Agreement be filed publicly and without redaction.

DATED: January 2, 2008

Respectfully submitted,

BY: _____
Mark Rosman, Assistant Chief
Brent Snyder, Trial Attorney
Mark Grundvig, Trial Attorney
Katie Hellings, Trial Attorney
Liz Aloi, Trial Attorney
Katherine A. Schlech, Trial Attorney
U.S. Department of Justice
Antitrust Division
1401 H Street, N.W., Suite 3700
Washington, D.C. 20530
Tel.: (202) 307-6694
Fax: (202) 514-6525

---

attempt to seal or redact the names would likely be far more negative than leaving the names unsealed from the outset. Likewise, if the list of carve outs, even though sealed by the court and redacted from the plea agreement, became public – for example, by a leak to the press by any of the numerous people who would need access to the list including the carve outs themselves, various corporate employees, and their respective counsel – the inferences would again likely be far more negative.

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing to be served upon the below-listed attorneys by overnight mail and electronic transmission, as agreed, on January 2, 2008:

Henry W. Asbill, Esq.
Kerri Ruttenberg, Esq.
Dewey & LeBoeuf, LLP
1101 New York Ave., NW, Suite 1100
Washington, DC 20005-4213
Phone: (202) 986-8109
hasbill@dl.com
kruttenberg@dl.com

Royal B. Martin, Esq.
Daniel T. Hartnett, Esq.
Martin Brown & Sullivan
321 South Plymouth Ct., 10th Floor
Chicago, IL 60604
Phone: 312-360-5000
martin@mbslaw.com
hartnett@mbslaw.com

Elizabeth G. Taylor, Esq.
Andrew Goldfarb, Esq.
Zuckerman Spaeder LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
Phone: 202-778-1800
etaylor@zuckerman.com
agoldfarb@zuckerman.com

W. Todd Miller, Esq.
Baker & Miller PLLC
2401 Pennsylvania Avenue, N.W., Suite 300
Washington, D.C. 20037
Phone: 202-663-7820
tmiller@bakerandmiller.com

DATED: January 2, 2008 at Washington, D.C.    _____
                                              Brent Snyder

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| In re INTERESTED PARTY 1 and | ) | Case No. 1:07-MC-00567-JDB |
| In re INTERESTED PARTY 2, | ) |  |
| in the Matter of UNITED STATES | ) | (Related to Case No. 07-CR-00322-JDB) |
| v. QANTAS AIRWAYS LIMITED | ) |  |
|  | ) | **FILED UNDER SEAL** |
|  | ) |  |
|  | ) |  |

**DECLARATION OF BRENT SNYDER IN OPPOSITION TO EMERGENCY APPLICATION FOR INJUNCTIVE RELIEF FROM A CRIMINAL CASE BY INTERESTED PARTIES PURSUANT TO LOCAL CRIMINAL RULE 57.6 IN U.S. V. QANTAS AIRWAYS LIMITED (CRIMINAL CASE NO. 07-00322-JDB)**

I, Brent Snyder, hereby declare as follows:

1.     I am an attorney with the United States Department of Justice, Antitrust Division

(the "Division") in Washington, D.C.  I have personal knowledge of the matters set forth herein

and, if called as a witness, could and would testify competently thereto.

2.     It has long been the policy of the Division to identify by name individual

executives who are not included within, and are thus "carved out" of, corporate plea agreements.

I am informed and believe that this policy has been followed for many years in dozens and

dozens of corporate plea agreements filed by the Division in districts across the country,

including the District of Columbia.  I am informed and believe that hundreds of individuals have

been referenced as carve outs in the Division's corporate plea agreements, and none of them

consented to it.  Moreover, I am informed and believe that no court has ever required the

Division to file a plea agreement under seal or required redaction of the names of individual

carve outs.

3.     I am informed and believe that upon being informed that the Division's long-

standing policy of naming carve-outs in corporate plea agreements would apply to the Korean

Air Lines Co. and British Airways plea agreements with the United States, counsel for certain of

the carve outs for each company requested the opportunity to "appeal" the application of this

Division policy to the Department of Justice, Office of the Deputy Attorney General.  They were

permitted to do so, and the appeal was denied.

    4.    Attached hereto as Exhibit A, and incorporated herein by reference, is a true copy

of a Qantas Airways Limited press release, dated 28 November 2007, which I printed off the

company's website.

    I declare under penalty of perjury under the laws of the United States that the

foregoing is true and correct.

Executed this 2nd day of January 2008 at Washington, D.C.

Brent C. Snyder
Trial Attorney
National Criminal Enforcement Section
Antitrust Division

# EXHIBIT A



**Qantas Enters Plea Agreement with US Government**
**Sydney, 28 November 2007**

Qantas said today it had entered a Plea Agreement with the US Government to settle its liability in the United States resulting from illegal price fixing conduct within its Freight Division.

The Chief Executive Officer of Qantas, Mr Geoff Dixon, said Qantas had agreed to pay a fine of US$61 million.

