IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

In re INTERESTED PARTY 1 and
In re INTERESTED PARTY 2, in the Matter of
UNITED STATES v. QANTAS AIRWAYS
LIMITED

_____

)
)
)
)
)
)
)
)
)
)
)

Case No. 1:07-MC-00567-JDB

(Related to Crim. No.07-00322-JDB)


**FILED UNDER SEAL**

**STEPHEN CLEARY'S AND HAROLD PANG'S JOINT REPLY TO
OPPPOSITION OF THE UNITED STATES TO THEIR EMERGENCY APPLICATION
FOR INJUNCTIVE RELIEF FROM A CRIMINAL CASE BY INTERESTED
PARTIES PURSUANT TO LOCAL CRIMINAL RULE 57.6 IN
U.S. v. QANTAS AIRWAYS LIMITED (CRIM. CASE NO. 07-00322-JDB)**

The Antitrust Division's anticipated naming of Messrs. Cleary and Pang in its publicly-

filed Plea Agreement with Qantas violates Rule 6(e) and Applicants' due process rights. The

Division repeatedly asserts that the instant Application is a mere "rehash" of the arguments

raised in the recent <u>Korean Air Lines</u> and <u>Hammond</u> cases, even going so far as to say

Applicants "make no effort to distinguish this case from the prior ones – nor can they."

Opposition at 5. This patently false contention, exacerbated by mischaracterizations of our

claims and "straw" arguments, glosses over the fatal weaknesses in the Division's analysis. Far

from being a "rehash" of previously rejected arguments, Applicants' legal positions on all

relevant issues are different. Moreover, there is a significant factual distinction between this case

and the predecessor ones – Qantas has expressly asked the Division to grant Applicants'

redaction request because serious reputational and economic harm both to Applicants and Qantas

inevitably will result if Messrs. Cleary and Pang are named in the Agreement. <u>See</u> Exhibit 1,

attached. Thus, although the basic issues are the same (i.e., "due process" and "Rule 6(e)"), this

case must be considered independently from <u>Korean Air Lines</u> and <u>Hammond</u>, and the legal and factual differences compel a different result from those cases.[1]

The Division's key premise – that Applicants, both of whom are still at Qantas, have not been named as co-conspirators, identified as subjects or targets of any investigation, or accused of any wrongdoing – is wrong.  Opposition at 2.  This assertion completely ignores that the substance of the plea agreement – coupled with the Division's express, public explanations for why individuals are carved out of plea agreements – is tantamount to identifying Messrs. Cleary and Pang as subjects or targets of a grand jury investigation and naming them as wrongdoers. The context in which the public will view carve-outs here is malign and undeniable.  Numerous airlines' offices were searched by law enforcement officers, the grand jury has issued numerous subpoenas, and Qantas and other airlines have expressly admitted participation in an illegal price- fixing conspiracy.  The Division has issued multiple press releases about the ongoing air cargo antitrust investigation and has vowed to "aggressively pursue those who engage in criminal conduct."  And, the Division publicly has asserted that "certain <u>culpable</u> employees, employees who <u>refuse</u> to cooperate, and employees <u>against</u> whom the Division is still developing evidence may not receive protection under the company plea agreement. . . . [For second-in companies,]

_____

[1] For this reason, Applicants suggested that this Court should consider transfer or recusal.  <u>See</u> Application at 3, n. 2.  Contrary to the Division's suggestion, Applicants did not raise this concern simply because of the "possibility that [the] court would rule consistently when presented with motions raising the same issue and making the same arguments . . ."  Opposition at 5, n. 3.  Rather, against the backdrop of the Division's myopia and this Court's very recent decisions without hearings against the airline executives, it would be a natural human tendency to want to believe the prior cases were decided correctly and to reflexively resist reversing course.
    Additionally, we are unsure whether all of the underlying criminal cases (<u>U.S. v. British Airways</u>, <u>U.S. v. Korean Air Lines</u>, and <u>U.S. v. Qantas Airways Limited</u>) properly are before this Court as "related cases."  The fact that DOJ is investigating and alleges parallel antitrust violative behavior in the air cargo industry, does not mean every participant was in a single conspiracy with the other.  If these cases erroneously have been deemed related, we ask the Court to take appropriate action.

the Division will <u>typically</u> carve out only the <u>highest culpable individuals</u> as well as any

employees who refuse to cooperate." <u>See</u> Scott D. Hammond, Assistant Attorney General for

Criminal Enforcement Antitrust Division, DOJ, <u>Measuring the Value of Second-In Cooperation</u>

<u>in Corporate Plea Negotiations</u>, Address at the 54th Annual American Bar Ass'n Section of

Antitrust Law Spring Meeting (Mar. 29, 2006), at 7-8 ("Hammond Statement") (emphasis

added).  Under this constellation of facts, it is disingenuous for the Division to contend that

Applicants have not been "identified" as subjects or targets of the grand jury investigation and

have not been "accused" of wrongdoing.  Indeed, the only applicable carve-out explanation

identified in the <u>Hammond</u> statement is an accusation of criminal wrongdoing.

As more fully set forth <u>infra</u>, since publicly identifying Applicants as carve-outs will

violate Rule 6(e) and Applicants' due process rights, and because the First Amendment and

Crime Victims' Rights Act do not give the public or alleged victims an unqualified right to

access this information (particularly prior to a formal indictment), Applicants' requested relief

should be granted.

