UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**
JAN 0 9 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

In re INTERESTED PARTY 1 and
In re INTERESTED PARTY 2, in the matter of
UNITED STATES v. QANTAS AIRWAYS
LIMITED

Misc. No. 07-567 (JDB)
UNDER SEAL

### MEMORANDUM OPINION

This case arises out of the plea agreement reached by the Department of Justice Antitrust Division ("DOJ") and Qantas Airways Limited to resolve alleged criminal violations of the Sherman Act, 15 U.S.C. § 1 -- specifically, a conspiracy to fix rates charged for international air cargo shipments. See United States v. Qantas Airways Ltd., Cr. No. 07-322 (D.D.C.) ("Qantas"). The plea agreement provides immunity for the offense described in the agreement for all Qantas employees except for six employees identified by name (referred to as "carve out" employees).

Two of the carve out employees ("applicants") challenge disclosure of their names in the plea agreement as a violation of grand jury secrecy under Fed. R. Crim. P. 6(e) and of their right to due process under the Fifth Amendment, based on the premise that public disclosure of their names in the plea agreement will convey that they are or were the subject of a grand jury investigation and that they engaged in the criminal acts charged in Qantas or engaged in other criminal wrongdoing. See Interested Parties' Mem. in Support of Emergency Application for Injunctive Relief from a Criminal Case ("Applicants' Mem.") at 2-6, 9-18. The applicants request that the Court enjoin the government from disclosing their names in the plea agreement by redacting their names from the publicly-filed version of the plea agreement. See Applicants' Mem. at 29.

The Court recently considered substantially the same arguments of similarly situated

carve out employees in Doe v. Hammond, 502 F. Supp. 2d 94 (D.D.C. 2007), and United States v. Korean Air Lines, Ltd., 505 F. Supp. 2d 91 (D.D.C. 2007), injunction pending appeal denied (D.C. Cir. Aug. 24, 2007) (No. 07-3091), and held that there was no violation of either grand jury secrecy under Fed. R. Crim. P. 6(e) or the right to due process under the Fifth Amendment. As the parties recognize, those cases are legal precedents that guide the Court's resolution of the present motion. The Court recognizes that a different factual record could yield a different result, or that another litigant might proffer arguments that could persuade the Court the earlier cases were incorrectly decided. Thus, the Court has examined the record in the present case -- that is, the information, the plea agreement, and statements attributed to DOJ -- to determine whether a different outcome is warranted, and also has considered the legal arguments offered by counsel.[1] The Court concludes, nonetheless, that the government has not identified the applicants as the subjects of a grand jury investigation or otherwise taken action against the applicants that is

---

[1] The applicants suggest in a footnote that this Court consider recusing itself under 28 U.S.C. § 455 because of its recent decisions in Doe v. Hammond and Korean Air Lines, Ltd.. This request is wholly without merit. The Supreme Court has explained that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion" noting that judicial opinions based on the record developed in court are "necessary to completion of the judge's task" and "only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved." Liteky v. United States, 510 U.S. 540, 551, 555 (1994). This Circuit has similarly emphasized that recusal based solely on judicial rulings will rarely, if ever, be granted. See SEC v. Loving Spirit Found., 392 F.3d 486, 494 (D.C. Cir. 2004) ("[J]udicial rulings . . . virtually never provide a basis for recusal. Indeed, we have found no case where this or any other federal court recused a judge based only on his or her rulings.") (citations omitted).

The applicants also seek to avoid a ruling by this Court on procedural grounds. See Applicants' Reply Mem. at 2 n.1. They ask in their reply brief whether the criminal case against Qantas was properly assigned to the undersigned under Local Criminal Rule 57.12, which in turn has resulted in the present application also being assigned to the undersigned. Id. However, the applicants failed to raise the related case issue until the filing of their reply brief, a mere week before the plea and sentencing hearing scheduled for January 14, 2008. The Local Criminal Rules do not expressly address the timing of an objection by a non-party to a criminal case, but clearly contemplate that any objection to assignment will be raised with the filing of the objector's first motion or before the case is on the verge of a substantive disposition. See LCrR 57.12(b)(1) and (2). And to be sure, the applicants have not lodged an objection, but only state that they are "unsure" whether the Qantas criminal case is related to the earlier cases. See Applicants' Reply Mem. at 2 n.1. Considering this procedural posture, the Court declines to consider the related case issue at this late date.