Mr Dixon said the illegal conduct involved fuel surcharges in the international air cargo market between 2000 and 2006.

"Similar investigations to those being carried out by the United States Department of Justice (DOJ) are being undertaken by antitrust regulators in other countries, including Australia.

"We understand more than 30 other airlines are included in these investigations," he said.

Mr Dixon said upon being advised of the allegations, in May 2006, Qantas had cooperated fully with investigations by the DOJ and other antitrust regulators.

"These investigations confirmed that the practices adopted by Qantas Freight and the cargo industry generally to fix and impose fuel surcharges breached relevant antitrust laws," he said.

Mr Dixon said the facts revealed by the investigation related only to Qantas' Freight division and did not in any way involve the company's passenger business.

"Qantas takes its obligations to comply with the law very seriously. We have a comprehensive competition compliance program in place, and expect all of our employees to comply with these requirements at all times," he said.

"In this case, Qantas did not meet this expectation. The conduct was wrong and we apologise unreservedly for this."

Mr Dixon said the Plea Agreement entered into by Qantas settled the criminal liability in the USA for Qantas and all of its employees who had not been specifically excluded from the Plea Agreement.

"All investigations have confirmed that knowledge of the conduct was confined within the Qantas Freight Division.

"Four past and two current employees of Qantas Freight have been excluded from the Plea Agreement and the DOJ has reserved the right to investigate these cases further. This does not mean the individuals have been involved in any illegal conduct nor that the DOJ would prosecute them.

"The two current employees of Qantas Freight who have been excluded from the Plea Agreement deny involvement in any illegal conduct."

Mr Dixon said Qantas would continue to cooperate with the investigations being undertaken by the DOJ and other antitrust regulators, which could take up to two years to complete.

"Our 2006/07 financial statements included a US$40 million provision for the US liability. We do not believe this or any further financial penalties will materially affect future operating results."

Issued by Qantas Corporate Communication (3696)
Email: qantasmedia@qantas.com.au

© Qantas Airways Limited ABN 16 009 661 901

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a true and correct copy of the foregoing to be served upon the below-listed attorneys by overnight mail and electronic transmission, as agreed, on January 2, 2008:

Henry W. Asbill, Esq.
Kerri Ruttenberg, Esq.
Dewey & LeBoeuf, LLP
1101 New York Ave., NW, Suite 1100
Washington, DC 20005-4213
Phone: (202) 986-8109
hasbill@dl.com
kruttenberg@dl.com

Royal B. Martin, Esq.
Daniel T. Hartnett, Esq.
Martin Brown & Sullivan
321 South Plymouth Ct., 10th Floor
Chicago, IL 60604
Phone: 312-360-5000
martin@mbslaw.com
hartnett@mbslaw.com

Elizabeth G. Taylor, Esq.
Andrew Goldfarb, Esq.
Zuckerman Spaeder LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
Phone: 202-778-1800
etaylor@zuckerman.com
agoldfarb@zuckerman.com

W. Todd Miller, Esq.
Baker & Miller PLLC
2401 Pennsylvania Avenue, N.W., Suite 300
Washington, D.C. 20037
Phone: 202-663-7820
tmiller@bakerandmiller.com

DATED: January 2, 2008 at Washington, D.C.

_____
Brent Snyder

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re INTERESTED PARTY 1 and ) <br> In re INTERESTED PARTY 2, ) <br> in the Matter of UNITED STATES ) <br> v. QANTAS AIRWAYS LIMITED ) <br> ) <br> ) <br> _____) | Case No. 1:07-MC-00567-JDB <br><br> (Related to Case No. 07-CR-00322-JDB) <br><br> **FILED UNDER SEAL** |

**[PROPOSED] ORDER DENYING EMERGENCY APPLICATION FOR INJUNCTIVE RELIEF FROM A CRIMINAL CASE BY INTERESTED PARTIES PURSUANT TO LOCAL CRIMINAL RULE 57.6 IN U.S. V. QANTAS AIRWAYS LIMITED (CRIMINAL CASE NO. 07-00322-JDB)**

On this date, the Court considered an Application for Relief by an Interested Party Pursuant to Local Criminal Rule 57.6 (the "Application"). Having considered the Application, and the United States' Opposition thereto, and having concluded that (1) the applicants have failed to demonstrate entitlement to the requested relief; (2) the interests of the public, the press, crime victims, and the parties to the plea agreement between the United States and Qantas Airways, Limited support publication of that plea agreement without redaction; and (3) that this Court's prior rulings on similar applications filed in *United States v. Korean Air Lines Co., Ltd* (Misc. Case No. 07-MC-324), 505 F. Supp. 2d 91 (D.D.C. 2007), and *Doe v. Hammond* (Civil No.: 07-1496 JDB), 502 F. Supp. 2d 94 (D.D.C. 2007) are on point and applicable, the Court DENIES the Application.

IT IS SO ORDERED.

Dated: _____, 2008.

_____
Hon. John D. Bates
United States District Court Judge