I.    **THE ARGUMENTS MESSRS. CLEARY AND PANG HAVE ADVANCED IN
      THEIR EMERGENCY APPLICATION ARE DISTINCT FROM THOSE
      ADVANCED IN THE HAMMOND AND KOREAN AIR LINES CASES AND
      SHOULD INDEPENDENTLY BE CONSIDERED.**

The Division repeatedly contends in its Opposition that Messrs. Cleary and Pang are

raising the "very arguments advanced and rejected in <u>Korean Air</u> and <u>Hammond</u>," and that

Applicants' arguments are "nothing more than a rehash of arguments that were recently raised

and rejected" in those cases.  Opposition at 1, 5, 6, 8, 13.  That is not at all true.  The arguments

raised in the instant Application differ from the arguments raised in <u>Korean Air Lines</u> and

<u>Hammond</u> in many important respects.  As expressly argued in the Application, the plaintiffs and

the Court in those cases apparently accepted without sufficient analysis the Division's assertions

3

that there were plausible, non-culpability inferences the public could draw from the plaintiffs' carve-out status.  And, the Court's holding was in large part based on this assumption: "<u>Because there are non-criminal culpability reasons that may give rise to carve out status</u>, an employee's carve out status does not mean, expressly or impliedly, that he has engaged in criminal wrongdoing."  <u>Hammond</u>, 502 F.Supp.2d at 102 (emphasis added).  Upon closer examination, each of the "benign" reasons proffered by the Division clearly suggests culpability or clearly would not apply.

Further, the instant Application differs from <u>Korean Air Lines</u> because Rule 6(e) was not raised or substantively addressed in that case.  Here, however, Applicants rely heavily on Rule 6(e) in requesting relief.  Finally, unlike the applicants in <u>Korean Air Lines</u> and <u>Hammond</u>, Messrs. Cleary and Pang directly rebut the Division's First Amendment and Crime Victims' Rights Act arguments.

## II.   THE DIVISION'S "STRAW MAN" ARGUMENTS DO NOT REFUTE THAT NAMING CARVE-OUTS IS IMPERMISSIBLE UNDER RULE 6(e).

The Division advances two responses to Applicants' contention that publicly naming carve-outs violates Rule 6(e).  Both arguments are mere "straw men," as they misrepresent Applicants' position and fail to refute Applicants' actual claims.

Initially, the Division claims the Plea Agreement's requirement that Qantas make witnesses available for grand jury testimony does not reveal a matter before the grand jury.  Opposition at 6-7.  However, the cooperation provision in the Agreement is not the basis for Applicants' assertion of a Rule 6(e) violation.  Rather, what reveals "matters before the grand jury" in violation of Rule 6(e) is the public naming of specific carved-out employees that leads to the obvious and logical inference that those carve-outs are subjects or targets of the very ongoing grand jury investigation that led to the Plea Agreement.  The fact that the Plea Agreement also

reveals Qantas's obligation to cooperate by making its employees available for grand jury testimony buttresses Applicants' contention that the most obvious inference from a carve-out decision is that the carve-outs are subjects or targets of that investigation. And, it demonstrates the implausibility of the inferences suggested by the Division – that current employees, particularly high-ranking executives in the very division under investigation, were carved out of the Agreement for refusing to cooperate with the investigation to avoid "inconvenience" or a "snitch" label. Opposition at 10.

Moreover, the Division's assertion that Qantas's obligation to cooperate with the ongoing grand jury investigation does not reveal matters before the grand jury is incorrect because it takes the provision out of context of the rest of the Agreement. The Agreement sets forth the facts of the criminal conspiracy underlying the plea, which is the criminal activity that still is subject to the grand jury's ongoing investigation with which Qantas must cooperate. For the same reason, the fact that carve-outs are exempted from this cooperation obligation effectively reveals matters before the grand jury, in particular that they are subjects or targets of the specifically-described grand jury investigation. Thus, naming them constitutes a Rule 6(e) violation.

In its second "straw man" argument, the Division contends that because identifying the carve-outs to Qantas as part of its plea negotiations is not a Rule 6(e) violation, disclosing that same information to the public also does not violate Rule 6(e). Opposition at 7. This argument is entirely unavailing. As the Division acknowledges, negotiating a plea agreement with a target corporation pursuant to Rule 11 and Federal Rule of Evidence 410 protections, which likely would reveal names of employee witnesses, subjects and targets as well as the "direction of the grand jury investigation," does not violate Rule 6(e). Id. Yet, revealing that same information to the public undeniably would constitute a Rule 6(e) violation. See, e.g., Hammond, 502 F.

Supp.2d at 98 ("The phrase 'matter[s] occurring before the grand jury' encompasses 'not only what has occurred and what is occurring, but also what is likely to occur, including "the identities of witnesses, . . . the strategy or direction of the investigation . . . and the like.""") (citing In re Sealed Case No. 99-3091, 191 F.3d 995, 1001 (D.C. Cir. 1999)). Indeed, the Court addressed this very issue in Hammond, stating "A disclosure by the government that the carved out individuals are or were in the past subjects of a grand jury investigation would, indeed, appear to violate Rule 6(e)." 505 F. Supp. 2d at 100, n. 2. Clearly, if disclosing the names of the carve-outs reveals "matters before the grand jury," which it does, publicly filing the plea agreement without redacting Applicants' names violates Rule 6(e).