2

accusatory in nature. Therefore, the application will be denied.

## STANDARD OF REVIEW

The standard for granting a permanent injunction is much like the standard for a preliminary injunction, and requires consideration of the following factors: (1) success on the merits; (2) whether the movant will suffer irreparable injury absent an injunction; (3) whether, balancing the hardships, there is harm to the respondent or other interested parties; and (4) whether the public interest supports granting the requested injunction. See Nichols v. Truscott, 424 F. Supp. 2d 124, 143 (D.D.C. 2006). Actual success on the merits is required to obtain permanent injunctive relief. Id. If the movant has no likelihood of success on the merits, inquiry into the remaining factors is unnecessary, for the injunctive relief must be denied on that ground alone. See Trudeau v. Federal Trade Comm'n, 456 F.3d 178, 182 n.2 (D.C. Cir. 2006).

## DISCUSSION

Rule 6(e)(2) provides that an attorney for the government "must not disclose a matter occurring before the grand jury." The phrase "matter[s] occurring before the grand jury" encompasses "'not only what has occurred and what is occurring, but also what is likely to occur,' including 'the identities of witnesses, . . . the strategy or direction of the investigation . . . and the like.'" In re Sealed Case No. 99-3091, 192 F.3d 995, 1001 (D.C. Cir. 1999) (quoting In re Motions of Dow Jones & Co., 142 F.3d 496, 500 (D.C. Cir. 1998)).

The applicants contend that the "most likely" implication of identifying the carve out employees as not covered by the grant of immunity is that they previously were, or currently are, subjects or targets of the grand jury investigation that led to the Qantas plea agreement. Applicants' Mem. at 3-4, 9-16. The fatal flaw in this argument is that the documents on which they rely -- the information filed against Qantas, the plea agreement, a DOJ press release, and

3

DOJ comments about carve out status-- neither expressly nor impliedly state that any of the applicants are the subject of a grand jury investigation. The mere possibility that an individual is a subject of a grand jury investigation -- a matter that is unknown -- does not, under the law of this Circuit, prohibit the government from disclosing the name in other contexts, for disclosure of information that is only coincidentally before the grand jury (i.e, the name of a person of interest) is not prohibited by Rule 6(e) as long as it does not elucidate the inner workings of the grand jury. See In re Sealed Case, 192 F.3d at 1002 (discussed infra at 8-9).

The Court thus turns its attention to the relevant provisions of the Qantas information, the plea agreement, the DOJ press release, and DOJ comments about carve out status. To begin with, the information charging Qantas with conspiring to violate the Sherman Act, 15 U.S.C. § 1, does not identify any unindicted co-conspirators by name. It states that: "individuals, not made defendants . . . participated as co-conspirators in the offense[s] charged . . . and performed acts and made statements in furtherance of it." Information ¶¶ 2, 14. The information goes on to describe the conduct of the defendant and the co-conspirators, including the allegation that Qantas engaged in unlawful acts "by and through its officers, directors, employees, agents, or other representatives," but provides no indicia as to the identity of such persons. Id. ¶ 3.

More significantly, the plea agreement does not identify the applicants as co-conspirators, or otherwise describe them as facing grand jury investigation or criminal liability. It provides only that the listed individuals are excluded from the cooperation and non-prosecution provisions of the agreement, without explaining the basis for the exclusion. The provisions in which the applicants are named state, in full, as follows:

> 12.    The defendant and its subsidiaries will cooperate fully and truthfully with the United States in the prosecution of this case, the conduct of the current federal investigation of violations of federal antitrust and related criminal laws involving