The Division fails to address the key argument Applicants raised regarding Rule 6(e), which is also a material difference between this case and Hammond and Korean Air Lines – that the most obvious and likely inference from DOJ's carve-out decision is that the carve-outs are subjects or targets of the grand jury investigation, and all of the Division's proffered alternative inferences either are wholly implausible or imply culpability. The Division eventually addresses this argument in the context of the Fifth Amendment, discussed in more detail below, and argues that the carve-out decision does not imply "wrongdoing" on the part of the carve-outs. Opposition at 9-10. As explained in Applicants' opening memorandum of law, each of the alternative inferences articulated by the Division reveal "matters before the grand jury," and any plausible  The obvious implication of Applicants' carve-out status is that they are subjects or targets of the very grand jury investigation that led to the Plea Agreement, which itself requires Qantas to secure the ongoing cooperation of its covered employees including making them available for testimony in the grand jury. Such a disclosure violates Rule 6(e). See, e.g., Fund for Constitutional Gov't v. National Archives & Records Serv., 656 F.2d 856, 869 (D.C. Cir.

1981); <u>SEC v. Dresser Indus., Inc.</u>, 628 F.2d 1368, 1382 (D.C. Cir.) (en banc), <u>cert. denied</u>, 449

U.S. 993, 101 S.Ct. 529, 66 L.Ed. 289 (1980).

III.    **NAMING APPLICANTS AS CARVE-OUTS IN QANTAS'S PUBLICLY-FILED PLEA AGREEMENT VIOLATES APPLICANTS' FIFTH AMENDMENT DUE PROCESS RIGHTS.**

   A.    **Government Statements that Imply Criminal Culpability or Wrongdoing Implicate Due Process Protections.**

   The Division holds steadfast to its argument in <u>Hammond</u> that naming carve-outs does

not violate Applicants' due process rights because the information, plea agreement and press

release do not <u>expressly</u> identify Applicants as co-conspirators or otherwise describe them as

targets or subjects of the investigation, or accuse them of wrongdoing.  Opposition at 7-8.  This

argument ignores the acknowledgement by this Court in <u>Hammond</u> and other cases that an

implied statement an individual engaged in criminal wrongdoing, without providing a proper

forum for vindication, violates due process.  The mere fact the Plea Agreement does not

expressly accuse Applicants of criminal wrongdoing is not dispositive of the due process issue.

The Court addressed this very point in <u>Hammond</u>:  "Because there are non-criminal culpability

reasons that may give rise to carve-out status, an employee's carve out status does not mean,

<u>expressly or impliedly</u>, that he has engaged in criminal wrongdoing." 502 F. Supp. 2d at 102

(emphasis added).[2]

   Then, citing eight cases, the Division attempts to invent a new legal standard.  The

Division misleadingly states that "[e]ven the cases cited by Applicants in support of their due

_____

[2] The Division's reliance on Qantas's press release to buttress its argument also is inapposite, as due process is violated when the government makes a public allegation of wrongdoing, such as naming unindicted co-conspirators without also providing a forum for vindication.  Opposition at 8.  The violation is not cured or erased simply because the individual proclaims his innocence or, as here, his employer marginally supports that claim.  Statements in Qantas's press release thus are irrelevant to the analysis of Applicants' claims.

process arguments make clear that a due process violation in this context <u>requires a specific</u>

<u>government accusation of criminal misconduct or wrongdoing</u>."  Opposition at 9 (emphasis

added).  To begin with, Applicants did not rely on three of the cases listed by the Division for

their due process argument, as they are not due process cases and do not support the Division's

assertion.[3]  And, <u>none</u> of the remaining five cases cited by the Division hold that an individual's

due process rights are not implicated absent a "specific government accusation" of wrongdoing.[4]

The Supreme Court's teaching in <u>Wisconsin v. Constantineau</u>, in fact, supports Applicants'

argument that government action even implying wrongdoing implicates due process

considerations.  400 U.S. 433 (1971).  There, the Court held that even where government action

is susceptible to more than one interpretation, because one possible inference involves a "stigma"

the individual must be "afforded the chance to defend herself."  <u>Id</u>. at 437 (a statute requiring

liquor stores to post a list of people who might become a danger to themselves or the community

if served alcohol "may to some be merely the mark of illness, [but] to others it is a stigma, an

official branding of a person" requiring due process protections).

---

[3]  <u>Finn v. Schiller</u>, <u>U.S. v. Sells Engineering, Inc.</u> and <u>In re Grand Jury Subpoena, Judith Miller</u>
are not due process cases at all.  In fact, the court in <u>Schiller</u> expressly stated that it "will not
consider the due process claim and allow the district court the opportunity to first consider it."
72 F.3d 1182, 1191 (4th Cir. 1996).  And, the only due process issue even raised in <u>Finn</u> was
purely jurisdictional in nature.  <u>Id</u>. at 1190-91.  As for <u>Sells Engineering</u> and <u>Judith Miller</u>, both
cases addressed only Rule 6(e) and did not even consider the due process argument Applicants
raise here.  <u>U.S. v. Sells Engineering, Inc.</u>, 463 U.S. 433 (1971); <u>In re Grand Jury Subpoena,
Judith Miller</u>, 438 F.3d 1138 (D.C. Cir. 2006).  These cases clearly do not stand for the legal
standard the Division has invented in a last-ditch effort to avoid the reality, recognized in
<u>Hammond</u>, that government statements implying criminal wrongdoing also can violate due
process.