4

>the sale of international air cargo transportation services, any other federal investigation resulting therefrom, and any litigation or other proceedings arising or resulting from any such investigation to which the United States is a party ("Federal Proceeding"). The ongoing, full, and truthful cooperation of the defendant and its subsidiaries shall include, but not be limited to:
>
> * * *
>
>      (b)    using its best efforts to secure the ongoing, full, and truthful cooperation, as defined in Paragraph 13 of this Plea Agreement, of the current and former directors, officers, and employees of the defendant or any of its subsidiaries as may be requested by the United States -- but excluding [Name, Name, Name, Name, Name, and Name] -- including making these persons available in the United States and at other mutually agreed-upon locations, at the defendant's expense, for interviews and the provision of testimony in grand jury, trial, and other judicial proceedings in connection with any Federal Proceeding.
>
> * * *
>
>15.    The United States agrees to the following:
>
>      (a) Upon the Court's acceptance of the guilty plea called for by this Plea Agreement and the imposition of the recommended sentence and subject to the exceptions noted in Paragraph 15(c), the United States will not bring criminal charges against any current or former director, officer, or employee of the defendant or its subsidiaries for any act or offense committed before the date of this Plea Agreement and while that person was acting as a director, officer, or employee of the defendant or its subsidiaries that was undertaken in furtherance of an antitrust conspiracy involving the sale of international air cargo transportation services ("Relevant Offense"), except that the protections granted in the paragraph shall not apply to [Name, Name, Name, Name, Name, and Name].

See Plea Agreement ¶¶ 12, 15 (submitted to chambers on November 29, 2007). No criminal accusations are made therein against the "carve out" employees, nor are the carve out employees described as the subjects of an investigation. The words "investigation" and "grand jury" appear in these provisions, but only in the context of describing Qantas's duty to cooperate in "any other federal investigation" of the alleged antitrust violations described therein, including "the provision of testimony in grand jury . . . proceedings." The plea agreement does not identify the persons or entities who are the subject of any such investigation.

The applicants contend, however, that these provisions of the plea agreement must be read in light of a press release issued by DOJ on November 27, 2007, and DOJ's representations

5

on the meaning of "carve-out" status. First, the general reference in the press release to an "ongoing investigation" hardly amounts to an accusation of criminal wrongdoing by the applicants. See Press Release, U.S. Department of Justice, "Qantas Airways Agrees to Plead Guilty and Pay Criminal Fines for Fixing Prices on Cargo Shipments" (Nov. 27, 2007) (Applicants' Mem., Ex. B) ("Qantas has agreed to cooperate with the Department's ongoing investigation . . . . Our investigation into this important industry will continue, and we will aggressively pursue those who engage in criminal conduct that harms American consumers."). Indeed, the context of the press release indicates that the "investigation" referred to is that conducted by the Department of Justice -- "the Department's ongoing investigation" -- rather than a grand jury investigation.[2]

The applicants thus rely primarily on their argument that the "most likely implication" of carve out status is that they previously were, or currently are, subjects of an ongoing grand jury investigation. Applicants' Mem. at 3-4, 9-16. The Court considered substantially the same argument in Hammond, and concluded that "there is no 'necessary implication' from the carve out provision as to a grand jury investigation." Hammond, 502 F. Supp. 2d at 100. Hence, although "DOJ's comments do indeed indicate that culpability is one possible reason for carving out an employee from a corporate plea agreement -- and one might infer that such culpability would involve grand jury proceedings -- . . . the [DOJ] comments indicate several other possible reasons" unrelated to culpability. Id. (citing Scott D. Hammond, Assistant Attorney General for

---

[2] Qantas issued its own press release the next day, which stated six employees had been "excluded from the Plea Agreement," but emphasized that "[t]his does not mean the individuals have been involved in any illegal conduct nor that the DOJ would prosecute them." See Press Release, Qantas Airways Ltd., "Qantas Enters Plea Agreement with US Government" (Nov. 28, 2007) (attached to United States' Mem., Decl. of Brent Snyder, Ex. A).

6

Criminal Enforcement Antitrust Division, DOJ, <u>Measuring the Value of Second-In Cooperation in Corporate Plea Negotiations</u>, Address at the 54th Annual American Bar Ass'n Section of Antitrust Law Spring Meeting (Mar. 29, 2006), at 7-8 ("Hammond Statement")). Other possible reasons include "the bare refusal of an individual to cooperate, the need to develop additional evidence, and DOJ's inability to locate an individual." <u>Id.</u> at 100.[3]

The applicants contend that <u>Hammond</u> was incorrectly decided because the Court did not examine the plausibility of those other reasons here. <u>See</u> Applicants' Mem. at 11-15; Applicants' Reply Mem. at 3-4, 9-13. On the contrary, in this Court's experience it is commonplace that federal investigations are affected by both the need to develop additional evidence and witnesses who have not provided cooperation, and there is no reason to believe that antitrust investigations