[4]  Four of the remaining cases the Division cites each involved the naming of an uncharged co-
conspirator in an indictment or other pre-trial filing (and the courts in each case found due
process violations), but not one of these cases holds or otherwise implies that specific
accusations of wrongdoing are <u>required</u> for due process to be at issue.  <u>U.S. v. Chadwick</u>, 556
F.2d 450 (9th Cir. 1977); <u>U.S. v. Briggs</u>, 514 F.2d 794 (5th Cir. 1975); and <u>U.S. v. Anderson</u>, 55
F. Supp. 2d 1163 (D. Kan. 1999); <u>In re Smith</u>, 656 F.2d 111 (5th Cir. 1981).

Even if the "standard" articulated by the Division were supported by any authority, however, it would be met in this case. The Plea Agreement sets forth the specific criminal conspiracy Qantas participated in through its employees and agents. Because as shown below naming Applicants as carve-outs in the Agreement is tantamount to identifying as subjects or targets in the grand jury's investigation of that very criminal activity, the Division is, in fact, making a specific accusation of wrongdoing against Applicants.

**B.    There Are No Plausible, Non-Culpability Inferences that Can Reasonably Be Drawn From the Decision to Carve Out Applicants.**

The Division, as it must, next contends that there are other, non-culpability inferences that can be drawn from the carve-out decision. These options are (1) that the individual cannot be located; (2) that the individual refuses to cooperate with the investigation; and (3) that the Division has not yet determined the individual's "role" in the investigation.

Contrary to its position in Korean Air Lines and Hammond, the Division now concedes the inability to locate an individual is not a plausible inference from a carve-out decision in the context of current employees like Messrs. Cleary and Pang. See Opposition at 11 ("[N]o implication of wrongdoing results from carving out former employees the United States believes have relevant knowledge but who cannot be located.") (emphasis added). Therefore, this Court should not consider this option as a viable inference in this case.

With respect to the second option, the Division contends that its carve-out decision may be based on an employee's "bare refusal" to cooperate "in order to protect bosses or friends or to avoid inconvenience or the 'snitch' label." Opposition at 10. At the outset, no reasonable person would infer that Applicants, both current and high-ranking executives in the very Qantas division under investigation, were carved out for refusing to cooperate with the investigation simply to avoid inconvenience, particularly against the backdrop of a Plea Agreement that requires

company cooperation as a pre-requisite to limiting the fine and obtaining personal immunity for numerous employees and a Qantas press release that states the company has fully cooperated and will continue to do so at its own expense. The Division contends, without providing any empirical data, case citation or other support, that "current employees frequently do refuse to cooperate for a variety of reasons," and that "in such a case, an employer cannot force any employee, current or former, to cooperate with the investigation[.]" Obviously, the "power" employers hold over current employees, like Applicants here, is the ability to fire them. The Division implicitly recognizes that employers have this ability to secure the cooperation of their employees, which is why this provision is an express requirement in its Plea Agreement with Qantas. Regardless of whether it is an accurate assumption in any particular case, the obvious inference the public would draw is that if a current, high-level employee refused to cooperate with a criminal investigation at his employer's direction because it was "inconvenient," the employee summarily would be fired.

Secondly, if a current employee was carved out because he refused to cooperate simply to "protect bosses or friends" or avoid a "snitch" label (Opposition at 10) – then he likely would be committing the crime of misprision of a felony by concealing his knowledge of the criminal conspiracy from the grand jury and the prosecutors. See 18 U.S.C. § 4 ("Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both."). Thus, this second alternative inference of a "bare refusal" to cooperate (the Division's phrase for refusing because you also might implicate yourself) is both implausible and inculpatory.

The third proffered allegedly benign option, that the Division "has not yet determined what role, if any, the individuals played in the conduct," appears to be a new spin on its public statement that an individual may be carved out because the Division is still developing evidence against that individual. See Hammond Statement. As addressed in our Application, this explanation clearly implies culpability. It is wholly implausible to suggest that after (1) investigating Qantas for over two years, (2) interviewing current and former employees, and (3) reaching a plea agreement that specifies illegal conduct and a fine amount and broadly immunizes everyone else at Qantas, affirmatively deciding to carve Applicants out of the Plea Agreement could mean the Division and the grand jury have not determined, at minimum, that Applicants are subjects or targets of the ongoing investigation. Indeed, if after two years of investigation the Division could not determine Messrs. Cleary and Pang played any role in the price-fixing conduct, they obviously would have been included in the Plea Agreement.