---

[3] The DOJ has explained more fully as follows:

> Most corporate plea agreements provide a non-prosecution agreement for company employees who cooperate fully in the investigation. Yet certain culpable employees, employees who refuse to cooperate, and employees against whom the Division is still developing evidence may not receive any protection under the company plea agreement. These individuals are often referred to as "carve outs," meaning they are excluded (or "carved out") of the company deal. Culpable carve outs must negotiate separate plea agreement or face indictment. Most companies place a high value on minimizing the number of carve outs.
>
> Second-in companies that cooperate early in an investigation often have the advantage of being able to offer new and significant evidence through multiple employees. When this is the case, the Division will typically carve out only the highest-level culpable individuals as well as any employees who refuse to cooperate; mid-to-lower level employees who provide significant evidence furthering the investigation will be offered non-prosecution under the corporate plea agreement. In addition, those employees who are carved out often are able to negotiate more favorable deals because they are in a position to offer valuable cooperation early on in an investigation.

Hammond Statement at 7-8, quoted in <u>Doe v. Hammond</u>, 502 F. Supp. 2d at 100.

7

are any different.[4] Thus, the Court again concludes that this carve out provision, like the one in Hammond, does not create the necessary, or even likely, inference of a grand jury investigation. See also Korean Air Lines, 505 F. Supp. 2d at 96 (holding that "the [DOJ] comments do not render 'accusatory' the carve out provisions" of a similar plea agreement); United States v. Crompton, 399 F. Supp. 2d 1047, 1049 (N.D. Cal. 2005) (explaining that naming a person as excluded from a non-prosecution guarantee "indicate[s] that the non-prosecution protection of [the] Plea Agreement does not apply to him and nothing more").

The applicants' view of grand jury secrecy is far broader than has been recognized in this Circuit. Their arguments presume that Fed. R. Crim. P. 6(e) prohibits disclosure of their names in relation to DOJ's own prosecutorial investigation if they are -- or have in the past been -- the subjects of a grand jury investigation. However, this Circuit has rejected that position:

> [W]e have never read Rule 6(e) to require that a "veil of secrecy be drawn over all matters occurring in the world that happen to be investigated by a grand jury." Indeed, we have said that "[t]he disclosure of information 'coincidentally before the grand jury [which can] be revealed in such a manner that its revelation would not elucidate the inner workings of the grand jury' is not prohibited." . . . The[] purposes [of Rule 6(e)], as well as the text of the Rule itself, reflect the need to preserve the secrecy of the grand jury proceedings themselves. It is therefore necessary to differentiate between statements by a prosecutor's office with respect to its own investigation, and statements by a prosecutor's office with respect to a grand jury's investigation, a distinction of the utmost significance upon which several circuits have already remarked. . . .
> Information actually presented to the grand jury is core Rule 6(e) material that is afforded the broadest possible protection from disclosure. Prosecutors' statements about their investigations, however, implicate the Rule only when they directly reveal grand jury matters.

---

[4] The applicants contend that where, as here, an employer is cooperating, it is implausible that a current employee could refuse to cooperate because the employer has the power to fire him or her. Applicants' Mem. at 14; Applicants' Reply Mem. at 10. But it is entirely plausible that an employer may, for business reasons, decide to retain an employee who plays an important role in its organization, a scenario that is supported by the applicants' own exhibit. See Applicants' Reply Mem., Exhibit 1 (letter from Qantas to the Department of Justice explaining the importance of the applicants to Qantas' business interests).

8

In re Sealed Case, 192 F.3d at 1001-02 (emphasis in original, citations omitted). Here, the carve out provisions of the plea agreement do not reveal grand jury matters, but instead only that, as part of the prosecutor's handling of the criminal case against Qantas, the six identified employees will not be covered by the non-prosecution provision of the agreement. Thus, public disclosure of the carve out names will not reveal "matter[s] before the grand jury" within the protection of Rule 6(e).[5]