C.    **The Division's Eleventh Hour Efforts to Explain Why Neither the Pleadings Nor the Plea Agreement in this Case Imply That Applicants are Co-Conspirators Also are Unavailing.**

The Division's three additional arguments should be rejected. To begin with, the Division notes "[t]here are instances where acts of the government – such as terminating an employee, executing a search warrant on a private residence, or investigatory interviews of third parties about a suspect by FBI agents – may cause some to draw negative inferences, but any negative inferences from such non-accusatory conduct do not rise to the level of a due process violation." Opposition at 9. This argument is out of context and a patent misdirect. Obviously, none of these hypothetical actions are coupled with a plea agreement immunizing everyone else in the company from prosecution for participating in an unlawful antitrust conspiracy to which the company is pleading guilty, and do not take place against the extensive backdrop of an

11

ongoing grand jury investigation, government raids, multiple corporate admissions of guilt, DOJ press releases vowing to find and prosecute wrongdoers, and the Division's public, malign explanations for carve-out decisions.

The Division also contends that the public may infer Applicants were carved out simply because they are "mere fact witnesses," and not subjects or targets of the grand jury investigation. This contention is nonsensical for several reasons. First, it is well-settled that identifying grand jury witnesses violates Rule 6(e). See Application at 8-9 (citing, *inter alia*, Hammond, 502 F. Supp. 2d at 98 (recognizing that Rule 6(e) prohibits the disclosure of "'the identities of witnesses'")). Additionally, as previously addressed, no reasonable person, against the factual backdrop described in this reply, would infer the Division would carve out a mere fact witness. If the Division truly were carving Messrs. Cleary and Pang out of the Plea Agreement simply because they are fact witnesses who are not suspected of any wrongdoing then it should be willing to make that opinion public or at least include Applicants in the broad group of immune employees covered by the Plea Agreement. Of course, doing so would be illogical – the Agreement would essentially say that Qantas and all of its employees are immune from prosecution and are required to cooperate with the ongoing investigation, except for current Freight Division executives Stephen Cleary and Harold Pang, who are excepted from the immunity protection and cooperation obligations because they are fact witnesses who could assist with the investigation without any personal jeopardy because they did nothing wrong. The absurdity of this explanation demonstrates why this inference is entirely implausible.

Finally, the Division asserts that the "pleadings" do not imply carve-outs are co-conspirators because "individuals cannot conspire with their own employer." Opposition at 8, n. 6. Applicants recognize this general legal proposition and have never advanced this argument.

Qantas expressly admits in the Plea Agreement to participating in a criminal antitrust conspiracy through its officers and employees, "including high-level personnel of the Defendant's Freight Division," with one or more providers of air cargo services. Plea Agreement at ¶ 4(b). The obvious inference of being carved out of the Plea Agreement is that the excluded employees, who in this case are "high-level personnel" of the Freight Division, conspired with <u>others in the industry</u>, not with their own employer.

In sum, there simply are no non-culpability inferences that could plausibly be drawn from the decision to carve Applicants out of the Qantas Plea Agreement, and publicly naming Applicants as carve-outs violates their due process rights and Rule 6(e).

**IV.  <u>AN INJUNCTION WILL NOT IMPAIR THE RIGHTS OF THE PUBLIC OR ALLEGED VICTIMS.</u>**

**A.  An Injunction Will Not Impair the Public's First Amendment Rights.**

In just one paragraph of its Opposition, the Division argues that the public has a First Amendment right to view the Qantas Plea Agreement in its entirety. Opposition at 12-13. "The underlying purpose of the Bill of Rights is to protect the people from the power of the government." <u>Dunbar Corp. v. Lindsey</u>, 905 F.2d 754, 763 (4th Cir. 1990). Here, however, the Division invokes the public's general First Amendment right of access to judicial proceedings to justify an unnecessary exercise of governmental power that will effectively strip Applicants of their own constitutional protections. The Division is using the First Amendment as a sword to stab Messrs. Cleary and Pang. However, the First Amendment does not actually convey the broad, unqualified right of unfettered public access the Division contends it does.

It is well-established in that there is no right of access to grand jury proceedings or "'ancillary materials dealing with grand jury matters.'" <u>In re Grand Jury Subpoena, Judith Miller</u>, 493 F.3d at 154 (emphasis added) (quoting <u>In re Motions of Dow Jones & Co.</u>, 142 F.3d

496, 499, 502 (D.C. Cir. 1998)); see also Standley v. Department of Justice, 835 F.2d 216, 218

(9th Cir. 1987) (same).  Because revealing the names of carved-out employees reveals

information protected under Rule 6(e), no member of the public has a First Amendment right to

learn the carve-outs' names until and unless they are formally charged.

Moreover, as the Division necessarily concedes, a "compelling interest" may trump any

First Amendment right the public has in viewing the Plea Agreement.  Opposition at 13.  Here,

there is a compelling interest in protecting Applicants' due process rights and preventing the

Division from violating grand jury secrecy.  This compelling interest easily can be satisfied by

redacting Applicants' names from the Agreement, a measure that still would give the public full

access to all of the Agreement's fundamental terms.

Indeed, the Division's own arguments reveal its recognition that the identities of the

carve-outs are not a "term" of the Plea Agreement:  "The [carve-out] language simply states that

the terms of the agreement between the United States and Qantas do not apply to them."