The Court turns next to the applicants' contention that disclosure of their names in the plea agreement will violate their due process rights under the Fifth Amendment. The Court recognized in Hammond and Korean Air Lines that "[t]he Due Process Clause of the Fifth Amendment protects an individual from governmental accusations of criminal misconduct without providing a proper forum for vindication." Hammond, 502 F. Supp. 2d at 101; Korean Air Lines, 505 F. Supp. 2d at 93 (citing In re Smith, 656 F.2d 1101, 1106-07 (5th Cir. 1981); United States v. Briggs, 514 F.2d 794, 802-06 (5th Cir. 1975); and United States v. Anderson, 55 F. Supp. 2d 1163, 1168-69 (D. Kan. 1999)). Although the more typical case involves a request to expunge an indictment making accusations against an uncharged individual, Hammond and Korean Air Lines observed that:

> [D]ue process protection is not limited to accusations against the uncharged in an indictment, but rather extends to other criminal accusations made by a government attorney, including accusations in factual proffers and other court memoranda. See In re Smith, 656 F.2d at 1106 (explaining that "in Briggs, [the court] found that the liberty and property concepts of the Fifth Amendment protect

---

[5] Indeed, the D.C. Circuit in In re Sealed Case went on to note with approval the Fifth Circuit's observation that "'[a] discussion of actions taken by government attorneys or officials -- e.g., a recommendation by the Justice Department attorneys to department officials that an indictment be sought against an individual -- does not reveal any information about matters occurring before the grand jury. Nor does a statement of opinion as to an individual's potential criminal liability violate the dictates of Rule 6(e).'" In re Sealed Case, 192 F.3d at 1003 (quoting In re Grand Jury Investigation (Lance), 610 F.2d 202, 217 (5th Cir. 1980)).

9

> an individual from being publicly and officially accused of having committed a serious crime," and that this holding extended to statements made by government counsel at a plea hearing); Anderson, 55 F. Supp. 2d at 1167 ("In Smith, the Fifth Circuit extended the Briggs rule well beyond the grand jury context, and ordered other court filings and records naming an unindicted co-conspirator sealed and struck.").

Hammond, 502 F. Supp. 2d at 101-02; Korean Air Lines, 505 F. Supp. 2d at 93-94.

The applicants contend that the disclosure of their names in the carve out provisions of the plea agreement not only suggests the existence of a grand jury investigation, but also is "tantamount to accusing them of the misconduct" that is the subject of the plea agreement. See Applicants' Mem. at 18. The government counters that the carve out provision cannot be characterized as making any such accusation. See United States' Mem. at 3-4, 8-12.

As noted earlier, this Court has reviewed the provisions of the information filed against Qantas, the plea agreement, the DOJ press release, and DOJ comments about carve out status. None of those documents identifies the applicants as co-conspirators, or otherwise describes them as facing grand jury investigation or criminal liability. Because there are non-criminal culpability reasons that may give rise to carve out status, an employee's carve out status does not mean, either expressly or impliedly, that he has engaged in criminal wrongdoing. Hammond, 502 F. Supp. 2d at 102; Korean Air Lines, 505 F. Supp. 2d at 95-96; see also Crompton, 399 F. Supp. 2d at 1049.

The applicants contend, however, that whenever "a government action is susceptible to more than one interpretation," if one possible interpretation involves a "stigma" then due process requires that the individual must be afforded a chance to defend himself, citing Wisconsin v. Constantineau, 400 U.S. 433 (1971). Applicants' Reply Mem. at 8. This argument is without merit. Although Constantineau recognized that "stigma" resulting from government action could

implicate due process concerns -- there, in the context of a statute requiring liquor stores to post the names of persons who might become a danger if served alcohol -- the Supreme Court later clarified that stigma "standing alone" does not implicate due process.  See Paul v. Davis, 424 U.S. 693, 707-09 (1976) (further explaining that alteration of a legal right, in addition to stigma, was at issue in Constantineau); see also Mosrie v. Barry, 718 F.2d 1151, 1159 (D.C. Cir. 1983) ("Paul v. Davis held that reputation alone is neither a liberty interest arising from the Constitution itself nor a liberty interest arising from state law . . . .").  The possible stigma from carve out status feared by the applicants does not give rise to a due process violation because there has been no alteration of their legal rights either under the plea agreement or otherwise.  Furthermore, because stigma alone does not implicate due process, the line of cases holding that the Due Process Clause protects individuals from governmental accusations of criminal misconduct without providing a proper forum for vindication cannot be extended to cover any government conduct that might conceivably damage one's reputation.  Here, the carve out provisions of the plea agreement only identify the applicants as excluded from the cooperation and non-prosecution provisions, without further explanation.  Those provisions are not accusatory in nature, and hence there is no violation of the Due Process Clause.