Opposition at 4.  Obviously, the Plea Agreement's terms are inapplicable to many people –

billions, in fact – but naming those individuals as not covered under the Agreement is not a

"term" of the Plea Agreement.  The parties and the beneficiaries to the Agreement (i.e., those

employees whose inclusion is a "term" of the Agreement) simply need to be on notice that they

are included in the Agreement and therefore are entitled to the benefits and subject to the

obligations of the Agreement.  Neither the beneficiaries nor the public need or have a right to

know now with specificity who is not included in the Agreement.

Notably, no party or beneficiary to the Agreement other than DOJ is objecting to

redacting Messrs. Cleary's and Pang's names from the Agreement.  Significantly, and unlike the

employers in Korean Air Lines and Hammond, Qantas has expressly requested that DOJ redact

Messrs. Cleary's and Pang's names. In a letter to the Division detailing the "considerable reputational damage and economic losses" Qantas, and Messrs. Cleary and Pang, will suffer if Applicants are named as carve-outs, Qantas's Executive General Manager of Freight, Grant Fenn, expressly urged the Division to redact Applicants names. See Letter from Grant Fenn, Dec. 6, 2007, attached hereto as Exhibit 1. The company, via this request for modification of the Plea Agreement's language, implicitly recognizes that the validity and precision of the Agreement are not jeopardized by not naming Applicants as carve-outs. Thus, it is only the Division itself fighting to name the carve-outs in the publicly-filed Agreement.

Finally, the contention that the public has a right to know all provisions of plea agreements is circular and disingenuous here because it is the Division, alone, that determines what information will be contained in the agreement. The Division cannot include a statement in a plea agreement that violates due process and Rule 6(e) and claim the public has a right to know of that statement simply because it is in the plea. Neither the public nor alleged victims have a right to know every detail of the facts supporting the plea deal. Indeed, because there is an ongoing grand jury investigation, the Division does not reveal the names of Qantas's suspected corporate and individual co-conspirators in the industry or extensive details of the conspiracy – despite the general obligation under Federal Rule of Criminal Procedure 11 to provide a factual basis for the plea. The public's First Amendment rights clearly are not violated because the Division excluded this information. For the same reason, not naming Messrs. Cleary and Pang does not violate the public's First Amendment rights.

###    B.    An Injunction Will Not Impair the Public's Rights Under the Crime Victims' Rights Act.

The Division further claims that alleged victims have a right to access the Plea Agreement in its entirety which is "guaranteed by statute." Opposition at 13 (citing the Crime

Victims' Rights Act of 2004, 18 U.S.C. § 3771).  In advancing this contention, the Division does

not contest Applicants' argument that the Act itself only gives victims statutory rights of notice

and access to public court proceedings (though it does not mandate that all court proceedings

must be public), and that these rights are not absolute.  Application at 25-27.  Instead, the

Division attempts to salvage its crime victims' rights argument with a single footnote, stating

that the closure of "judicial proceedings" –  which under the Act does not include plea

agreements or the sealing of documents (see Application at 25-26) – applies to the sealing of

documents under 28 C.F.R. § 50.9(e).  Opposition at 14, n.11.  The Division further accuses

Applicants of misleading the Court by partially quoting from this section of the regulation.  The

Division is wrong both in its assertion that the regulation saves its argument, and in its assertion

that Applicants have misquoted the regulation.

In its entirety, with the relevant sections emphasized, section 50.9 states:

**§ 50.9 Policy with regard to open judicial proceedings.**

Because of the vital public interest in open judicial proceedings, the Government
has a general overriding affirmative duty to oppose their closure. There is,
moreover, a strong presumption against closing proceedings or portions thereof,
and the Department of Justice foresees very few cases in which closure would be
warranted. The Government should take a position on any motion to close a
judicial proceeding, and should ordinarily oppose closure; it should move for or
consent to closed proceedings only when closure is plainly essential to the
interests of justice. In furtherance of the Department's concern for the right of the
public to attend judicial proceedings and the Department's obligation to the fair
administration of justice, the following guidelines shall be adhered to by all
attorneys for the United States.

(a) These guidelines apply to all federal trials, pre- and post-trial evidentiary
proceedings, arraignments, bond hearings, plea proceedings, sentencing
proceedings, or portions thereof, except as indicated in paragraph (e) of this
section.

(b) A Government attorney has a compelling duty to protect the societal interest
in open proceedings.

(c) A Government attorney shall not move for or consent to closure of a proceeding covered by these guidelines unless:

(1) No reasonable alternative exists for protecting the interests at stake;

(2) Closure is clearly likely to prevent the harm sought to be avoided;

(3) The degree of closure is minimized to the greatest extent possible;

(4) The public is given adequate notice of the proposed closure; and, in addition, the motion for closure is made on the record, except where the disclosure of the details of the motion papers would clearly defeat the reason for closure specified under paragraph (c)(6) of this section;

(5) Transcripts of the closed proceedings will be unsealed as soon as the interests requiring closure no longer obtain; and

(6) Failure to close the proceedings will produce;

(i) A substantial likelihood of denial of the right of any person to a fair trial; or

(ii) A substantial likelihood of imminent danger to the safety of parties, witnesses, or other persons; or

(iii) A substantial likelihood that ongoing investigations will be seriously jeopardized.