      The applicants also contend that the government's disclosure of their names in the plea agreement is in violation of the directive in the United States Attorneys' Manual ("USAM") that "in the absence of some significant justification, it is not appropriate to identify . . . a third-party wrongdoer unless that party has been officially charged with the misconduct at issue."  See Applicants' Mem. at 18-19 (quoting USAM § 9-27.760).  But as explained above, the language of the plea agreement here does not, either expressly or impliedly, describe the applicants as

engaging in any wrongdoing, and hence this USAM provision is not implicated.[6]

Having concluded that there is no violation of Fed. R. Crim. P. 6(e) or the Due Process Clause, the Court finds it unnecessary to weigh the other equitable factors bearing on whether to grant injunctive relief. It his noteworthy, however, that there are significant public interests in full disclosure of the plea agreement -- the right of the public and the press to have access to court proceedings (see Washington Post v. Robinson, 935 F.2d 282, 288 (D.C. Cir. 1991)) and the victims' right of access to the terms of a plea agreement under the Crime Victim Rights Act, 18 U.S.C. § 3771.

The applicants summarily request in their reply memorandum that the Court enter a temporary stay of any adverse decision pending appeal. See Applicants' Reply Mem. at 22. To obtain an injunction pending appeal, a movant "must show (1) that it has a substantial likelihood of success on the merits; (2) that it will suffer irreparable injury if [an injunction] is denied; (3) that issuance of the [injunction] will not cause substantial harm to other parties; and (4) that the public interest will be served by issuance of the [injunction]." United States v. Philip Morris, Inc., 314 F.3d 612, 617 (D.C. Cir. 2003) (citing Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977)). "These factors interrelate on a sliding scale and must be balanced against each other." Serono Laboratories, Inc. v. Shalala, 158 F.3d 1313, 1318 (D.C. Cir. 1998). "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 746 (D.C. Cir. 1995).

---

[6] In any event, the USAM specifies that it "is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal." See USAM § 1-1.100 (available at http://www.usdoj.gov/usao/eousa/foia_reading_room/usam/index.html).

Based on the briefs in support of the emergency application, it is apparent that, like the carve out employees in <u>Korean Air Lines</u>, the irreparable injury claimed is that the plea agreement effectively labels them as subjects of a grand jury investigation or as having engaged in criminal activities, thereby allegedly causing irreparable injury to the applicants' careers and reputations.  But having concluded that the plea agreement does not so label the applicants, the Court finds that there is no threat of irreparable harm.  <u>See also</u> <u>Korean Air Lines</u>, Misc. No. 07-324, Order at 3 (D.D.C. Aug. 22, 2007) (finding no irreparable harm from the carve out provisions of a similar plea agreement and denying motion for temporary stay pending appeal), <u>injunction pending appeal denied</u> (D.C. Cir. Aug. 24, 2007) (No. 07-3091).  Furthermore, as discussed at length above, the Court has already concluded that applicants have no likelihood of success on the merits, and that there is strong public interest in full disclosure of the plea agreement.  Therefore, the Court will deny the motion for temporary stay pending appeal.

The Court pauses here to address whether the applicants' case should remain under seal in light of this resolution.  The case was sealed because the application for relief disclosed the very information that the applicants are seeking to have redacted -- that is, their identities as carve outs in the plea agreement.  In light of the denial of the application, the Court anticipates that, absent a stay by the Court of Appeals, the applicants' names will be disclosed at the <u>Qantas</u> plea hearing on January 14, 2008.  The Court thus intends to lift the sealing order, but will delay formally lifting the seal (and entering this opinion on the public docket) until 12:00 p.m. on January 14, 2008, after the conclusion of the plea hearing.

## **CONCLUSION**

For the foregoing reasons, the Court will deny the emergency application for injunctive

relief and deny the applicants' request for temporary stay of this decision pending appeal. The Court will lift the seal of this case after the conclusion of the plea hearing in <u>United States v. Qantas Airways Ltd.</u>, Cr. 07-322. A separate order will be issued on this date.

                                                  /s/ JOHN D. BATES
                                          JOHN D. BATES
                                      United States District Judge

Date:  January 9, 2008