(d) A government attorney shall not move for or consent to the closure of any proceeding, civil or criminal, except with the express authorization of:

(1) The Deputy Attorney General, or,

(2) The Associate Attorney General, if the Division seeking authorization is under the supervision of the Associate Attorney General.

(e) These guidelines do not apply to:

(1) The closure of part of a judicial proceeding where necessary to protect national security information or classified documents; or

(2) In camera inspection, consideration or sealing of documents, including documents provided to the Government under a promise of confidentiality, where permitted by statute, rule of evidence or privilege; or

(3) <u>Grand jury proceedings or proceedings ancillary thereto</u>; or

(4) Conferences traditionally held at the bench or in chambers during the course of an open proceeding; or

(5) The closure of judicial proceedings pursuant to 18 U.S.C. 3509 (d) and (e) for the protection of child victims or child witnesses.

(f) Because of the vital public interest in open judicial proceedings, the records of any proceeding closed pursuant to this section, and still sealed 60 days after termination of the proceeding, shall be reviewed to determine if the reasons for closure are still applicable. If they are not, an appropriate motion will be made to have the records unsealed. If the reasons for closure are still applicable after 60 days, this review is to be repeated every 60 days until such time as the records are unsealed. Compliance with this section will be monitored by the Criminal Division.

<u>(g) The principles set forth in this section are intended to provide guidance to attorneys for the Government and are not intended to create or recognize any legally enforceable right in any person.</u>

28 C.F.R. § 50.9 (emphasis added).

Thus, the Act and underlying regulation give alleged victims a qualified right to access to "public judicial proceedings," which does not include the right to unfettered access to plea agreements or to all negotiations related thereto.  Where a document is sealed pursuant to a statute, rule of evidence, privilege or because it would reveal grand jury proceedings or proceedings ancillary thereto, the guidelines expressly do not apply.  And, where Applicants' names are not revealed because it violates constitutional due process, the guidelines could not legally be construed to require disclosure.  Moreover, despite making sure to point out that the United States Attorney's Manual does not confer any legally enforceable rights on any party (Opposition at 8, n. 5), the Division fails to mention or otherwise acknowledge the similar provision in 28 C.F.R. § 50.9(g).  Finally, it is important to remember that Applicants are <u>not</u> seeking to seal the entire Plea Agreement, or even to redact a fundamental term of the Agreement.  (It is clear, however, that in appropriate circumstances a plea agreement may be

18

sealed without violating the rights of potential victims or the public. See Fed. R. Crim. P.

11(c)(2) ("The parties must disclose the plea agreement in open court when the plea is offered,

unless the court for good cause allows the parties to disclose the plea agreement in camera.")

(emphasis added).) Applicants simply seek to redact their own names from the Agreement,

which in no way infringes on the rights of alleged victims to access public judicial proceedings.

### C.    Contractual Precision Easily Can Be Achieved Without Violating Rule 6(e) and Applicants' Due Process Rights.

The Division legitimately argues that the parties to and the beneficiaries of the Plea

Agreement have an interest in contractual clarity, as they must be able to determine with

certainty that they are included in the Agreement and subject to its protections and obligations.

Opposition at 14-15. Accordingly, Applicants have suggested numerous ways to avoid naming

Messrs. Cleary and Pang publicly as carve-outs that still would ensure there is no ambiguity in

the Agreement. The Division reflexively rejects all of Applicants' suggestions and instead

attempts to demonstrate their infeasibility by conflating the suggestions and implying Applicants

are seeking, with no standing, a significant modification of the Agreement that has been

"negotiated and signed by the United States and Qantas." Opposition at 15, n. 12. Then, the

Division boldly concludes "[t]he only way to achieve that contractual precision is to identify by

name those individuals who are not covered by the non-prosecution agreement." Opposition at

15. Common sense belies the Division's argument. One simple clause in the Plea Agreement

would accomplish the goal of contractual precision: instead of ". . . but excluding [Name],

[Name], Stephen Cleary, Harold Pang, [Name], and [Name]. . .," the Agreement could state ". . .

but excluding six past or present employees, who have been separately notified of their

exclusion . . ." See Plea Agreement at ¶ 12(b) (the same modification easily could be made in

paragraph 15(a), the only other paragraph which names the carve-outs).[5]  And, as discussed,

Qantas itself supports Applicants' request for redaction and has made the very same request to

the DOJ.

## V.    THE FACT THAT PUBLICLY NAMING CARVE-OUTS IS A LONG-STANDING POLICY OF THE DIVISION HAS NO BEARING ON WHETHER THE PRACTICE VIOLATES RULE 6(e) AND/OR APPLICANTS' DUE PROCESS RIGHTS.

In the Declaration of Brent Snyder ("Snyder Declaration") attached to the government's

Opposition, the Division contends that identifying carve-outs publicly in plea agreements is the

Division's long-standing policy, though there is no indication of how long this policy has been in

effect other than "many years."  Snyder Declaration at ¶ 2.  Nor does the Snyder Declaration

suggest that the policy is in any way designed to protect the public's First Amendment Rights.

Rather, the logical inference is that the policy is a tool of expediency in law enforcement, as

naming carve-outs identifies them to civil plaintiffs and potential witnesses both within and

outside of Qantas, which may lead to assistance in the ongoing investigation of the underlying

offense.  The Snyder Declaration further asserts, without providing any empirical data, that

although no carve-out has consented to this practice, no court has ever required the Division to

file a plea agreement under seal or to redact the carve-outs' names.  Opposition at 2-3.  While the

Division never expressly argues that its policy is both constitutional and permissible under Rule

6(e) <u>simply because</u> it is long-standing and has been approved by the present Deputy Attorney

General, that is the clear implication of the Declaration.  Obviously, the mere fact that the

Division has implemented this practice before, without it ever having been challenged, is not

dispositive of whether the practice is proper.  <u>See, e.g.</u>, <u>Payton v. New York</u>, 445 U.S. 573, 600,

---

[5] Applicants' proposed language is merely one suggestion for how to address this issue. Applicants are amenable to working with the Division to craft appropriate language that considers both their own and the Division's concerns.

100 S.Ct. 1371, 1387, 63 L.Ed. 2d 639 (1980) ("A longstanding, widespread practice is not

immune from constitutional scrutiny."). And, it is not surprising that courts do not look for

reasons to reject plea agreements when no third parties raise objections and place their carve-out

issue before the court in the context Applicants have done here.

Indeed, the Snyder Declaration does not contend that any other carved out individual <u>ever</u>

has affirmatively challenged the practice of publicly identifying carve-outs prior to the recent

<u>Crompton</u>, <u>Korean Air Lines</u> and <u>Hammond</u> cases. The Division appears affirmatively to

recognize that the Antitrust Division is the only Division within DOJ with a policy of naming

carve-outs in plea agreements. It cannot be that all other corporate pleas entered into by all other

DOJ Divisions are contractually imprecise and constitutionally infirm because they do not

specifically name carved-out employees where such carve-outs exist.[6]

For the reasons stated in Applicants' Emergency Application for Injunctive Relief, and

the reasons stated herein, Messrs. Cleary and Pang request that this Court grant their injunction

and prohibit the United States from specifically naming them in the publicly filed Plea

---

[6] In a footnote, the Division states that if Applicants' request for relief is granted, the Division
will have to seal or redact the names of carve-outs in every case, or will have to endure a
daunting administrative task of determining when deviations from its policy are necessary on a
case-by-case basis. Opposition at 15, n. 12. (Of course, the Division presumably already
negotiates each plea agreement on a case-by-case basis.) Although it is not Applicants' burden to
address this issue on behalf of every conceivable carve-out from any plea agreement with the
Antitrust Division, it is clear that if the Division's policy violates Rule 6(e) and/or violates carve-
outs' due process rights, the Division will have to change its policy – which then would be
consistent with the rest of DOJ – or take other steps to modify the policy's application.

  And as for the Division's assertion in the same footnote that the implications of being
named as carve-outs will be "far more negative" for Applicants if this sealed Application is
leaked to the public, Applicants would rather take their chances that the sealing procedures
implemented by the Court and clerk's office are effective, and that DOJ will not leak the sealed
document, rather than guaranteeing that they will suffer reputational and economic harm by
naming them in the Plea Agreement at the outset. Indeed, if this Motion were leaked, then
Applicants' names would become public and they would suffer considerable, irreparable harm
regardless of whether they were named in the Plea Agreement.

Agreement with Qantas Airways Limited.  Additionally, if the Court denies Applicants' request for an injunction, Applicants request a temporary stay of the publication of their names in the Qantas Plea Agreement until Applicants have had the opportunity to file an expedited appeal to the Circuit Court and have obtained a ruling therein.

Dated: January 7, 2008                     Respectfully Submitted,


Henry W. Asbill, D.C. Bar No. 938811
Kerri L. Ruttenberg, D.C. Bar No. 467989
Dewey & LeBoeuf LLP
1101 New York Avenue, N.W., Suite 1100
Washington, D.C.  20009
(202) 986-8000
*Counsel for Stephen Cleary*


/KR (with permission)
Elizabeth G. Taylor, D.C. Bar No. 384893
Zuckerman Spaeder LLP
1800 M Street, NW
Suite 1000
Washington, DC  20036-5802
(202) 778-1800 (phone)
(202) 822-8106 (facsimile)
*Counsel for Harold Pang*


/KR (with permission)
Royal B. Martin (*Pro Hac Vice* Admission Pending)
Daniel T. Hartnett (*Pro Hac Vice* Admission Pending)
Martin Brown & Sullivan, Ltd.
The Chicago Bar Association Building
321 South Plymouth Court, 10th Floor
Chicago, IL  60604
(312) 360-5000 (phone)
(312) 360 5026 (facsimile)
*Counsel for Harold Pang*

22

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2008, I caused a true and correct copy of the foregoing

Memorandum of Law and Proposed Order to be served, by agreement, via e-mail in PDF format

and additionally via U.S. Mail, first class postage pre-paid, upon the following:

Brent C. Snyder, Esq.
U.S. Department of Justice
1401 H Street, NW
Suite 3700
Washington, DC 20530
(202) 616-3186
Brent.Snyder@usdoj.gov

W. Todd Miller, Esq.
Baker & Miller PLLC
2401 Pennsylvania Avenue, NW
Suite 300
Washington, DC 20037
(202) 663-7820
TMiller@bakerandmiller.com

_____
Kerri L. Ruttenberg